```
 1              IN THE UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF PUERTO RICO
 2

 3

    UNITED STATES OF AMERICA,      )
 4                                 )
                   Plaintiff,      )
 5                                 )
    vs.                            )    CR. NO:  97-076(DRD)
 6                                 )
    WILLIAM SOTO BENIQUEZ,ET AL.,  )
 7                                 )
                                   )
 8                 Defendants.     )
    _____)
 9

10                            TRIAL

11         BE IT REMEMBERED that the above entitled action came on

12   for hearing before the HONORABLE DANIEL R. DOMINGUEZ, sitting at

13   Hato Rey, Puerto Rico, on the 12th day of January, 1999.

14         All parties and their counsel present as before.

15

16

17

18

19

20

21

22              ARTHUR G. PINEDA, OCR
              Federal Building, Rm. G-40
23                150 Chardon Avenue
              Hato Rey, Puerto Rico 00918
24                 (787)766-4319

25
```

944

1       THE CLERK:  Criminal 97-079, United States of America

2   versus William Soto Beniquez, et al, for further jury trial.

3       On behalf of the government Assistant U.S.

4   Attorney Jacobed Rodriguez Coss.  On behalf of defendants

5   Attorneys Marlene Aponte Cabrera, Miriam Ramos Grateroles,

6   Raymond Rivera Esteves, Luz M. Rios Rosario, Javier Morales

7   Ramos, Jose Romo Matienzo, Victor Miranda Corrada, Rosa Bonini

8   Laracuente, Gustavo del Toro and Rafael Anglada Lopez.

9       All defendants are present except Rene Gonzalez

10  Ayala.

11      THE COURT:  Mr. Miranda.

12      MR. MIRANDA CORRADA:  Victor Miranda Corrada on behalf

13  of Rene Gonzalez Ayala.  We have noticed that he's not present

14  here today.  We do not know the reason why he's not here.  He has

15  been here every day for the selection of the jury.  Since he

16  takes public transportation the only thing I can imagine is that

17  he has run into a problem.  He was aware that we were to be here

18  today.  And honestly I cannot imagine why he's not here.

19      THE COURT:  United States.

20      MS. RODRIGUEZ:  We certainly don't have any knowledge

21  as to why he's not here Your, Honor.  We just noticed that he

22  informed the U.S. Marshal that we were missing a defendant and

23  asked the marshal to look outside, perhaps he's somewhere in the

24  premises.

25      THE COURT:  All right.  Well, Mr. Miranda, either I

1    start without him or I declare him a fugitive, declare a

2    severance and you're out.

3            MR. MIRANDA CORRADA:  My interest would be to have a

4    severance.

5            THE COURT:  Well --

6            MR. MIRANDA CORRADA:  Maybe.

7            THE COURT:  But not under these circumstances.

8            MR. MIRANDA CORRADA:  No, Your Honor.  I don't want you

9    to get the wrong impression.  It's not something that it has been

10   manufactured.  In all honesty I represent to the Court I do not

11   know what happened.  I know that he has been here at every

12   instance.  He must have had some problem.

13              I could ask the Court at this time if the Court --

14   I don't know how the Court was going to conduct its work schedule

15   this morning.  You had advised that you would be conducting a

16   meeting with the attorneys in chambers.

17           THE COURT:  That's what I will do.  I will do that now.

18   The jury trial really was suppose to start at 10:30 so we can

19   wait a little while.  I will meet with counsel now in order to

20   discuss the pending motions.

21           MS. RODRIGUEZ:  Your Honor, may I address the Court?

22           THE COURT:  Yes.

23           MS. RODRIGUEZ:  May we ask the Court to inquire of

24   counsel when was the last time he communicated with his client.

25           MR. MIRANDA CORRADA:  What I will do is the following

4

1   while we are in chambers, and if the Court will allow me, I can

2   try to contact my office so they can do the appropriate call to

3   whatever numbers we have at the office.

4          THE COURT:  Very well.

5          MR. MIRANDA CORRADA:  However, I do call the Court's

6   attention that if it was set for 10:30, we have just -- it is

7   just now 10:30.

8          THE COURT:  I said we were going to start all these

9   proceedings on time.

10          MR. MIRANDA CORRADA:  I am aware of that, Your Honor

11   and I apologize.  I apologize for my client.  I am certain that

12   he has some sort of problem because he has been here earlier than

13   the time.

14          THE COURT:  All right.  We will now -- counsel will now

15   go into my chambers and we will discuss the pending motions.  I

16   understand he's coming in.

17          THE MARSHAL:  Yes, Your Honor.

18          THE COURT:  He's coming in.

19              So, we will now discuss the pending motions matter

20   in my office, in my chambers, we should be back here at around

21   eleven for the opening arguments.  Okay.

22                      (IN CHAMBERS)

23          THE COURT:  Let the record reflect that we are now in

24   chambers.  Okay.

25              The last time I wrote an opinion of pending

5

1    motions I said I had been bombarded with motions.  I guess I now

2    know how the English people felt when they were being bombarded

3    by the Germans in the Second World War.  I have been bombarded

4    again and this morning I wake up and again that's yours.

5            MS. RODRIGUEZ:  Yes.

6            THE COURT:  And I have been again bombarded with

7    motions.  So, I think I am ready to solve most of those motions,

8    if not all of them.

9            But before I do that, I want to make sure that we

10   have a rule in this court, which is understood, and that is that

11   jury time is for the jury.  I don't want the following scenario

12   to occur.  That is I'm ready to go out and one of you get up and

13   say I now have this motion, Your Honor.  Motions will be done

14   after five and at twelve.

15           Jury time is for the jury.  I don't want to be

16   interrupted by any motion unless it's an earth shattering motion

17   that must be attended that instant.  Because if not this case

18   goes no where, and instead of taking us three months or two

19   months it's going to take us longer.  So motions at twelve and

20   after five.  I will gladly entertain them.  No problem.  But not

21   when I'm ready to go out for the jury.

22           Second, I want you to be concise, to the point and

23   short.  I don't want long dissertations in this case.

24           Third, I will give all of you latitude to move

25   around the podium.  No problem.  But I don't want you to get

6

```
1    nearer to the jury than the corner of my bench.  There is a

2    parallel line that runs from the corner of my bench to the back

3    of the room.  I don't want you to get closer to the jury than

4    that.  I am not going to restrain you and put a lease on you

5    because I didn't do that when I was a lawyer.  But, I want you to

6    respect the privacy of the jury.  All right.

7                Now, again, please, do not forget that I don't

8    want personalisms between counsel, throwing darts at each other.

9    And if you are to address, address the Court do not address

10   counsel.  Do not speak to counsel when you are addressing the

11   Court.  If you want to speak to counsel ask for a recess and

12   speak to counsel, but don't start shouting at each other or

13   talking to each other.  The address should be to the Court.  All

14   right.

15               MR. ANGLADA:  May I ask for guidance from the Court as

16   to the first matter, Your Honor.  There are occasions where a

17   certain matter is waived before the Court or a matter is

18   discussed and then after hours the attorney goes back to his

19   books and finds authority or whatever and then the following

20   morning that counsel, whoever he or she may be, even without a

21   written motion would like to raise it before the Court.

22               THE COURT:  If you raise it, you raise it at twelve and

23   at five.  And that's it.

24               MR. ANGLADA:  Okay.

25               THE COURT:  Twelve and five.  I will always be glad to
```

7

1    reconsider a decision which you feel is a decision which the

2    Court should reconsider because there is an authority that the

3    Court did not have which may guide the Court.

4                    And talking about authority that recently came in,

5    as you know the Singleton case was decided this weekend.

6                    MR. ANGLADA:  On Friday.

7                    THE COURT:  I didn't see any motions on you.

8                    MR. ANGLADA:  Now we have a strong defense, Your Honor.

9    Three out of twelve.  Three out of twelve.

10                   THE COURT:  It may go to the Supreme Court.  All right.

11   Okay.  Let me speak to the Clerk of the Court that wants to speak

12   to me briefly.  One second.

13                   (SHORT PAUSE IN PROCEEDINGS)

14                   THE COURT:  Okay.  The motion, all motions to dismiss,

15   based on Juan Antonio Rodriguez Lopez, are denied.  The Court

16   will issue an opinion and order as to that matter.

17                   All motions based on United States versus

18   Singleton have been denied and they have been reiterated, but

19   they have been denied.  So, 463 by Jose Luis de Leon Mysonet is

20   denied.

21                   Now, perhaps, I should, however, advance my

22   reasoning to you at this time.  And I think that the Juan Antonio

23   Rodriguez Lopez matter has been overstated.  I read last night

24   the transcript of where the Juan Antonio Rodriguez Lopez matter

25   came up.  And Juan Antonio Rodriguez Lopez provided testimony

1  before the Grand Jury in excess of a 120 pages, and then he

2  returned briefly and provided further testimony, and he provided

3  testimony as to the conspiracy, the distribution, packaging,

4  running, distributing and the different persons that helped him

5  package, distribute, run.

6          And he briefly testified before the Grand Jury

7  about one murder which was incorrect, which was untruthful.  And

8  it was untruthful in the sense that he was not there.  As to all

9  the other four or five murders he did not provide testimony

10 before the Grand Jury.

11         I have reviewed the transcript of what happened

12 later Mr. Pereira went to the Grand Jury and explained to the

13 Grand Jury what had occurred, and he went to the same Grand Jury

14 that indicted this gentleman -- explained to the Grand Jury what

15 had occurred through the testimony of an FBI agent.  It was not

16 Mr. Pereira that was testifying, it was an FBI agent that was

17 testifying.

18         And he explained to the Grand Jury exactly what

19 had occurred, what was the untruthfulness that was originally

20 told to them and the untruthfulness was that Juan Antonio

21 Rodriguez Lopez enhanced his testimony to make the Grand Jury

22 believe that he was there during that one murder.  And the Grand

23 Jury was satisfied and they proceeded to issue the superseding

24 indictment as to Juan Antonio Rodriguez Lopez.

25         Under the circumstances, the Court understands

9

1   that is exactly what the now Chief Judge Cerezo said should have

2   been done in a case that was cited by this Court in resolving a

3   similar matter that was brought before the Court in case 97-74.

4   There is an excellent opinion by the Magistrate Judge, which this

5   Court reviewed and affirmed, and the opinion that you will

6   receive will mostly parallel and use the decisions that this

7   Court used in that case.

8            So, the determination as to the motion to dismiss

9   is that determination and you will receive, as you receive today,

10  Mr. Anglada, a full opinion on the bail matter of your client,

11  you will receive --

12            MS. APONTE CABRERA:  He already has it.

13            THE COURT:  You will receive a full opinion of the

14  Court as to that matter.

15            MR. ANGLADA:  Thank you, Your Honor.

16            THE COURT:  Now, I will now attempt to other motions.

17            MR. ANGLADA:  Your Honor, I'm sorry.

18            THE COURT:  Yes, sir.

19            MR. ANGLADA:  Just for the record, Your Honor, if I

20  may, pursuant to Valencia Lucena 925, federal second 506, and

21  pursuant to Latorre 922, federal second one, both First Circuit,

22  Valencia 1991 and Latorre 1990.

23            The Court of Appeals has expressed that when

24  motions to dismiss have been denied, and due to the fact that

25  Grand Jury material are frequently not made available to the

1    defense until after the commencement of trial, the Court has

2    alluded review of the issue on its merits despite the fact that

3    the issue may have been technically raised late.

4                   What I am saying, Your Honor, is that I am asking

5    permission from the Court to reopen this matter once we have, the

6    defense has totally examined the totality of the Grand Jury

7    material.

8             THE COURT:  Well, as I understand it, the Grand Jury

9    materials are not sealed except the last part.

10            MS. RODRIGUEZ:  The Grand Jury transcript on the

11   superseding indictment.

12            THE COURT:  This material is here.

13            MR. ANGLADA:  Yes, I know.  I'm referring to the Grand

14   Jury materials pertaining to the returning of the superseding

15   indictment returned on December 14, 1998.  What I'm saying is

16   because this defense has not been provided any Jencks or Giglio

17   or Grand Jury minutes pertaining to the superseding indictment

18   I'm requesting permission pursuant to Latorre and Valencia to

19   reopen this matter.

20            MS. APONTE CABRERA:  We have requested from the Court

21   access to those Grand Jury minutes and if possible the Court can

22   identify which FBI agent took the stand.

23            MS. RODRIGUEZ:  May we address the Court before on that

24   issue?

25            THE COURT:  I really thought that -- fine go ahead.

1      MS. RODRIGUEZ:  The government sees no basis for

2   disclosure of the Grand Jury proceedings on December 14, 1998.

3   Grand Jury proceedings are by their nature secret and disclosure

4   of Grand Jury material is subject to very few exceptions.

5          In this case the transcript of the superseding

6   indictment is not Jencks because the FBI agent who has testified

7   will not be a witness in this case, which is even if the Court

8   were to determine, it's just that simply put that testimony does

9   not constitute Giglio, that person is not a witness in this case.

10   As such nothing that person could have said constitutes Giglio.

11   The contents of the statements given by Juan Antonio Rodriguez

12   Lopez which would have constituted Giglio, if he were still

13   taking the stand at trial, have already been provided to the

14   defense.

15      MS. APONTE CABRERA:  Well, Your Honor --

16      MS. RODRIGUEZ:  So, we see no basis in law --

17      THE COURT:  The determination of the Court is that if

18   you want that let me see the motion in writing and let me see the

19   cases.   End of issue.

20      MS. APONTE CABRERA:  I would like to briefly, very

21   briefly report to the Court that the reason why I am asking for

22   the identity of this agent is because there was one agent that

23   did testify before the Grand Jury, and this agent's contents of

24   the debriefing that he had with this witness that had to do with

25   other murders were taken to the Grand Jury, not only to that but

1    if in fact the witness before the Grand Jury was Agent Tomas

2    Sanchez this person testified at the bail and detention hearing

3    of my client which was held in Miami, and the Court was informed

4    of my client's involvement in those two murders.

5              And we believe that there are some issues that

6    will be raised at the motions that the Court is going to discuss

7    today, that are triggered also by the testimony of this case

8    agent.  And it is very relevant to know whether case agent Tomas

9    Sanchez is the person that testified before the Grand Jury

10   because this person testified about the investigation in this

11   case.  This person testified about the debriefings he held with

12   the cooperating witnesses.  And even though the whole information

13   didn't get through to the Grand Jury through the mouth of Juan

14   Antonio Rodriguez Lopez it went through the back door of the

15   investigating agent.

16             MS. RODRIGUEZ:  Your Honor may we address the Court?

17             THE COURT:  Yes.  Go ahead.

18             MS. RODRIGUEZ:  We don't understand quite the argument

19   of defense counsel.  What would be the relevance of whether or

20   not it was Special Agent Tomas Sanchez that testified before the

21   Grand Jury?  How would that in any way support any motion to

22   dismiss the indictment?

23             THE COURT:  Well, it wasn't.  End of matter.  It wasn't

24   him.  So, you want to put it in writing.  Put it in writing.  But

25   please, don't make any further discovery with the judge.  All

1    right.   Let's proceed.

2              The case I was speaking about, which I feel is the

3    case that illustrate the point, is United States versus Martinez,

4    710 fed supplement 415, by Chief Judge Cerezo, 415, at page 418,

5    and other cases which you will see will be used by the Court.

6              But again, I can hardly justify precluding all the

7    evidence about the conspiracy which this witness gave all the

8    details because he may have provided untruthful information as to

9    one murder which information it has been proffered is correct

10   information, other than the fact that he was not there.   All

11   right.

12             But anyway, that will be another matter.   The

13   motion to suppress testimony in violation of Title 18, United

14   States Code, Section -- which was filed by Juan Soto Ramirez has

15   already been denied.   That is I don't know what document that is.

16   That's the case based on Singleton.   That's the Singleton motion.

17   All right.

18             Now, I do want to discuss thoroughly the motion

19   requesting specific disclosure, that motion and the Brady, Giglio

20   that that potentially may be related to this witness, that I do

21   want to discuss thoroughly.   So I'm going to leave that for the

22   end.   All right.

23             The motion relating to potential 404(b), that

24   motion the Court understands is premature and so are all the

25   other motions in limine.

1          MS. RODRIGUEZ:  Which motions?

2          THE COURT:  There are four or five motions in limine

3    that have been filed recently.  I think counsel are doing the

4    correct strategy in filing the motions and alerting the Court

5    that that may occur.  But, the Court reminds counsel that I have

6    to perform a 404 balancing test pursuant to the case of United

7    States versus Orlando Rodriguez Cardona, and pursuant to the case

8    of United States versus Cardona 924 fed 2nd 1148, First Circuit

9    of 1991, and United States versus Oppon 863 federal second 141,

10   and 146.  And the balancing test the Court can hardly do it based

11   on proffer documents.  I have to do the balancing test based on

12   what has occurred at that moment, and in what time and space the

13   Court is at that moment facing.  So, I cannot, I cannot do

14   balancing tests in isolation, but within the framework and the

15   contents of the trial.

16          MS. RODRIGUEZ:  May we address the Court?

17          THE COURT:  Yes.

18          MS. RODRIGUEZ:  The United States understands then, I

19   have no quarrel with the Court's decision to defer judgment on

20   404(b) evidence until the time of trial.  We will refrain from

21   addressing those acts in opening statement.

22              However, there were, I believe, four different

23   motions which were filed, which indicated at the outset that the

24   United States' position was that the acts contained or being

25   notified therein, were acts taken in furtherance of the

1    conspiracy charged in the indictment and were overt acts within

2    the conspiracy.  And it was out of an abundance of caution that

3    the United States filed a motion under 404(b), notifying this

4    specific defendant of those specific acts.

5              I'm referring specifically for to possession with

6    intent to distribute heroin, Armando Garcia Garcia, within Barrio

7    Bitumul.  I'm referring to possession of firearm by Juan Cintron

8    Caraballo and Carmelo Vega Pacheco within Barrio Bitumul and

9    within the time frame of the conspiracy.  And there were

10   possession with firearm and cocaine by Ramon Fernandez Malave

11   within the time frame of the conspiracy and within Barrio

12   Bitumul, Barriada Bitumul, specifically the place designated as

13   the central point of the conspiracy.  And all these acts were

14   taken between 1990 and 1994, which were the time frames

15   designated in the indictment.

16             We understand that it's clear because of the

17   conduct and location where the acts were carried out that they

18   are clearly acts in furtherance of the conspiracy.  And on those

19   specific acts, I seek a ruling from the Court so that we may

20   refer to those acts on our opening statements.

21             MR. ROMO-MATIENZO:  If I may.

22             THE COURT:  Yes, sir.

23             MR. ROMO-MATIENZO:  The discovery referring to that act

24   of my client was involved, it's a traffic stop that he was

25   allegedly going against traffic.  And he was stopped by the

1    police and he got out of the car and threw the keys away and left

2    the car locked.  The policeman who intervened, caught them and

3    opened the car.  He doesn't know how because he had shut the car

4    and he had thrown away the keys.  In his report the policeman

5    says that was the way it happened.

6              So, it's in Calle Laguna, and we have -- we

7    received that just last week, so we haven't made our motion to

8    suppress, because we had to speak with our client yesterday, we

9    spoke with him again because he didn't have a chance to see the

10   discovery.  It is clear there is basis for suppression.  They

11   need an order once the car was closed and the keys were thrown

12   away.

13             And we would object to any -- not even to bring

14   the evidence, or mention that they saw the evidence there because

15   they were not suppose to have that legal right to see the

16   evidence.  They had to open the door look under the seats of the

17   car to find the evidence.  So, we are moving to suppress that

18   evidence.

19             And in addition to that, Your Honor, it wasn't a

20   car -- it wasn't in a drug point.  And there was -- they cannot

21   connect the drugs, if it's not suppressed, to the drug points

22   because it wasn't at the drug point.

23             MS. RODRIGUEZ:  Your Honor, can we respond briefly?

24             THE COURT:  Yes.

25             MS. RODRIGUEZ:  The defendant is now, at this time

1   filing motion to suppress.  It's untimely 404(b) material.  And

2   specific notice of that particular intent of the government to

3   use that act in furtherance of the conspiracy was provided prior

4   to December 18, 1997.  This Court provided the government 10 days

5   prior to beginning trial to notify 404(b) material and all

6   material was provided, prior to ten days, prior to December 28.

7   I don't have my file here, but I'm sure I have copy of my file

8   and when it was filed.  Second, Your Honor we can connect it to

9   the conspiracy that is what trial is for.

10              THE COURT:  Fine.

11              MS. RODRIGUEZ:  That's what the United States intends

12  to prove and do, and I don't think we have to prove our cause

13  before we prove our case.  We will prove our case at trial.

14              THE COURT:  I must make, however, one important

15  clarification to all.  And that is what our chief -- the Chief

16  Judge Torruella stated in the case of U.S. versus Rodriguez

17  Cardona, and that is that 404(b) is a rule of exclusion and

18  exception.  And he said in United States versus Rubio Estrada,

19  857 federal second 845, page 851, 856.  He said:  But now in

20  majority, he reiterates that rule 404, is a rule of exclusion.

21                  The government here attempts to render the rule a

22  minor exception.  This practice is inconsistent with fair

23  administration of justice.  We notice that this is a recurrent

24  problem particularly in criminal appeals from the district of

25  Puerto Rico, where the government's representation unnecessarily

1    continues to push Rule 404(b) to its outer limits.  We have

2    issued fair warning on this subject and future conduct of this

3    nature may imperil otherwise valid conviction.

4                Now, he said that because he noticed that the

5    district court, every time a 404 came up, had to issue a very

6    stern instruction and warning to the Court, and in some cases

7    Judge Torruella thought that the warning simply did not cure the

8    problem.  It is the United States who's taking this case not the

9    Court.  The Court as 404(b) will act almost as gatekeeper in

10   allowing the agents in or allowing the evidence in.  Every time I

11   allow the evidence in I will have to give an instruction.

12               But the point made by the Court is that 404(b) is

13   an exception.  It's not the general rule.  It's a rule of

14   exclusion not a rule of inclusion.  And that we have to take it

15   as that.  I will, of course, go issue by issue that's why I'm not

16   making a blanket rule now.  And I will not.  I only say that we

17   have to be very careful because here is what he said, and future

18   conduct of this nature may imperil otherwise valid conviction.

19          MS. RODRIGUEZ:  But now, Justice Bryer, however,

20   notwithstanding Judge Torruella dissent --

21          THE COURT:  Which opinion?

22          MS. RODRIGUEZ:  I believe Rodriguez Cardona.

23          THE COURT:  The opinion that he wrote.  The opinion

24   that he wrote, he's in the majority in this case Torruella,

25   circuit judge.  He writes the majority in this opinion, in U. S.

1    versus Rodriguez Cardona.

2            MS. RODRIGUEZ:  I'm referring to a different opinion.

3            THE COURT:  It's his statement.  It is his statement

4    and he is the chief and I respect him as a chief and this is the

5    chief's writing.

6            MS. RODRIGUEZ:  No, if we may, Your Honor.  If the

7    Court will permit me.  404(b) rulings are very fact specific.

8            THE COURT:  They are.

9            MS. RODRIGUEZ:  The ruling of the First Court line of

10   cases regarding taking into account the specific account of the

11   specific offense being charged.  In this particular case what the

12   government is seeking from the Court right now is a ruling on the

13   acts which are clearly overt acts in furtherance of the

14   conspiracy.

15           If we have a conspiracy being carried out in the

16   Barriada Bitumul, where the drug points are being ran, where

17   heroin, cocaine, crack and marijuana is being distributed with

18   defendants are continuously in the possession of firearms to

19   defend and guard those drug points.  And we have one of the

20   defendants in possession of narcotics, package for distribution

21   at drug points.  He's in possession of seven decks of heroin.  We

22   submit that is not an amount of heroin a single individual would

23   consume at any one point in time.  That is clearly, Your Honor,

24   an act in furtherance of the conspiracy.

25           THE COURT:  Again, if that's the case when the time

20

1    comes I will make the balancing required, required under 404(b)

2    and under the jurisprudence and I'm going to handle one by one.

3            MS. RODRIGUEZ:  Wha we are seeking is a ruling on the

4    specific acts which are acts in furtherance of the conspiracy.

5            THE COURT:  But did they occur between 1990 and 1994.

6            MS. RODRIGUEZ:  Yes, sir.  And within the Barriada

7    Bitumul.

8            MR. ANGLADA:  As to my client it occurred one day after

9    the government decided the conspiracy was over.

10           MS. RODRIGUEZ:  Well --

11           MR. ANGLADA:  In my case the indictment reads March

12   7th, 1994, both the original and the superseding indictment.  As

13   to my case the arrest occurred one day after and I don't think

14   that on or about case law should cure that matter.

15           MS. RODRIGUEZ:  Your Honor, the case law is clear that

16   variance in time either beginning or after the conspiracy is not

17   prejudicial to the defendant.  And one day difference between an

18   act within the Barrio Bitumul, which we will present testimony

19   that the conspiracy continued far beyond March 1994, we

20   understand should not be used to exclude an overt act in

21   furtherance of the conspiracy, he's in possession of the firearm

22   in the Bitumul on March 8, of 1994.

23           MS. APONTE CABRERA:  If we may address this issue.

24           THE COURT:  I'm going to get to them.  I'm going to

25   dispose of all the motions that have been filed, and I will so

1   let's move on.  Let's move on.  All right.

2              So, the decision of the Court at this time is that

3   normally I will hold the determination of 404(b) -- if your

4   question is, can I use this in opening argument; is that the

5   question?

6              MS. RODRIGUEZ:  I want to make reference to the overt

7   acts.

8              THE COURT:  You can make reference to that overt act

9   which was one day later.  But I don't want you to make reference

10  to overt acts that occurred five years after because that's a

11  totally different ball game.

12             MS. RODRIGUEZ:  Overt act with 1990 and 1994.

13             MR. MORALES:  The overt -- the alleged overt act.

14             THE COURT:  Excuse me.  Anyway, I'm going to have a

15  curative instruction, that the fact that it is made in oral

16  argument that does not mean that necessarily it has been proven

17  because statements by counsel are not evidence.  And the fact

18  that the Court allows that argument be made does not mean that

19  necessarily the Court will allow that evidence come in.

20             MR. ANGLADA:  If I may, Your Honor.  You have just

21  ruled that she may be able to refer.  On prior rulings from the

22  bench you advised Sister Counsel for the government to refrain

23  from bringing the weapon into reference.  I would suggest, Your

24  Honor, by reconsideration --

25             THE COURT:  Yes.

1    MR. ANGLADA:  -- for the government to make general

2  allegations as to whether my client was armed or not, but not to

3  make any reference to a March 8, 1994, arrest for possession of a

4  weapon, mutilated weapon with a number of --

5    MS. RODRIGUEZ:  Obliterated serial number.

6    MR. ANGLADA:  Without the Court having the benefit of

7  ruling upon the balancing, the 404(b) balancing because no

8  curative, no curative instruction is going to cure that matter,

9  as Your Honor has just stated pursuant to this matter.  So I will

10  respectfully request this Court to reconsider your most recent

11  ruling on this matter to allow the government to make general

12  references.  I don't think that if they are saying that my client

13  was there for the extent of four years.  I don't think that they

14  need --

15    THE COURT:  Excuse me.

16        (SHORT PAUSE IN PROCEEDINGS)

17    MR. ANGLADA:  I don't think the government needs a

18  specific reference with a specific weapon and show the weapon and

19  bring the weapon to the attention of the jury at the time of

20  opening statements one day after they decided the conspiracy

21  concluded.

22        In addition to that, the government has averred on

23  a number of bill of particular pleadings that the conspiracy

24  concluded on March 7th, 1994.  I think that it will be wiser and

25  more wiser for the Court and fair for the Court to sustain your

1  own prior ruling for the government to refrain from bringing the

2  weapon in at the time of opening statement.

3         MS. RODRIGUEZ:  If I may Your Honor?

4         THE COURT:  Yes.

5         MS. RODRIGUEZ:  Your Honor, the rules are not met to

6  curtail the prosecution of a case.  The rules are meant to

7  establish what evidence is admissible and what evidence is not

8  admissible.  Once the Court establishes what evidence is

9  admissible and what is not admissible, the government can make

10 reference to the evidence that is admissible.  I don't, to use

11 the term of Brother Counsel, it is not fair for defense to sit

12 here and decide what the government should refer to and what the

13 government needs to present to the jury during its opening

14 statement, which is a most discretionary statement to the jury

15 which is our opportunity to summarize the evidence the government

16 intends to show to the jury.  What we need or what we do not need

17 to show in order for us to prove our case during this trial.

18         The fact is that the rules permit us to use every

19 single piece of evidence we have in order to prove our case and

20 we have a right to summarize each and every one of those pieces

21 of evidence to the jury in our opening statement if we so choose.

22         Now, the acts which we are making reference to

23 here are clear acts in furtherance of the conspiracy.  Clearly.

24 The man in possession of a firearm with obliterated serial number

25 in Bitumul within the time frame of the conspiracy.  And other

24

1   defendants are in possession of packaged narcotics ready for sale

2   at drug points within Barrio Bitumul within time frame of the

3   conspiracy.  They are overt acts in furtherance of the

4   conspiracy.  The government notified them, to the defense prior

5   to trial only to provide them with notice that we were intent on

6   using that evidence.

7        MR. ANGLADA:  Your Honor, I think the government is

8   entitled to bring whatever evidence they have.

9        THE COURT:  But isn't she alleging that the facts --

10       MR. ANGLADA:  And there is another factor, if I may.

11   The government is making plenty of references to whatever

12   happened or failed to happen at the Bitumul.  And what she's

13   saying that whatever happened in Bitumul is part of the

14   conspiracy and I think that there is, if I may, with all due

15   respect, a class oriented emphasizes on whatever happened in

16   Bitumul is part of the conspiracy.  And Bitumul happens to be a

17   normal run of the mile community in San Juan, Puerto Rico.

18       THE COURT:  But listen, what I have before me -- what

19   is this, an arrest search warrant?

20       MS. RODRIGUEZ:  Possession, arrest for possession of --

21       THE COURT:  An arrest after the conspiracy is alleged

22   to have occurred.

23       MR. ANGLADA:  To have concluded.

24       MS. RODRIGUEZ:  According to the indictment not

25   according -- and then the Grand Jury was -- a Grand Jury visited

1    this area twice, April of 1997 and mid December of 1998, on both

2    occasions the government proffered to the Grand Jury that the

3    conspiracy concluded on March 7th, 1994.

4            THE COURT:  And the arrest was March 8th?

5            MR. ANGLADA:  So, they are bound by their own actions,

6    Your Honor.

7            THE COURT:  Okay.  The ruling of the Court is simple

8    that will be permitted, that specific one will be permitted.

9    Let's go on.  Let's go on.  Let's move on forward.  We shall move

10   forward.  That one specifically shall be allowed period.  All

11   right.

12           Next I have a motion in limine filed by William

13   Soto Beniquez, Marlene Aponte, which is straight 404, prohibit

14   introduction of defendant's prior under 609, et cetera.  That's

15   straight 404.  Right?

16           MS. RODRIGUEZ:  If I may, Your Honor, the United States

17   has not filed an opposition to this motion yet.  We understand

18   it's premature at this time.

19           THE COURT:  I'm going to rule it's premature.  You want

20   me to reconsider?

21           MS. RODRIGUEZ:  No, sir.

22           THE COURT:  Good.  Premature.  I'm giving the ruling

23   which I anticipated when I started that most probably all 404

24   will be deemed premature.  That's what I'm doing.

25           MR. MORALES:  Is she going to address it in opening

26

1    statement.   It will not be premature because she will be

2    mentioning bad acts.

3         MS. APONTE CABRERA:   What I'm concerned is, my client

4    had two convictions in state court for the murder that Juan

5    Antonio Rodriguez Lopez perjured himself on.   And he testified

6    before that, and I know the government has that information

7    because that is part of the communications that I submitted to

8    the Court in one of my motions to dismiss, because this person to

9    the stand and stated that my client was there and that he was

10   there and that my client was responsible for this murder and he

11   ordered, et cetera, et cetera.

12         And because of this perjury my client has two

13   state convictions that are now being reviewed on motion for new

14   trial and the Court has indicated that today will make its

15   decision of whether they will set aside this conviction because

16   of the new information regarding the witness that the

17   Commonwealth presented which is Juan Antonio Rodriguez Lopez.

18         THE COURT:   But was there other evidence aside from

19   Juan Antonio Rodriguez in that case?

20         MS. APONTE CABRERA:   They brought a federal agent I

21   believe to corroborate, in rebuttal to Juan Antonio Rodriguez

22   Lopez's testimony, but aside --

23         THE COURT:   No.   But the question the Court is asking

24   is simple:   Did the state convictions depend exclusively on the

25   testimony of Mr. Rodriguez?   That's a straight yes or no.

1          MS. RODRIGUEZ:  If I may.  I think we can solve, even

2    we have no intention nor would it be admissible for us to bring

3    the state conviction of William Soto Beniquez for conduct which

4    we are charging was in furtherance of the indictment in this

5    case.  I think that is very clear to the government and we're

6    saying it for the record.  And I'm saying that if he's present at

7    a particular time I'm not going to prove that through credibility

8    of findings of another court.  I'm go to prove it here and allow

9    the jury here to make the credibility findings.

10         I understand your motion is premature because 609,

11   goes to prior conviction, to the prior testimony of a witness.

12   And the only way that I could impeach is William Soto Beniquez is

13   if William Soto Beniquez takes the stand.  I will raise this

14   issue to the Court at that time.

15         THE COURT:  That's a different matter.

16         MS. APONTE CABRERA:  That response by the government

17   addresses our inquiry and we just wanted to do it in time, Your

18   Honor.

19         THE COURT:  Good.  So, then we have the defendant

20   William Soto Beniquez under rule 702.

21         MS. APONTE CABRERA:  That will be, that if a case

22   agent -- since the government has stated that it would sit a case

23   agent to testify, that the testimony of this state agent not

24   serve to be the corroboration for the witness as to properly

25   vouching for credibility, et cetera.

1          THE COURT:  In other words, it's a bootstraper.

2          MS. APONTE CABRERA:  Exactly.  So, we would like to

3     know if the case agent, it would be other than for bootstrapping

4     purposes, and we get a proffer before this person testifies so

5     that the Court can make a proper ruling.  Because if it gets to

6     the jury before the Court has had the opportunity to have the

7     proffer and rule on it, there is irreparable damage.

8          THE COURT:  Do you know who this agent is?

9          MS. APONTE CABRERA:  No, Your Honor, we have no idea.

10     I know that the government has stated that they will sit an

11     agent.  But, any agent could do a 702.

12          THE COURT:  Very well.  I will rule on that matter when

13     it comes.

14               Motion submitting proposed preliminary instruction

15     by Marlene Aponte Cabrera that jurors not be allowed to take

16     notes.  That is, I will allow juror notes to be given and I will

17     give the instruction provided by Counsel Miriam Ramos Grateroles,

18     motion joining pending motion by Rene Gonzalez Ayala.

19          MR. MIRANDA CORRADA:  That was taken care of by your

20     ruling on your prior motion.

21          THE COURT:  But anyway, I'm granting it.

22          MS. APONTE CABRERA:  We will join those motions.

23          MR. ANGLADA:  We're all joining.

24          MS. RODRIGUEZ:  Of course.

25          THE COURT:  Okay.  Then we have the O'Brian request

1    motion to dismiss.  That's denied.  You will receive an opinion

2    as to that.  It's motion on U. S. v. Brian, to dismiss.  And my

3    decision to deny the motion will be based on the case of U.S.

4    versus O'Brian.  A particular determination which the Court made.

5    So, the motion to dismiss by Mr. Ayala is denied.

6             Motion adopting motions by Juan Soto Ramirez is

7    granted, filed on January 7th.  Motion requesting leave to file

8    motion after deadline granted, because it refers to motions it

9    refers to documents or discovery received after the deadline.

10   Granted.  That's made by Mr. Juan Soto Ramirez on January 7th.

11   Filed on January 7th.

12            Motion in limine by Juan Soto Ramirez.  Now, this

13   motion in limine is also a 404.  However, you haven't answered

14   this.

15            MS. RODRIGUEZ:  We just received that yesterday, Your

16   Honor, or the day before and I believe it refers to evidence.

17            THE COURT:  It refers to evidence.  It refers to --

18   yes, a search on the property of Miguel Vega Cosme on November

19   25th, 1994, six months after the conspiracy ended.

20            MS. RAMOS-GRATEROLES:  That motion was notified on the

21   government on January 7th, the same day I filed it in Court.

22            THE COURT:  Anyway that's premature.

23            MS. RODRIGUEZ:  Right.

24            THE COURT:  It's premature.  Please answer it.

25            MS. RODRIGUEZ:  Yes, sir.

30

1          THE COURT:   This has to be fully briefed by the time

2    the Court is to make a 404 determination on that.   This one, I

3    must tell you, is a little different.   The arguments must be a

4    little bit different than the arguments --

5          MS. RODRIGUEZ:   We understand so, Your Honor.

6          MS. RAMOS-GRATEROLES:   And the government will not

7    refer to this in the opening statement.

8          MS. RODRIGUEZ:   That's my understanding.

9          THE COURT:   The motion submitting preliminary

10   instruction of note taking shall be granted.   It is granted.   And

11   I will give the instruction on note taking.   Okay.

12                Now, Miguel Vega Cosme's motion to suppress.   All

13   right.   This was filed today.

14         MS. RODRIGUEZ:   By Miguel Cosme.   The information was

15   notified --

16         THE COURT:   Well, when did you -- it's very simple,

17   when did you receive the information that you're now seeking to

18   suppress?

19         MS. BONINI:   If I recall it was on 4th of January when

20   we came into jury selection that Sister Council gave us copy of

21   the designation.   And it was at that time --

22         MS. RODRIGUEZ:   If I may address the Court?

23         THE COURT:   Yes.

24         MS. RODRIGUEZ:   We notified this act prior to December

25   18, 1997.   We provided counsel with Jencks material on January

1   4th, that was the date when we received Jencks material from the

2   witnesses of the government.  But we provided counsel with

3   notification of this act prior to December 18, 1997.

4               Now, I am not -- Jencks material, Your Honor,

5   technically under the law, the government is not required to

6   provide until after the witness sits at trial. So, I don't

7   believe that the receipt of Jencks material on a specific date

8   should serve the basis for why this belated motion to suppress

9   should be permitted after trial has begun on an issue which

10  defendant had been noticed well in advance of trial.

11              THE COURT:  Anyway, isn't this going to be 404, anyway?

12              MS. RODRIGUEZ:  Well, it might not be, Your Honor.  We

13  understand that we are able to prove that the conspiracy extended

14  until that date, November '94.

15              MR. ANGLADA:  On or about, Your Honor.

16              THE COURT:  But weren't they all in jail?

17              MS. RODRIGUEZ:  No.

18              THE COURT:  No?

19              MS. RODRIGUEZ:  No, sir.

20              THE COURT:  Miguel Cosme was not in jail?

21              MS. RODRIGUEZ:  Absolutely not.  He was transferring

22  narcotics at the time.

23              THE COURT:  Okay.  They were arrested in 1997.

24              MS. BONINI:  Correct, Your Honor.  It takes seven

25  months.

32

1          THE COURT:  So, it's still 404(b).

2          MS. RODRIGUEZ:  No, Your Honor.  We submit to the Court

3     that the evidence at trial will prove differently.

4          MR. ANGLADA:  On or about, expanded seven months.

5          MS. APONTE CABRERA:  The second amended allegation does

6     not have the specific reference to those items produced in the

7     search of Miguel Vega Cosme's residence and also the search on

8     '97 the Court ordered.

9               And on 10/28/97 that the government had to produce

10    the search and seizure orders and the related documentation

11    including the statements by the agent by 10/8/97.  And when --

12    the Court was very upset when at the status at 10/28/97, we have

13    the minutes here, when the government still hadn't provided them.

14    And then the government stated that they would make an effort to

15    provide of all the searches that were conducted, the documents

16    related to those searches and this was not designated in this

17    case as evidence.

18          MS. RODRIGUEZ:  If I may?

19          THE COURT:  Yes.

20          MS. RODRIGUEZ:  The Court ordered the government too

21    provide all documents in its possession.  These documents did not

22    come into the government's position until the day that they were

23    provided to the Court and the Court can question the witness that

24    provided the government with those documents.

25          THE COURT:  Fine.  So, I'm going to hold a hearing.

33

1          MS. RODRIGUEZ:  And the specific acts were notified to

2     the defendant Miguel Vega Cosme through a 404(b) motion filed

3     prior to December 18th.

4          THE COURT:  Okay.  Very well.  The motion -- the Court

5     does not consider the motion to suppress as late, and I will hold

6     a hearing on that matter.  It's deferred.

7               Now, the double jeopardy, the double jeopardy

8     motion which has been filed on behalf of your client.

9          MR. ANGLADA:  Which I join, Your Honor.

10          THE COURT:  Fine.  I thought you would be joining it.

11               (ALL DEFENSE COUNSEL JOINED)

12          MS. RODRIGUEZ:  How can you all join a double jeopardy

13     motion?

14          THE COURT:  Only those that have been convicted before

15     can join.

16          MS. BONINI:  Those that have prior convictions.

17          THE COURT:  Nobody can join a motion of double jeopardy

18     that has not been convicted because you have to have a prior

19     conviction.  You don't have a prior conviction you cannot join.

20          MS. RODRIGUEZ:  And prior conviction to this

21     conspiracy.  If they have a conviction for something that is not

22     related.

23          MR. ANGLADA:  I join for conviction of my client.

24          THE COURT:  All right.  Now, here is the gist,

25     Magistrate Judge Delgado rendered what I thought was an excellent

34

1   opinion in a related case, and I have the case around here

2   somewhere, in 96-91, a similar issue was raised.  And Magistrate

3   Judge Delgado rendered what I thought was an excellent opinion,

4   which guides the Court in resolving this matter.

5           Again, you will receive from the Court a written

6   determination, but basically the motion is denied because of

7   frankly First Circuit Court, in point jurisprudence, in United

8   States versus Quinones, the Court stated that Puerto Rico is an

9   autonomous political sovereign under the constitution for double

10  jeopardy cases.  And stated that, in United States versus Lopez

11  Andino stated that Puerto Rico was a state for the purposes of

12  double jeopardy, 830 federal 2nd 1164, 831 federal 2nd 1164,

13  First Circuit case 1987, with a certiorari denied at 486, 1034.

14          Now, once that occurs then the onus is on the

15  defendant under United States versus Bacus, 359 U. S. 129, at

16  1959.  There the defendant has to prove that the state sovereign

17  was acting as a pawn of the state, of the federal sovereign.

18  Excuse me.  And you have provided no evidence to the Court

19  whatsoever that is the case.  So, you will receive an opinion

20  from the Court, but I advise you that if you want to read -- you

21  want to anticipate in what the opinion is going to be it's going

22  to be very similar to 96-91, United States versus Luis A. Rosado,

23  the decision of the magistrate judge.

24          Basically let me reiterate it for you.  Make sure

25  you have grasped it completely.  Basically, notwithstanding the

1   arguments you have made, the First Circuit has decided that the

2   double jeopardy does not apply when there are two separate

3   sovereigns who are filing different criminal prosecutions.   Then

4   the issue is Puerto Rico sovereign.   The answer to that is found

5   in U. S. versus Andino, was the last expression made by the

6   Circuit Court for double jeopardy purposes.

7           Once that occurs then there is still a door open

8   for a defendant, and that is the door of Barcus, U.S. versus

9   Barcus.   None of the motions that have been filed proffer any

10  evidence whatsoever in compliance with U. S. versus Barcus.   So,

11  therefore, the motion is denied.   If you want to raise it again

12  you should provide then evidence.

13          MR. MIRANDA CORRADA:   Just to have the record clear

14  this is one in a pair of motions regarding the dismissal of the

15  case.   The first one was the was the commerce clause issue which

16  I'm aware that the Court decided.   But as they say here in Puerto

17  Rico, either the Court of Appeals, with all due respect, either

18  it comes in here or it makes itself further.   You cannot

19  simultaneously decide one thing and then the other.   I understand

20  Your Honor is bound by precedence and by First Circuit

21  precedence, as a matter of fact, but that's what I wanted to say

22  for the record.

23          THE COURT:   I know.   And I realize that there are civil

24  decisions that stand for the proposition that Puerto Rico is not

25  really sovereign.   But I must state the jurisprudence on an issue

1    to issue case.   The issue now goes Puerto Rico sovereign for

2    double jeopardy.   And that has been squarely decided by U.S.

3    versus Andino.

4              MR. ANGLADA:   I would like shortly --

5              THE COURT:   Hold it.   But mainly --

6              MR. ANGLADA:   I would like permission to supplement

7    this matter because I have to say by that, both Quinones and

8    Lopez Andino, and decisions by the district of Connecticut of the

9    Second Circuit are prior to political events by both political

10   branches of the U.S. government, the executive and legislative.

11   And very particularly, I ask permission to supplement this matter

12   particularly the discussion in the Senate of the United States in

13   late 1998, when a sentence of the senate resolution was adopted.

14             THE COURT:   Very well.

15             MR. ANGLADA:   I consider that Lopez Andino and Quinones

16   and the First Circuit are absolutely wrong.

17             THE COURT:   Fine.

18             MR. ANGLADA:   I think that the Eleventh Circuit has

19   ruled upon this matter in a correct fashion.

20             THE COURT:   Let me say the following.   Let me say the

21   following:   This Court cannot accept that the Senate of the

22   United States reverses the First Circuit because it doesn't have

23   the power to do so.   Simply, he who reverses the First Circuit is

24   the Supreme Court.

25             MR. ANGLADA:   We all agree.

37

1          THE COURT:  Now, another matter which is important is

2     the following, and that is contained at page seven of the

3     decision of Judge -- Magistrate Judge Delgado.  And that is that

4     double jeopardy is not violated because the defendant is being

5     prosecuted in different offenses.  That's a distinction that

6     ought to be made before you start running into constitutional

7     arguments because as you know, as you know this Court will not

8     touch a constitutional question if it can resolve it on a

9     statutory matter.  So, don't expect this Court to go into the

10    Puerto Rican political problem when I can step off the horse on

11    another matter.  So I remind you of that because this is a case

12    that is a criminal case and if I can step off the horse on a

13    criminal matter I am not going to step on the horse on a

14    political matter.

15          MR. ANGLADA:  But would the Court allow this counsel --

16          THE COURT:  Of course, you can supplement all you want.

17    I cannot and will not impede if you illustrate the Court on any

18    matter which you deem is important.  You will also receive, again

19    you will receive a short, emphasis on short, opinion on double

20    jeopardy.

21          MS. RODRIGUEZ:  Can I, very briefly, on that point.

22          THE COURT:  Yes.

23          MS. RODRIGUEZ:  May we request that any defense counsel

24    filing any additional double jeopardy motions be required to

25    provide the government copy of the judgment in state court

1    relating to the conviction in state court and the charging

2    documents so that we may know what conduct it was that the

3    defendant were convicted of, because in this particular case

4    we're acting in a vacuum.

5         THE COURT:  Of course.  That's a very good suggestion,

6    because if you are going to make an allegation as to double

7    jeopardy the Court must have the conviction that is alleged and I

8    must see the conviction in order to be prepared.

9         MS. APONTE CABRERA:  Your Honor, if I may briefly

10   address the Court.  Regarding the same issue of double jeopardy I

11   would like to interject that one of the very few, if not only

12   exceptions other than having the federal -- the local government

13   being a pawn of the federal government would be joint federal and

14   state investigation.

15        THE COURT:  Of course that is another one.

16        MS. APONTE CABRERA:  And the government, on various

17   occasions, has stated that the Police of Puerto Rico witnesses

18   that they're using in this case have been providing them with

19   information, particularly in a hearing on May 1997, before the

20   Southern District of Florida, Miami Division.

21             Agent Tomas Sanchez testified that they obtained

22   report as to their investigation of the gang that is being

23   indicted in this case, he used the word gang at page 19 of the

24   testimony.  And that the evidence in this case, aside from the

25   fact that also in state cases we have, as we evidenced through

1    the letters interchanged between both the local prosecutor and

2    two federal prosecutors in this case, that there is not only a

3    cooperation but an active participation of both representatives

4    of both governments working in conjunction to obtain conviction

5    against defendants that are being indicted in this case.

6              So, if they belong -- merely just having a

7    separate sovereign prosecution, it goes as to having local and

8    joint federal and state investigations as to the persons that are

9    being referred to by Agent Tomas Sanchez as a gang and the

10   investigations of the local police department and the information

11   related to the federal government.

12             THE COURT:  All right.  Okay.  But I reiterate the

13   motion to dismiss based on double jeopardy as drafted and the one

14   that I have not, the future one that you're going to file, I

15   can't rule on that one.  That one is denied for the reasons that

16   I have provided you.  The motion submitting draft order regarding

17   attendance at trial I have signed.

18             MS. APONTE CABRERA:  Thank you, Your Honor.

19             THE COURT:  As to all.  Everybody is included.  The 11

20   counsel.  Two four, six, eight, 10, 12.  Two four, six, eight 10,

21   11.  Eleven counsel.  All right.

22             There is a supplemental motion incorporating

23   memorandum of law as to William Beniquez that has to do with

24   Brady.  Yes, that I'm holding as to that.

25             Juan Soto Ramirez has filed an opposition to

1   motion to dismiss.  That I have taken it under advisement, and

2   has been considered.  Chiclana be permanently excluded.

3           MS. RAMOS-GRATEROLES:  He failed to tell the attorneys

4   that he was a private detective.  He lied under oath.  He should

5   not be in the panel.

6           THE COURT:  This matter is referred to the chief judge.

7   This is referred to the chief judge.  I'm not going to decide the

8   issue.  I think it's important.

9           MR. RAMOS-GRATEROLES:  We have one of our challenges on

10  him, and he was lying.

11          THE COURT:  But I didn't know that.

12          MS. RODRIGUEZ:  You didn't ask him if he was a private

13  investigator.

14          THE COURT:  No, he wasn't.

15          MS. RAMOS-GRATEROLES:  He said he was retired.

16          MS. RODRIGUEZ:  Being retired is different from private

17  investigator.

18          MR. MIRANDA CORRADA:  At best it's misleading.

19          THE COURT:  The matter of Mr. Chiclana, Angel M.

20  Chiclana will not be decided by this Court.  The matter will be

21  referred and is referred to the Honorable Judge, Chief Judge, for

22  a determination.  She will know what to do with it.  There.

23              Motion under Rule 12(b) of the Federal Rules of

24  Criminal Procedure.  All right.  These are video tapes which

25  apparently occurred way after the conspiracy ended, right?

41

1          MS. RAMOS-GRATEROLES:  That's correct.

2          THE COURT:  Will you please answer this.

3          MS. RODRIGUEZ:  Yes, sir.

4          THE COURT:  And so that is under advisement.  Now, what

5    I want to seriously discuss --

6          MR. RIVERA:  Can I have one second?

7          THE COURT:  Yes.

8          MR. RIVERA:  I made a motion in open court regarding

9    404(b).  I did not submit a written motion because the Court told

10   me basically or I understood the Court that it was premature.

11         MS. RODRIGUEZ:  I understood that he joined other

12   motions and I'm not going to make reference to acts by his

13   defendant.

14         MR. RIVERA:  Very well.

15         MS. RODRIGUEZ:  Clearly evidence of other bad acts that

16   the Court has clearly said it will defer judgment.

17         MR. RIVERA:  Fine.

18         THE COURT:  What I want to seriously discuss with you

19   is --

20         MR. MORALES:  You left Carmelo Vega which was one of

21   the earlier motions.  404(b).

22         THE COURT:  All right.  You want to discuss your

23   motion?

24         MR. MORALES:  Basically, when we started the case we

25   had all the discovery problems, the indictment and the

1   superseding indictment really didn't allow me to know what

2   Carmelo Vega's position in this alleged conspiracy was.

3          THE COURT:  But you now know it.

4          MR. MORALES:  Well, sort of, now that we're getting

5   this late notification of 404(b) information.  We requested a

6   bill of particulars that was denied.  And really, the discovery

7   that's not cured is the lack of information because still there

8   are many things that I know will come up at trial that I'm not

9   aware of, but from information from the government that this

10   attorney could introduce information that my client was in

11   possession of a handgun, a handgun that did of a serial number.

12   A handgun that was being carried in the date he is not alleged to

13   have been doing anything in relationship to this conspiracy.  He

14   was merely walking in the Barriada Bitumul with the gun on his

15   side.  He was seen by three policemen.  He was stopped.  He said,

16   yes, I have it and he gave it to them and there was an

17   accusation.  Okay.

18          Now, she says that it's not 404(b) because it's

19   allegedly an overt act in furtherance of the conspiracy.  But

20   there is a mere possession of a weapon, and there is no

21   relationship to the use of that weapon based on that particular

22   arrest.  As of that date, that individual was not using that gun

23   in furtherance of the conspiracy.  And if she says that it's an

24   overt act she has to link that possession of that weapon with

25   something else.

43

1        MS. RODRIGUEZ:  Well, Your Honor, that's exactly what

2   we are going to do in trial.  I cannot advance my entire case to

3   defense counsel now to justify how I'm going to connect that

4   weapon.  But just from the information provided in the indictment

5   itself, which says that the defendants at all times possess,

6   brandish and used weapons in furtherance of the conspiracy in

7   precise drug points to protect the narcotics that were being sold

8   at that drug point.

9        That is sufficient information for the defendant

10  to see how the United States is going to use this information.

11  As defense counsel himself says, he is in broad daylight in

12  possession of an illegal firearm, in the Barriada Bitumul in

13  Calle Frances, the main drug point which was located in Calle

14  Frances, Calle Frances and Cuba.  He's in Calle Frances in

15  possession of a weapon in broad daylight near the --

16        THE COURT:  What date?  Give me the date.

17        MS. RODRIGUEZ:  October 22nd, 1990.

18        THE COURT:  It's in the conspiracy?

19        MR. MORALES:  Within the time frame of the conspiracy.

20  However, Your Honor I don't see that mere possession equals that,

21  that is an overt act in furtherance of the conspiracy.

22        MS. RODRIGUEZ:  That's for the jury to determine.

23        MR. MORALES:  But in terms of whether it's 404(b)

24  information.

25        THE COURT:  What is the issue?  The issue is, if she

1   can use that in opening statement.  I would allow it.  It seems

2   that when the Court would make the balancing test, it seems very

3   probable that the balance test is one case, the balance test will

4   most probably be against the defendant.

5         MR. ANGLADA:  If I may.  I don't think that Frances and

6   Cuba Street belong to Bitumul at all.  I do have the impression

7   that doesn't belong to Bitumul Ward.  And there I am looking at a

8   government's perception that Bitumul is much bigger than what it

9   is, A; and B, that whatever happens in Bitumul is admissible.

10   And again, I am looking at a class or attitude by the --

11         THE COURT:  Does the superseding indictment say

12   anything about Mr. Vega Pacheco?

13         MR. ANGLADA:  No.  I have the impression that Bitumul

14   doesn't include Frances and Cuba Street in Hato Rey, Puerto Rico.

15   That may be a matter to discuss at some later point, Your Honor.

16         MS. RODRIGUEZ:  That's a matter for the jury to

17   determine.

18         MR. ANGLADA:  For the jury to determine where Bitumul

19   is?

20         MR. RIVERA:  I think it can be a matter for the Court

21   to decide.

22         MR. ANGLADA:  For the Court to decide where Bitumul

23   ends.

24         MR. RIVERA:  That it's common knowledge, everyone

25   should know where it ends.

1          MR. DEL TORO:  The boundary --

2          THE COURT:  The Court has made the determination that

3     you may use that in oral argument, in opening statement.

4          MS. RODRIGUEZ:  Thank you.

5          THE COURT:  Without precluding that when the Court

6     performs the balance test it will not be admitted.  So, if it's

7     not admitted it will not be admitted.  I may give the jury the

8     cautionary instruction that the fact that you will be authorized

9     to make a certain statement does not necessarily mean that there

10    will be -- that all that evidence is going to be accepted.  So if

11    you don't produce it may be against you.

12         MR. MORALES:  I will request that, also, another

13    precautionary instruction be given, that the particular things

14    that are being -- particularly the possession of the handgun even

15    though it's mentioned that the jury has to make a determination

16    whether that particular act is or is not an overt act in

17    furtherance.

18         THE COURT:  Fine.  Prepare me that instruction and I

19    will give it after oral argument.  All right.

20         MS. RODRIGUEZ:  After oral argument?

21         THE COURT:  After the initial arguments.

22              The motion in limine has not been solved.  It's

23    deferred as premature.  It's 404.

24              Now, however, I do want to discuss all the

25    information relating to this witness who was a witness that you

1    had and whose information may turn out to be either Brady or

2    Kyles or Giglio.  Giglio it will not, if he's not your witness

3    but it may be Brady or Kyles.  So, that is what I have to discuss

4    and the other motion that is still pending.  Right.

5           Now, what is it that today the defendants insist

6    that you ought to have and you don't have?  And I am referring to

7    the proponent of the motion, Ms. Ramos Grateroles, you are the

8    proponent of the motion.

9           MS. RAMOS-GRATEROLES:  Yes, Your Honor.  The response

10   given by the government as to the specific disclosure.  Now, it's

11   a little bit more clear from what the government stated first.

12   Now, it appears that since July 21st, 1998, Rodriguez Lopez for

13   the first time admitted to the FBI that he lied.  I would request

14   that the government provide the rough notes of the interview of

15   July 21st, 1998, or whatever document was prepared at the time

16   that Mr. Senabria interviewed Rodriguez Lopez.

17          On December the 1st, Rodriguez Lopez for the first

18   time admitted to the FBI Agent Ivan Lopez that he was not present

19   when Carlito was murdered.  We all know that those interview

20   notes are taken by the DEA or FBI or whatever, even the

21   government, if the government is present.  So the rough notes of

22   that interview should be provided to the Court.

23          THE COURT:  December?

24          MS. RAMOS-GRATEROLES:  Yes, that is the one of December

25   the 1st, 1998.

1          THE COURT:  Go ahead.

2          MS. RAMOS-GRATEROLES:  He also admitted that in that

3    time he was not present when Angel Luis Rivera Pagan Cutillo was

4    murdered.

5          THE COURT:  Now, all those other murders are problems,

6    are problems on 302's.  But they were not as such stated to the

7    Grand Jury because I read the Grand Jury minutes.  I read the

8    Grand Jury transcript, not the minutes.  The transcript.

9          MS. RAMOS-GRATEROLES:  But that even if that didn't

10   come to the Grand Jury, it illustrates to the government that its

11   witness is lying.  So, they have the duty that once they got the

12   first date, on July the 1st when they -- July 21st, when they

13   first got knowledge that Rodriguez Lopez was lying that should

14   have been provided to the defense.  That is what precisely --

15         THE COURT:  Fine.  But what is the prejudice?  What is

16   the prejudice?  You have it now.  You know now that he was lying.

17   What is the prejudice?  What is the prejudice?  You now know that

18   he lied and you can either get him as a witness or you can --

19         MS. APONTE CABRERA:  He was the government's witness by

20   which a Grand Jury returned an indictment and the information

21   provided by case agent Sanchez was the other witness relating to

22   information about a second murder that this person had related to

23   him as part of the debriefings, and part of his communication

24   with this witness, we believe that the Grand Jury was exposed,

25   not only through his particular testimony but through the case

1  agent who interviewed him and debriefed him and that the process

2  was tainted.  His testimony tainted the process of the Grand

3  Jury.

4         THE COURT:  No.

5         MS. APONTE CABRERA:  The defense is prejudiced because

6  the defense prepared -- was prepared to defend this case and part

7  of the defense that was being planned was to attack this witness'

8  credibility in cross examination, bring forth matters that would

9  expose him as a liar, that would expose that the facts that he

10  had stated before under oath were lies.  And not only in this

11  Grand Jury testimony, but also he provided sworn statements to

12  local authorities which were available to the federal government.

13         So, if this person could be exposed as a liar in

14  cross examination being the government witness, being the

15  government witness that obtained the indictment we could have had

16  a very strong defense only by cross-examining this guy with the

17  sworn statements he provided to the local authorities.

18         MS. RODRIGUEZ:  May we address the Court?  I think the

19  government has a right to address the Court at this time.

20         THE COURT:  I think we're off track.  I think we're off

21  track.

22         MS. RODRIGUEZ:  I think we got to the core of this

23  motion, and the shower of motions that have been filed for the

24  past month against the government in this case alleging

25  prosecutorial --

49

1          THE COURT:  There is no -- I refuse to allow you to

2     enter into that because I don't think that is prosecutorial

3     misconduct and it's final.

4          MS. RODRIGUEZ:  Very well.

5          THE COURT:  Take it up to the Court of Appeals.  That's

6     it.  I had enough of that.

7          MS. RODRIGUEZ:  All right.  We won't go into that.  I

8     think the purpose of the current motion before the Court is --

9          THE COURT:  I have a Kyles and Brady matter.  Can we

10    discuss that?  That's what I want to discuss.  I don't want to

11    discuss prosecutorial misconduct.  The Court has made a

12    determination that there is no prosecutorial misconduct.  This

13    gentleman Mr. Juan Lopez testified on April 3rd, 1997, and April

14    10th, and that's it.  It's final.  And we're talking about facts

15    that occurred on July 21st and December of 1998.

16         MS. RODRIGUEZ:  Very well.  The motion of the United

17    States is that the information the United States obtained on July

18    21st, and subsequent to that request, in regards to information

19    that was being provided by Juan Rodriguez Lopez was not Brady.

20    It did not exculpate any of the defendants in this case in any

21    way.  If at all it was Giglio and only if that witness was to

22    take the stand on behalf of the government.

23         THE COURT:  Okay.  There I disagree with you.  Let me

24    tell you why.  There I disagree with you, because it is not until

25    recently that you decided not to use him, recently.

1    MS. RODRIGUEZ:  We can't specify when we decided not to

2  use him.

3    THE COURT:  But he was a witness until recently.

4    MR. RIVERA:  Until December at least.

5    THE COURT:  And he was a witness until you decided to

6  indict him.  He was a witness in this case.  So if he was your

7  witness until then, you should have then provided all the

8  information and let them do whatever they want to do, let the

9  defendants do.

10    So, I am going to order that the requested

11  information about psychiatric examination, all that be provided,

12  because that should have been turned over a long time ago so you

13  turn it over now.  And whatever you have, I'm not asking you to

14  go out and get information you don't have.  I am ordering you

15  that all the information that you may now have, which is being

16  requested, the fact that it may not today be Brady, it may not be

17  today Kyles, but it was Brady and Kyles from July until December.

18  It was.  It really was.

19    MS. RODRIGUEZ:  Your Honor, if we may address the

20  Court?

21    THE COURT:  You may.

22    MS. RODRIGUEZ:  We think, very respectfully, Your

23  Honor, the Court might be confusing two issues.  Very

24  respectfully.

25    THE COURT:  Yes.  Go ahead.  I have stated before that

1    I may be confused.  There is no problem.

2              MS. RODRIGUEZ:  The piece of information is Brady in

3    August of 1997.  It is Brady today.  It will be Brady in the year

4    two thousand.

5              Juan Antonio Rodriguez Lopez's statement that he

6    was not present at the murder of Edberto Rivera Gonzalez, also

7    known as "Picu", in no way, in no way serves to exculpate any of

8    the defendants of the charges in the indictment.  It does not

9    mean that any of the defendants did not distribute narcotics.  It

10   does not mean that the defendants --

11             THE COURT:  No, you're right.  You're right.

12             MS. RODRIGUEZ:  It does not mean that any of the

13   defendants --

14             THE COURT:  But wouldn't it exculpate him and provide

15   evidence of exculpation as to that one murder that you're going

16   to put through, that the government is going to put to the jury?

17             MS. RODRIGUEZ:  If the information was that the murder

18   did in fact occur, Your Honor, we would be in complete and one

19   hundred percent agreement with the Court.  However, the

20   information which we had at that time, not only from Juan Antonio

21   Rodriguez, but from other witnesses that were in fact there and

22   present was -- if the people that he said --

23             THE COURT:  Were there, I know.

24             MS. RODRIGUEZ:  That the guy that was killed was

25   killed.  It was done by the conspiracy charge in this case.

52

1        THE COURT:  I have it very clear in my mind.

2        MS. RODRIGUEZ:  So, we understood --

3        THE COURT:  Let me put this in the record.

4        MS. RODRIGUEZ:  Yes, sir.

5        THE COURT:  I have it very clear in my mind, that what

6   this gentleman did was enhance his testimony by providing

7   evidence, direct evidence which you have other direct evidence

8   on, and that all he did was provide hearsay evidence and pass it

9   to the Grand Jury as if it were real evidence.  And that what he

10  testified as to hearsay evidence actually occurred because you

11  have other evidence to that effect.  I have that very clear that

12  all he did was exaggerate his position.

13       MS. RODRIGUEZ:  In light of that analogy -- in light of

14  that analogy that's exactly what it shows.  It shows that he's a

15  liar.  It shows that he lied but it does not constitute

16  exculpatory evidence under Brady that is material to guilt or

17  innocence of the defendants charged in the indictment.

18       THE COURT:  Why isn't it material to --

19       MS. RODRIGUEZ:  In and --

20       THE COURT:  -- to the murders?  Because it could be

21  material to the murders.

22       MR. ANGLADA:  Under Kyles, as the Court is aware, it's

23  not only a matter of exculpating it is a matter of allowing a

24  different result to be produced before a jury.  It is not a

25  matter of exculpating merely a Kyles, it belongs to the -- it

53

1   dramatically expands Brady.

2          MS. RODRIGUEZ:  It does not expand Brady and I can get

3   the Court a number of cases.  And I believe in this particular

4   case we have provided a memorandum of law which says how Kyles

5   does not expand Brady.  Kyles summarizes and reaffirms the

6   principles.

7              Now, Your Honor, if I may.  Now, we understand

8   that it's not exculpatory, but in any event, Your Honor, in any

9   event the information was provided to the defense by the

10  government well in advance of trial. And second, and more

11  importantly, Your Honor, the defendants in this case knew that.

12  The government did not know it until July of 1997, but the

13  defendants in this case have known that all along because --

14         MS. APONTE CABRERA:  I object.

15         MS. RODRIGUEZ:  -- they interviewed Juan Antonio Lopez.

16  They had the interview.  The government did not have to

17  corroborate what he was saying about other people in this

18  conspiracy.  They have known that.  How could they have been

19  prejudiced in any way shape or form.

20         MS. APONTE CABRERA:  I object to the prosecutor raising

21  her tone of voice.  We're trying to solve this matter and I think

22  it demeans for the prosecutor --

23         THE COURT:  Very well.  That's fine.

24         MS. RODRIGUEZ:  Well taken.

25         THE COURT:  It's well taken.  Proceed.

54

1          MS. APONTE CABRERA:  Your Honor --

2          MR. RIVERA:  If I may, just according to what she says,

3   that really no harm has come about from -- this knowledge

4   occurred on 7/21, July 21, about one specific -- Your Honor, from

5   the time, from July to December the government became aware of

6   three or four other murders that had "Bebo" had lied about that

7   they did not know about in July.

8          THE COURT:  Yes, but that was not put to the Grand

9   Jury.  Remember, that we're looking at this first in context of

10  the Grand Jury.  That's what we're looking at first.  So we have

11  to make distinction what went to the Grand Jury and what did not

12  go.

13         MS. APONTE CABRERA:  The Court has to keep a

14  perspective, it can interject that, how is this person who has

15  been in jail for so long have particular knowledge of murders

16  committed that are being investigated by Police of Puerto Rico

17  and by the federal government when he was not there, and pinpoint

18  as to every particular detail as if he was there.  And then, even

19  though he doesn't take it to the Grand Jury, it taints the

20  investigation as a whole, and his whole testimony is put under

21  the shadow of if he testified that this and this happened and

22  this was sold and this was packaged and these were the runners

23  and these were the triggermen, et cetera.  It might as well be

24  tainted because even though he's very specific about the drugs he

25  was very specific about the murders too, and he wasn't there.  So

1    the whole purpose of, and one that we have adduced in our reply

2    to the government's opposition is first that --

3            THE COURT:  But do you have any evidence, like you have

4    as to the other one, that he wasn't there --

5            MS. APONTE CABRERA:  Well, Your Honor, what we do have

6    is that if the Grand Jury would have known the extent of this

7    person swearing under oath, not only before the Grand Jury, but

8    providing sworn testimony about things that he lied to, and the

9    Grand Jury could have had the possibility to evaluate the

10   credibility of this person at this stage, because of the specific

11   lies that he had provided, then they might.  The government if

12   they had notified us in time we would have moved to dismiss.  If

13   the government had to reindict the narcotics charge would have

14   lapsed under the statute of limitations and we wouldn't be having

15   a narcotics case here.

16           MR. ANGLADA:  I think the Court has been very clear

17   that the instant discussion is not under the purview of the

18   motion to dismiss pursuant to prosecutorial misconduct, but for

19   the government's failure to comply with the rules of the Court in

20   the specific period between July 21st, 1998 and December 14,

21   1998.  I think the Court has already --

22           THE COURT:  What else.  Yes.  That's the focus that I

23   have.  What else is still owing and what else is still needed?

24           MS. RAMOS-GRATEROLES:  If I can address as to the

25   prejudice matter.

1          THE COURT:  Yes.

2          MS. RAMOS-GRATEROLES:  Even though my client was not

3    charged in none of those murders this is a conspiracy case.

4    Whatever charge of murder comes before the Grand Jury affects my

5    client since this a conspiracy.

6               So the position of the government should have been

7    to, once they know that there was someone lying, tell that to the

8    defense, which was concealed all the time.  That's my point.

9    This is a matter of conduct and there is case law to that effect.

10   And we believe, we attorneys, for the government or for the

11   defense, are obliged to comply with those rules.  Specifically,

12   the Court knows what happened in the discovery in this case.  So

13   I'm moving the Court to that effect.

14               Furthermore, I requested in my motion that all the

15   communication held between the Department of Justice, the local

16   Department of Justice and the prosecutorial's office be given, be

17   provided to us, Your Honor.  We still have the issue raised to

18   the Court as to the fact that if this was a joint investigation.

19   The only way we can raise that point is if the government

20   provides us all the communication held between the local

21   government and the U.S. Attorneys office, as to the briefing of

22   Juan Antonio Rodriguez Lopez.  And there are memos to that

23   effect, and one of them is signed by Edwin Vazquez which was in

24   the U.S. Attorneys office until recently.  So, they had that

25   information.  I believe they have been some type of

1  communication, telephone communication, which we must be informed

2  about.

3          Furthermore, in the government's motion it

4  mentioned that they were able to verify that Juan Antonio

5  Rodriguez Lopez was lying because informant number one or

6  informant number two confirmed that he was lying.  We are

7  entitled to know what information was provided by that informants

8  number one and number two.  Because, otherwise, we will not be

9  able to determine if he lied as to other aspects or to compare

10  what is the truth, Your Honor.  We believe we are entitled to

11  that information.

12          As to the psychiatric records of Rodriguez Lopez,

13  as the government asserts, it is correct that I signed a

14  discovery letter.  And the discovery letter states that the

15  package they gave to me, those psychiatric reports are included.

16  But really the practice is that we go to the U.S. Attorneys

17  office, we take a package, we sign and then we read those

18  documents at home.  There are lot of papers.  We don't have even

19  space to do that.  So, the fact that I signed for that, that I

20  received, doesn't mean that everything that appears there is

21  there.  And it can be an innocent mistake because the

22  photocopy -- this is a big case.  I know that.  That's what I'm

23  asking for, Your Honor.

24          MS. APONTE CABRERA:  I would like to add, Your Honor.

25          THE COURT:  Is that it?  Is that it?

1          MS. RAMOS-GRATEROLES:  Also, Your Honor, the other

2    matter, Your Honor, is the polygraph test.  We should be provided

3    the polygraph test.  And if there was any other to any other one

4    or any other particular information which leads the government to

5    confirm that Juan Antonio Rodriguez Lopez was lying.  All that

6    information should be provided.  That's our position.

7          THE COURT:  You want to supplement that?

8          MS. APONTE CABRERA:  Yes, Your Honor.

9          THE COURT:  Supplement only as to within the context of

10   potential Brady and Kyles.  I don't want a rerun again on

11   misconduct before the Grand Jury all over the place because the

12   Court has made that determination.

13         MS. APONTE CABRERA:  We have --

14         THE COURT:  That is an issue for Boston not for the

15   Court.

16         MS. APONTE CABRERA:  We specifically address to the

17   Court that oral motions have been made, even at the inception

18   where we started picking up the jury, that defense counsel was

19   being bombarded by police reports investigative reports, forensic

20   reports and all kinds of reports at the last minute.  And the

21   letters, there are thousands of pages, hundreds, maybe about two

22   thousand pages of discovery that had been provided to us since

23   December before this case.  And I came across the transcript of

24   the removal, pretrial detention hearing of my client in Miami

25   where Special Agent Tomas Sanchez, and Special Richard Long

1   testified as to this case.

2              And specifically I would like to bring to the

3   Court's attention, Agent Richard Long on page 17, stated that he

4   had information about two murders that would be "La Gallega" and

5   undercover police officer, part of the information that -- as to

6   this, was the police report obtained from local police department

7   in their investigation.  I refer to page -- that's on page 19.

8   On page 23, they refer to everything.  They keep referring back

9   to the local police department information that they have

10  obtained, that they make reference that they have obtained report

11  about those murders.

12             Then Special Tomas Sanchez takes the stand, on

13  page 38, of the transcript, and he states that that -- let me

14  see -- that the corroboration they obtained of the cooperating

15  witnesses have been Puerto Rico police reports, reports of

16  investigation, complete cases, court proceedings involving this

17  organization, other documentation and some of the murders they

18  conducted throughout Puerto Rico including drug trafficking.

19             And then he was asked, again, local police.  Yes,

20  local police report.  Local police investigations, criminal

21  proceedings and a number of other incidents that happened here,

22  interviews of police officers who have been in the area for

23  numerous years most of their careers, actually criminal

24  informants that are not cooperating or testifying as to -- well,

25  as criminal cooperating witnesses that we have in this case.

60

1          On page 41, Special Agent Tomas Sanchez also makes

2    reference saying that debriefings occurred with cooperating

3    witnesses that were corroborated through a review of police

4    records, interviews of people and police reports.

5          Your Honor, this was done in May 19, 1997.  I do

6    believe that there is no excuse under the sun for the government

7    to provide on December 1998, saying that they had just acquired

8    the information specifically about those two murders, the murder

9    of La Gallega, and the undercover agent when their own agents in

10   another jurisdiction have testified that they had access to these

11   documentations.

12         And then we're getting it at the last moment and

13   we're getting this information to swamp and we're supposed to be

14   ready to go to trial when the Court had ordered on numerous

15   occasions through the prosecutions to have to turn over all the

16   discovery that they have.  And the government said that they got

17   the information they related to us, and -- however, yet, I

18   uncovered this incident from May 1997.

19         MR. ROLDAN BURGOS:  Your Honor, can I comment also?

20         THE COURT:  Yes.

21         MR. ROLDAN BURGOS:  Very brief, Your Honor.  I believe

22   that the facts in this case, that the indictment isn't based on

23   testimony of a man who is now known to be a perjurer, whatever

24   aspect it is, he's a perjurer.  He enhanced -- he said he was not

25   there.  He's a perjurer.  The Court, on the basis of its review

61

1    of the record, the testimony of the agent and proffers by the

2    government, has determined not to take the harsh role not to

3    dismiss.  And that might be correct.

4         THE COURT:  Because that's a general rule.  That's the

5    general ruling and that's what Boston says I ought to do.

6         MR. ROLDAN BURGOS:  But the remedy Ms. Ramos is

7    requesting is, she can be asking give me disclosure.  Let me see

8    if there is anything here.  I cannot believe there is a more

9    moderate remedy.  I cannot support Ms. Rodriguez arguing once and

10   once again that the fact that this man has been discovered to be

11   a perjurer has no effect whatsoever.  None.

12        MS. RODRIGUEZ:  No.

13        MR. ROLDAN BURGOS:  I think Ms. Ramos' last request is

14   to move for moderate relief and remedy that Your Honor can give

15   us which is a significant issue.

16        THE COURT:  Now I will hear from you.  Now I will hear

17   from you.

18        MS. RODRIGUEZ:  First, in response to Attorney Roldan.

19   I have not refused to answer Ms. Ramos' request.  On two

20   different occasions, and the last one I believe was notified to

21   all counsel, I responded to her request.  The fact that we differ

22   on whether I have been sufficiently responsive, well, that's an

23   issue for the Court to determine.

24              But, Ms. Ramos makes reference to communications

25   between the Department of Justice of Puerto Rico and the U.S.

1    Attorneys office.   The letter she has in her possession from

2    myself addressed to Mr. Joseph Martinez is the only letter I have

3    written to the Department of Justice.   The memorandum she

4    attacks, which constitutes internal memoranda between personnel

5    of the Department of Justice of Puerto Rico, as I stated in my

6    response, which I signed as an officer of the court, I've never

7    seen until she filed them with the Court.   I do not have that

8    memorandum in my position.   I have in my motion right now are the

9    files copied with Ms. Ramos' request for additional discovery.

10            We understand that the defendants in this case,

11    and I respond to Ms. Ramos' request of sufficient information

12    with regards to this issue, she's requesting additional

13    information, communication between the state department and

14    Puerto Rico -- between the justice department of Puerto Rico and

15    the U.S. Attorneys office, even telephonic conversations.   I

16    think the request is incredibly extensive and not necessary.

17            Did the United States Attorneys' office for the

18    District of Puerto Rico communicate the information it learned to

19    the Department of Justice of Puerto Rico?   Of course we did.   I

20    believe it's under our obligation to do so.   Did I have

21    telephonic conversations with individuals in the state department

22    of Puerto Rico?   I must have spoken at least two or three times

23    and made sure that they were aware of what I had learned here.   I

24    guess the next procedure would be to subpoena the records of the

25    U.S. Attorneys office in Puerto Rico to see how many telephone

1    calls were placed to the local authorities and that will be

2    another matter.

3              The identification of the co-conspirators in this

4    case has been disclosed.  We have not only provided 302's on the

5    interviews of the cooperators, the defense knows exactly what

6    these cooperators have stated with interviews with the FBI.  We

7    read our list of witnesses.

8              However, defense counsel needs to understand that

9    not every time I meet with a witness a 302 is produced.  That is

10   just not the case.  There comes a point in time where I'm working

11   for trial preparation and what I'm doing is seeing what the

12   direct is going to be, that does not produce 302.  It might not

13   even produce rough notes.  There have been numerous times when I

14   have met with a number of cooperators and not taken a single word

15   down in paper.  That's why I have a mind.  That's something that

16   I keep in my mind and do not necessarily put down on paper.

17             The rough notes of the agents that they have, that

18   they have maintained through the debriefings of these individuals

19   are normally reduced to 302's.  If there are additional rough

20   notes of the interviews with Juan Antonio Rodriguez Lopez with

21   regards to this particular issue that have any information, that

22   do not -- is not contained in the 302's already provided to the

23   defense we will disclose those rough notes.

24             THE COURT:  So, the order of the Court is that any

25   rough notes that are not 302's of the July 24, -- 21st meeting

1    and of the December meeting -- both 1998.

2            MR. ANGLADA:  Yes, Your Honor.

3            THE COURT:  Both 1998, shall be produced.

4            MS. RODRIGUEZ:  All right.

5            THE COURT:  There it is.  Second, address yourself as

6    to what the informers, number one states, and informer number two

7    stated.  I don't want to hear the identity.  I don't know if you

8    identified, I'm not asking you to identify them.  I only want to

9    know as to what they said which made you conclude that this

10   gentleman Rodriguez was lying, which you probably knew anyway.

11           MS. RODRIGUEZ:  Well, cooperator number one stated that

12   he participated in the murder of Edberto Rivera Gonzalez also

13   known as "Picu", but that at the time that the murder took place

14   Juan Antonio Rodriguez Lopez was not there.  He was there when he

15   and dozens of other individuals were present at Callejon Number

16   Two, from which place the victim was taken away in a vehicle, by

17   three individuals to a location where he subsequently was

18   murdered.  But at the location where he was finally shot and

19   killed he was not present.  That's what cooperator number one

20   tells me.  Very affirmative and assertive.

21           THE COURT:  Is there 302 as to that?  Was there

22   somebody taking notes as to that?

23           MS. RODRIGUEZ:  Well, I have to check, Your Honor.

24           THE COURT:  Okay.  Go ahead.  Second, address yourself

25   to the second one.

1     MS. RODRIGUEZ:  The second cooperator tells me that he

2 participated in the murder of Oscar Nazario Rivera also known as

3 "Oscarito".  And that he participated in the murder of Awiha, but

4 that Juan Antonio Rodriguez did not participate in any of those

5 two murders.

6     THE COURT:  Good.

7     MS. RODRIGUEZ:  That's the information I received.

8     THE COURT:  I think that they know that.

9     MS. RODRIGUEZ:  That led me to believe that he's lying

10 and through other methods I tried or engaged in a procedure to

11 try to confirm whether or not that is in fact correct.

12     THE COURT:  All right.

13     MR. ANGLADA:  May I?

14     THE COURT:  No.  Let me finish with this.  I have to

15 finish.  It has to end.  All right.  Now, the psychiatric report

16 you have apparently no objection that it be produced?

17     MS. RODRIGUEZ:  No.

18     THE COURT:  And if she doesn't have a copy just provide

19 her a copy.

20     MS. RODRIGUEZ:  We will, Your Honor.

21     THE COURT:  Let's talk about the polygraph test.  What

22 is your position as to the polygraph test?

23     MS. RODRIGUEZ:  Well, Your Honor, the position of the

24 United States as to polygraph examination is, again, the defense

25 already knows that this individual failed the polygraph

66

1    examination.  We don't see how else the polygraph is going to aid

2    the defense.  He's not going to be a witness, therefore, we

3    understand we should not be required to produce it.  But if the

4    Court orders the government to produce it...

5          THE COURT:  How is that pertinent?  How is the

6    polygraph -- you have to give, whenever you have an

7    extraordinary, out of the ordinary request you must state why you

8    want it, just not to have it and put it in the closet.

9          MS. APONTE CABRERA:  The Court granted my request.

10          MR. MORALES:  We have two orders from the magistrate

11   granting those requests.

12          THE COURT:  Fine.

13          MS. RODRIGUEZ:  He's not a government witness.

14          THE COURT:  But he was.  He was until December.

15          MS. RODRIGUEZ:  With all due respect, we don't think

16   the witness is a government witness in a trial until he takes the

17   stand.  He was a cooperator providing evidence to the government,

18   but he was not a witness in the case that is why -- that is why

19   failure to provide Giglio information only becomes relevant if

20   the person took the stand at trial. If the person did not --

21          THE COURT:  Fine.  I understand, but anyway the Court

22   order is to produce it.

23          MS. RODRIGUEZ:  We will produce it pursuant to Court

24   order.

25          THE COURT:  That's it.

1          MS. APONTE CABRERA:  How about the FBI file, to review

2     the inconsistencies as to the lies of Juan Antonio Rodriguez

3     Lopez.  Because Juan Rodriguez Lopez is confronted with the

4     testimony of Victor Negron Maldonado.  And there are references

5     made as to various interviews between both Rodriguez Lopez and

6     Victor Negron Maldonado, when Victor Negron Maldonado is

7     confronted again to the allegation of the denial of lying of Juan

8     Rodriguez Lopez.  Due to this, that the government should be

9     ordered to produce for in camera inspection shown the file of

10    both informants and the Court to review them.  And should there

11    be evidence that it's pertinent, that it could have been

12    discovered to the defense in this case, that we be allowed to

13    inspect it, Your Honor.

14         MS. RODRIGUEZ:  Which is what, Your Honor?

15         MS. APONTE CABRERA:  For example, I became aware last

16    night that Victor Negron Maldonado was announced as a witness in

17    the sworn statement of Special Agent Marry in a sworn affidavit

18    that he made, pages 32 to 35, in the Chino Gaffa case.  And it

19    stated that Victor -- it stated that this cooperating witness had

20    not cooperated before; however, that Chino Gaffa and my client,

21    he was going to testify that they were involved in transactions

22    outside the scope of this conspiracy and that he was going to

23    testify about that at this trial.

24              I am in the processing of getting a copy of that

25    sworn statement.  It was read to me.  It's referred to in pages

68

1    32 to 35.  And if that is the case we have not been provided with

2    that information.  Or that 302 from Victor Negron or any

3    reference that our client is going to there, is going to provide

4    testimony in this case of my client being related to Chino Gaffa

5    in any fashion.

6            MS. RODRIGUEZ:  That she's referring to investigations

7    being conducted by Drug Enforcement Administration against this

8    individual, also known as Chino Gaffa, and that those are not the

9    facts of this case.

10           MS. APONTE CABRERA:  But there is allegation.

11           MS. RODRIGUEZ:  It's for me to provide as to this case,

12   not as to any other investigation that he is providing.

13           MS. APONTE CABRERA:  But if it makes reference to

14   information that he's making reference to this.

15           MS. RODRIGUEZ:  And he has made reference to me.  He

16   has made reference to me with regards to that individual, Your

17   Honor, and any number of individuals.  All right.  We have met on

18   dozen of occasions and we have discussed numerous stories,

19   probably a hundred targets, that this person deals in narcotics,

20   does that mean that I am obligated to reduce those to writing for

21   defense?  I don't --

22           THE COURT:  The ruling of the Court is that you don't.

23           MS. APONTE CABRERA:  If it tends to implicate my client

24   in conduct and there is an expression by the government that they

25   will use it in this case.

1          THE COURT:  But are you going to use it?  That's if

2     question.

3          MS. RODRIGUEZ:  I don't even know what she's referring

4     to.  But, Your Honor, I don't have to review or notify all of my

5     evidence testimonial evidence to counsel before trial.

6          THE COURT:  No.

7          MS. RODRIGUEZ:  There is nothing written anywhere or

8     otherwise implied in the Federal Rules of Criminal Procedure that

9     says that the government has to summarize its defense, it's trial

10    case to the defendants before trial. I see no basis for the

11    request.

12         MR. ROMO-MATIENZO:  Your Honor, I have to address

13    something about Rodriguez Lopez's testimony.  He first stated he

14    was the driver at the "Oscarito" murder.  And now, supposedly, my

15    client was the driver.  I'm referring to Garcia Garcia.  So, in

16    this way, that this testimony -- the testimony of Rodriguez Lopez

17    it's Brady for my client because he's putting himself in the

18    driver's seat.  And now the government has evidence that says

19    that my client is driving the car that was taken to go and kill

20    "Oscarito".  So, it's Brady for me, everything that Rodriguez

21    Lopez had said or has not said, Your Honor.

22         MS. RODRIGUEZ:  That was learned by the government on

23    December 1st, and immediately it was disclosed.

24         THE COURT:  Do you have it?

25         MR. ROMO-MATIENZO:  The polygraph?

1          MS. RODRIGUEZ:  The polygraph is something else.  I

2    think we're talking about a --

3          THE COURT:  You had that, obviously.

4          MR. ROMO-MATIENZO:  That 302 I don't have.

5          MS. RODRIGUEZ:  Which 302, do you not have?

6          MR. ROMO-MATIENZO:  The 302 says that he didn't

7    participate in that murder.

8          THE COURT:  Because he was not the driver.

9          MS. RODRIGUEZ:  He was not present.  I gave copy to

10   everybody.

11         MR. ROMO-MATIENZO:  But his whole testimony or just

12   that part?

13         MS. RODRIGUEZ:  That's it.  That's what the 302 --

14   there is no other 302 that says something else.

15         MR. ROMO-MATIENZO:  Just that 302.

16         MS. RODRIGUEZ:  That's all that was reduced to writing.

17         MR. ROMO-MATIENZO:  The whole thing?

18         MR. ANGLADA:  May I say two sentences.

19         MS. RAMOS-GRATEROLES:  The letters from the -- there is

20   a proffer letter.  It should say what he's going to testify about

21   and that should be given to the defense.

22         THE COURT:  If it's Brady.

23         MS. RODRIGUEZ:  The proffer letter.

24         MS. RAMOS-GRATEROLES:  I'm asking --

25         THE COURT:  Is it Brady?

1          MS. RAMOS-GRATEROLES:  Well, yes its advance of his

2     testimony.

3          THE COURT:  No, Brady is not advance.

4          MS. RAMOS-GRATEROLES:  The only way we can determine if

5     it's Brady or not is if the Court takes a look or we take a look.

6          MS. RODRIGUEZ:  Proffer letter.  With all due respect,

7     and defense counsel knows this, because she's an experienced

8     litigator in this district, I'm sure has proffer letter that does

9     not contain a proffer of the defendant.  The proffer letter is

10    merely a preliminary agreement between the defendant and the

11    government to provide information to the government.  It's not

12    does contain the actual information provided.

13         MS. RAMOS-GRATEROLES:  In my experience in this court I

14    have never sent a proffer letter to the government.  I'm not

15    aware of what the proffer letter states, but I have seen other

16    proffer letters.  It contains what the witness will testify.

17         THE COURT:  Give it to me.  Give it to me.  Give it to

18    me.  Fine.

19              The ruling of the Court is that proffer letter

20    will be shown to the Court.  May I have an identification of the

21    proffer letter again, Ms. Ramos.

22         MS. RAMOS-GRATEROLES:  Pito or any other government

23    witness.

24         MS. RODRIGUEZ:  Fine.  Well give it to the Court.

25         MR. ANGLADA:  May I state two sentences.  First, I

1  think that Sister Council for the government has not properly

2  read Kyles for the proposition that the fact that she may not

3  know, she may not have an internal memorandum from the

4  Commonwealth of Puerto Rico, Justice Department doesn't relieve

5  her from being as efficient as looking for any and all

6  interagency, or among the sovereigns or whatever you want to call

7  it, among both governments in reference to the Jose Antonio

8  Rodriguez Lopez matter.  Kyles is very clear that prosecutors are

9  obliged to actively look upon police documents, agency documents,

10  to be able to fully comply with the Brady.

11          The second matter I want to say is, that for me

12  this latter discussion by the Court is merely whether the

13  government has totally and fully complied with the rulings of the

14  Court as of mid 1997.

15          THE COURT:  No, I disagree with you totally.  Because

16  some of this information she received later.  So I can hardly say

17  that.

18          MR. ANGLADA:  What I'm saying is, Your Honor, is that

19  for me the discussion boils down to whether the Court's ruling

20  issued in mid July has been fully comply.

21          THE COURT:  Of 1997.

22          MR. ANGLADA:  As to the period between July of 1998 and

23  December 14, of 1998.

24          THE COURT:  Fine.  Fine.  And I am providing her with

25  all these orders before the trial begins and you will have plenty

1  of time before trial to prepare your defense in this case.

2          MS. APONTE CABRERA:  How about the motion that we are

3  moving to strike discovery that was provided late and what I have

4  read to the Court of --

5          THE COURT:  Where is that motion?  Where is that

6  motion?

7          MS. APONTE CABRERA:  It was an oral motion.  It has

8  been made several times that we not -- that the government not be

9  allowed to present evidence that they lately produced after the

10  deadline, and those of discovery that is made reference to in

11  statements from 1997, from a case.

12          THE COURT:  Here is the order of the Court.  Again.

13  And I repeat again:  Here is the order.  Evidence that she had in

14  her file a long time ago, which you are receiving now, will not

15  be allowed.  Evidence which she acquired last week, she notifies

16  it last week will be allowed.  It's as simple as that.

17          Now, I gave that ruling many times so if she

18  attempts to produce, the United States attempts to produce

19  evidence which she had on her file a long time ago and she

20  disclosed it to you in December or in November or in September

21  whenever, and she has had it for a year and a half I will not

22  allow it.  Simple.  All right.  All right.  There it is.  Now can

23  we go on to the trial now?

24          MS. BONINI:  There is an order from the Court to bring

25  Mr. Crespo from the MDC on investigation.  The Court ordered him

1    to be here in court this morning and he hasn't arrived yet, on

2    the matter of the investigation.

3              THE COURT:  Who is Mr. Crespo?

4              MS. RODRIGUEZ:  I have no idea.

5              MS. APONTE CABRERA:  MDC officer that reviewed the

6    legal documents.

7              THE COURT:  Yes, I advised him that he should be here.

8    I will arrest him.  Bring in the marshal.  Bring me a marshal.

9    Bring me a marshal.

10                   (Noon Recess.)

11             THE COURT:  Good afternoon.

12             THE CLERK:  Criminal 97-76, United States of America

13   versus William Soto Beniquez, at el, for further jury trial.

14             THE COURT:  Do we have any results relating -- to the

15   plea -- the potential plea?

16             MS. RODRIGUEZ:  Your Honor, we were told by two

17   counsels that their respective clients would be willing to enter

18   into a plea at this time, however, I think it would be better for

19   the Court to inquire from defense counsel to ascertain whether

20   that is correct.

21             THE COURT:  Anyway, didn't you say that they were group

22   pleas?

23             MS. RODRIGUEZ:  We originally envisioned a package

24   deal; however, the offer was made this afternoon to defendants if

25   they so wish to accept.

1        THE COURT:  Well, I don't know who the defendants were

2   so I cannot state what I really don't know.

3        MR. ROMO-MATIENZO:  We met with the prosecutor and we

4   negotiated the offer of the prosecutor, made to us, we made to

5   the -- explained to our client and he rejected it.

6        THE COURT:  He rejected it.

7        MR. ROMO-MATIENZO:  Yes.  And we want the record to

8   reflect that we discussed it with him and he did not accept it.

9        THE COURT:  Fine.  He's entitled to do that.

10        MS. RIOS ROSARIO:  And we have a plea -- in general

11   terms we seem to have a plea, but we still have problems.  And I

12   need to talk to the prosecutor in terms of how she will draft it.

13        MR. MIRANDA CORRADA:  Victor Miranda on behalf of Rene

14   Gonzalez we had a conversation with the assistant U. S. Attorney

15   in charge of the case and we had an agreement preliminarily,

16   however, given the requirements that a version of the facts be

17   executed by our client and some matters which we still have to

18   resolve in connection with the voluntary surrender of my client

19   we are not in a position to accept that plea.

20        THE COURT:  Well, the problem here is -- what the

21   problem is, here is what the problem is, the problem is that

22   tomorrow I cannot keep the jury waiting.  We cannot have this

23   rerun tomorrow and then tomorrow you agree, because tomorrow the

24   Court will not be able to grant the three points.  I cannot keep

25   the jury waiting.  I mean we have kept the jury here since 10:30.

1    And if there were going to be pleas, fine, there will be pleas

2    today.

3                The idea is if tomorrow the defendants want to

4    plea then I have to postpone the jury again until I take those

5    pleas.  So this becomes a never ending situation.  And I want the

6    defendants to realize that tomorrow is a different game because

7    the Court is going to have to start doing something with the

8    jury.  And as you know there is press around here.  And they're

9    going to start coming in here to see what is going on.

10               So, even with my good efforts to keep this all

11   away from the jury, if we keep postponing the moment there is

12   going to be a leak and I cannot stop it.  So I want that to be

13   known to both counsel that that we have to come up with a

14   decision today.  We cannot say, well, maybe I'll accept it later

15   on in the afternoon or tomorrow morning.  Because then tomorrow

16   morning I have to postpone again the jury.  I want that to be

17   very clear.

18               MR. MIRANDA CORRADA:  I beg your pardon.  The position

19   of my client is that although he wishes to plea he cannot enter a

20   plea because of the version of the facts.

21               THE COURT:  Well can't that be somehow -- because it

22   seems that --

23               MR. MIRANDA CORRADA:  Apparently, no.

24               MS. RODRIGUEZ:  Your Honor, we have to read a version

25   of the facts.

1          THE COURT:  Of course.

2          MS. RODRIGUEZ:  He accepts responsibility and he has to

3    accept who the other people he conspired with are, that doesn't

4    mean that he's going to testify against them.  It's just that he

5    simply has to say that the version of the facts of the government

6    are true and correct.

7          THE COURT:  There must be some --

8          MS. RODRIGUEZ:  That's the basis of the plea.

9          THE COURT:  Because if there is no --

10         MS. RODRIGUEZ:  He can't conspire by himself, he has to

11   conspire with other people.

12         THE COURT:  I know.

13         MR. ANGLADA:  If I may.  There is always more than one

14   way.

15         THE COURT:  To skin a cat.

16         MR. ANGLADA:  You can always say X conspired with

17   others and that is a version of the facts.

18         THE COURT:  Yes, but in order for the plea to be able

19   to withhold any potential future problems we have to have a

20   version of the facts that will be able to withstand time.  If you

21   understand what I mean.

22         MR. ANGLADA:  Without necessarily fingerpointing at the

23   specific name.  I think that's the problem.

24         MS. APONTE CABRERA:  Also, the version of the facts is

25   what the government is able to prove if they were to go to trial.

1      That doesn't mean that they're going to necessarily hold the, you

2      know, version of the truth.  But the defendant acknowledges that

3      the government has in its possession evidence that might prove

4      some sort of a conspiracy, that is a different wording than to

5      say that what the government holds is exactly the truth.  The

6      version of the facts is what the government intends to prove at

7      trial.  It doesn't mean that they have a stamp as to exactly what

8      happened back then in 1990 to 1994.

9                  THE COURT:  All right.

10                 MR. MIRANDA CORRADA:  The problem is, Your Honor, in

11     that they are requiring a stipulation as to the version of the

12     facts.

13                 THE COURT:  I will see counsel in my chambers at this

14     time.

15                      (SHORT PAUSE IN PROCEEDINGS)

16                 THE COURT:  Please bring in the jury.

17                 THE MARSHAL:  Yes, Your Honor.

18                 MR. MIRANDA CORRADA:  Have arrangements been made to

19     provide us with monitors as well.

20                 THE COURT:  There's only one monitor.  I don't know if

21     I can make arrangements for you also.  I will attempt to get

22     another monitor.

23                      (JURY CAME INTO THE COURTROOM)

24                 THE COURT:  Is there any reason why this Court should

25     not at this time -- first of all, good afternoon to all.

1            Is there any reason why at this time the Court

2    should not provide the preliminary jury instructions for this

3    case, to the jury?

4                 (ALL ANSWERED IN THE NEGATIVE)

5            THE COURT:  All right.  Members of the jury, now that

6    you have been sworn I will give you some preliminary instructions

7    to guide you in your participation in the trial, your duty as a

8    juror.  It will be your duty to find from the evidence what the

9    facts are.  You and you alone are the judges of the facts.  You

10   will then have to apply to those facts to the law as the Court

11   will give it to you.  You must follow the law whether you agree

12   with it or not.  Nothing the Court may say or do during the

13   course of the trial is intended to indicate nor should be taken

14   by you as indicating what your verdict should be.

15           The evidence from which you will find the facts

16   will consist of the testimony of witnesses, documents and other

17   things received into the record as exhibits and any facts the

18   lawyers agree or stipulate to or that the Court may instruct you

19   to find.  Certain things are not evidence and must not be

20   considered by you.

21           I will list them for you.  One, statements,

22   arguments and questions by lawyers are not evidence.  Two,

23   objections to questions are not evidence.  Lawyers have an

24   obligation to their client to make an objection when they believe

25   evidence being offered is improper under the Rules of Evidence.

1          You should not be influenced by the objection or

2     by the Court's ruling on it.   If the objection is sustained

3     ignore the question.   If it's overruled treat the question like

4     any other.   If you are instructed that some item of evidence is

5     received for a limited purpose only you must follow that

6     instruction.

7          Testimony that the Court has -- three, testimony

8     that the Court has told you to disregard is not evidence and must

9     not be considered.

10         Four, anything you may have seen or heard outside

11    the courtroom is not evidence and must be disregarded.   You are

12    to decide the case solely on the evidence presented here in the

13    courtroom.

14         There are two kinds of evidence direct and

15    circumstantial.   Direct evidence is direct proof of a fact, such

16    as testimony of an eyewitness.   Circumstantial evidence is proof

17    of facts from which you may infer and conclude that other facts

18    exist.

19         I will give you further instruction on these as

20    well as other matters at the end of the case, but have in mind

21    that you may consider both kinds of evidence.   It will be up to

22    you to decide which witnesses to believe, which witnesses not to

23    believe and how much of any witness' testimony to accept or

24    reject.   I will give you some guideline for determining the

25    credibility of witnesses at the end of the case.

81

1          Now, as you know this is a criminal case.  There

2    are three basic rules with a criminal case that you must keep in

3    mind.   Number one, first, the defendants are presumed innocent

4    until proven guilty.   The indictment against the defendants

5    brought by the government is only an accusation.   Nothing more.

6    It is not proof of guilt or anything else.   The defendants,

7    therefore, start out with a clean slate.

8          Second, the burden of proof is on the government

9    until the very end of the case.   The defendant has no burden to

10   prove his innocence or to present any evidence or to testify.

11   Since the defendant has the right to remain silent the law

12   prohibits you in arriving at your verdict from considering that

13   the defendant may not have testified.

14          Third, the government must prove the defendant

15   guilty beyond a reasonable doubt.   I will provide you further

16   instructions on this point later.   But bear in mind that in this

17   respect a criminal case is different from a civil case.

18          Now, in this case defendant William Soto Beniquez

19   and Juan Soto Ramirez are charged with aiding and abetting each

20   other, knowingly and intentionally engaging in a continual

21   criminal enterprise.   A continual criminal enterprise is found at

22   Title 21, United States Code Section 848, which makes it a

23   federal offense or offense for anyone to engage in what is called

24   a continual criminal enterprise.

25          Involving controlled substance.   A defendant can

1   be found guilty of that offense only if all of the following

2   facts are proved beyond a reasonable doubt.  First, that a

3   defendant violated Section 841(a)(1), as charged in count one of

4   the indictment.

5             Second, that such violations were part of a

6   continuing series of violations as hereinafter defined.  Third,

7   that such continuing series of violations were undertaken by the

8   defendant in concert or together with at least five or more

9   persons.  Four, that the defendants occupied the position of an

10  or organizer, supervisor or manager.  Fifth, that the defendant

11  obtained substantial income or resources from the continuing

12  series of violations.

13            A continuing series of violations means proof of

14  at least three violations of the federal controlled substance law

15  as charged in the indictment.  And also, requires a finding that

16  those violations were connected together as a series of related

17  or ongoing activities as distinguished from isolated and

18  disconnected acts.

19            You must unanimously agree on which three

20  violations constitute a series of three or more violations in

21  order to find essential element number two has been proven.  It

22  must also be proven that the defendant engaged in a continuing

23  series of violations with at least five or more other persons,

24  whether or not those persons are named in the indictment or

25  whether or not the same five persons or more persons participated

1    in each of the violations or participated at different times.

2              And it must be proved that the defendants'

3    relationship with the other five or more persons was as

4    organizers, supervisors or managers.  That the defendants'

5    relationship with the other five or more persons was that of an

6    organizer, supervisor manager, that the defendant was more than a

7    fellow worker and either organized or directed the activities of

8    the others whether the defendant was the only organizer or

9    supervisor or not.

10             Finally it must be proved that the defendants

11   obtained substantial income or resources from the continuing

12   series of violations.  This means that the defendants' income

13   from the violations in money or in other property must have been

14   significant in size or amount as distinguished from relatively

15   insubstantial, insignificant or trivial amount.

16             Now, in count two of the indictment the defendant,

17   the other -- the two defendants and the other nine defendants are

18   charged with knowingly and intentionally combining, conspiring

19   and agreeing with each other and with diverse other persons to

20   the Grand Jury known and unknown to commit an offense against the

21   United States; to wit doing knowingly and intentionally

22   distribute multi kilo gram quantities of controlled substances

23   that is to say in excess of five kilograms of heroin, a Schedule

24   One narcotic drug controlled substance, in excess of five

25   kilograms of cocaine a Schedule Two narcotic drug controlled

84

1    substance and in excess of five kilograms of cocaine base, a

2    Schedule Two narcotic controlled substance, and in excess of one

3    hundred kilograms of marijuana, a Schedule One controlled

4    substance.

5              Now, defendants are accused of knowingly,

6    intentionally conspiring to commit a federal crime.  Specifically

7    the crime of distributing controlled substances.  It is against

8    federal law to conspire with someone to commit this crime.  For

9    you to find defendants guilty of conspiracy, you must be

10   convinced that the government has proved each of the following

11   things beyond a reasonable doubt.

12             First, that between on or about January 1st, 1990,

13   and on or about March 7th, 1994, the agreement specified in the

14   indictment and some other agreement existed between at least two

15   people charged or named in the indictment to possess with intent

16   to distribute controlled substances; and second, that the

17   defendants willfully joined in the agreement.

18             A conspiracy is an agreement spoken or unspoken.

19   The conspiracy does not have to be a formal agreement or plan in

20   which everyone involved sat down together and worked out all the

21   details.  It is enough that the government prove beyond a

22   reasonable doubt that some that were involved shared a general

23   understanding about the crime.

24             The mere similarity of conduct among various

25   people or the fact that they have associated with each other or

1  discussed common aims and interests does not necessarily

2  establish a proof of the existence of a conspiracy but you may

3  consider such facts.

4          To act willfully means to act voluntarily and

5  intelligently, with the specific intent to do something the law

6  forbids; that is to say with bad purpose either to disobey or

7  disregard the law or to act or not to act by ignorance, accident

8  or mistake.  The government must prove two types of intent beyond

9  a reasonable doubt before the defendant can be said to have

10  willfully joined the conspiracy.  One, an intent to agree and

11  intent with reasonableness that the underlying crime be

12  committed.

13          Mere presence at the scene of the crime is not an

14  offense, but you must consider it among other factors.  Intent

15  may be inferred from the surrounding circumstances.  Proof that

16  the defendants willfully joined in the agreement must be based

17  upon evidence of their own words and actions.  You need not find

18  the defendants agreed specifically to or knew all the details of

19  the crime, or that they participated in each act of the agreement

20  or played a major role.  But the government must prove beyond a

21  reasonable doubt that they knew the essential feature and the

22  general aim of the venture.

23          Even if defendants were not part of the agreement

24  at the very start they can be found guilty of conspiracy if the

25  government proved that they willfully joined the agreement

1   together.   On the other hand a person who has no knowledge of a

2   conspiracy, but simply happens to act in a way that furthers some

3   object or purpose of the conspiracy does not thereby become a

4   conspirator.

5              An overt act is an act knowingly committed by one

6   or more of the conspirators in an effort to accomplish some

7   purpose of the conspiracy.   While overt acts are described in the

8   indictment to help evaluate the evidence, the law does not

9   require that an overt act be proven beyond a reasonable doubt.

10             In order to prove a drug conspiracy the government

11   is not required to prove any overt act was committed.   The

12   government does not have to prove that the conspiracy succeeded

13   or was achieved.   The crime of conspiracy is completed upon the

14   agreement to commit the underlying crime.   I will give you

15   detailed instructions on the law at the end of the case.   And

16   those instructions will control your deliberations and decision.

17             You already have heard the Court advise you on the

18   elements of both a continuing criminal enterprise and a

19   conspiracy to distribute controlled substance.

20             Now, a few words about your conduct as jurors.

21   First I instruct you that during the trial you are not to discuss

22   the case with anyone; or permit anyone to discuss it with you.

23   Until you retire to the jury room at the end of the case to

24   deliberate on your verdict you simply are not to talk about this

25   case.

1        Second, do not read or listen to anything touching

2   on this case in any way.  If anyone should try to talk to you

3   about it bring it to the Court's attention promptly.

4        Third, do not try to do any research or make any

5   investigation about the case on your own.  Finally, do not form

6   any opinion until all the evidence is in.  Keep an open mind

7   until you start your deliberation at the end of the case.  If you

8   wish you may take notes, but if you do leave them in the jury

9   room when you leave at night.  And remember that they are for

10  your own personal use and they are not to be given or read to

11  anyone else.

12        I have a special instruction here that I want to

13  read to you on notes.  The Court will permit you to take notes in

14  this case.  And the courtroom deputy will distribute pencils and

15  pads for your use.  I want to give a couple of warnings about

16  note taking, however.  First of all, do not allow your note

17  taking to distract you from listening carefully to the testimony

18  that is being presented.  If you would prefer not to take notes

19  at all, but simply to listen please feel free to do so.  Please

20  remember also from some of your grade school experiences that not

21  everything you write down is necessarily what was said.  Thus,

22  when you write down -- thus -- excuse me.

23        Thus, when you return to the jury room to discuss

24  the case do not assume simply because something appears in

25  somebody's notes that it necessarily took place in court.

1    Instead it is your collective memory that must control as you

2    deliberate upon the verdict.  Please take your notes to the jury

3    room at your recess.  I will have the courtroom deputy collect

4    them at the end of each day and place them in the vault.  They

5    will then be returned to you the next morning.  When the case is

6    over your notes will be destroyed.

7              These steps are in line with my earlier

8    instruction to you that it's important that you not discuss the

9    case with anyone or permit anyone to discuss it with you.

10             The course of the trial.  The trial will now

11   begin.  First, the government will make an opening statement

12   which is simply an outline to help you understand the evidence as

13   it comes in.  Next, the defendants' attorneys' may, but does not

14   have to make an opening statement.  Opening statements are

15   neither evidence nor argument.  The government will then present

16   its witnesses and counsel for the defendants may cross examine

17   them.

18             Following the government's case the defendants

19   may, if they wish, present witnesses whom the government may

20   cross examine.  After all the evidence is in the attorneys will

21   present their closing arguments to summarize and interpret the

22   evidence for you.  Then the Court will instruct you on the law.

23   After that you will retire to deliberate on your verdict.

24             Now, a few other matters.  You will see that the

25   Court will hold meetings on this side of the courtroom to hold

bench conferences.  Those bench conferences are relating to
issues of the law.  You are here to decide the facts.  Now, why
do we have these bench conferences here.  We have them because
they are issues of law and we don't want to confuse you nor in
any way pollute you with issues of law which will be decided by
the Court.  You will be deciding issues of facts.  Those you will
decide.  So, it is not that we are hiding.  It is simply that we
want to keep you to decide exclusively facts, and we don't want
you to listen to law matters.

Second, this is going to be a long trial.
Litigation is intrinsically not an invitation to dance, so it
could get a little warm in here.  If it does it's my job to keep
it level and cool.  So, I may have to admonish at one time or
another counsel or the United States counsel.

It's their job, the United States to prosecute
with all the force and it's their job to defend with all their
vigor.  My job is to keep the proceeding going and to make sure
that the ring is even, so I may have to admonish counsel every
now and then.  Please don't take it against their clients or
against them.  They're doing their job and I'm doing mine.  And
we may have to at one point or another admonish counsel.  It may
not occur, but it may occur and I simply want you to be ready or
if the Court has to do that, that you understand not to take it
against them or their client.  All right.

I will now see counsel briefly.

1          (COUNSEL APPROACHED THE BENCH)

2          THE COURT:  Objections to the preliminary instructions?

3          MS. APONTE CABRERA:  I have a request that the Court

4     instruct the jury that each defendant is to be considered

5     separately and that the evidence considered as to each defendant,

6     that the case that they are all being tried together still they

7     have the obligation to consider each defendant separately when

8     deciding the case.

9          THE COURT:  Very well.

10         MR. MIRANDA CORRADA:  I join that request.

11         THE COURT:  That instruction will be provided.

12    Anything further?

13         MR. ROMO-MATIENZO:  Pretrial motions that you ruled on

14    this morning.

15         THE COURT:  Yes.

16         MR. ROMO-MATIENZO:  We join most of them or request

17    renewal of motion to dismiss and all the other motions at this

18    time of the trial because you ruled at pretrial but we're

19    supposed to renew our motions when the trial has begun.

20         THE COURT:  Very well.  You all join?

21         (ALL ANSWERED IN THE AFFIRMATIVE)

22         THE COURT:  The decision of the Court is and continues

23    to be the same as this morning.  Anything further.

24         MS. RAMOS-GRATEROLES:  Instruction 19, which the

25    government provided, it should have been count two because that

1    is count one and the conspiracy is count number two.

2            THE COURT:  Yes.  Okay, I'll clarify.  Did you want me

3    to clarify that?

4            MS. RAMOS-GRATEROLES:  I don't think it's necessary,

5    just for the record.

6            THE COURT:  I realized that later that the counts were

7    inverted from the instruction.

8            MS. APONTE CABRERA:  And I would like to point out to

9    the Court, I don't think it's necessary to bring it up again, but

10   I didn't want to interrupt the Court, but the last thing is my

11   client is Soto Beniquez and it you referred to him as Soto

12   Eniquez.

13           THE COURT:  Yes, you're right.  Very well.  Thank you.

14           MS. RODRIGUEZ:  Very quickly, Your Honor.  I would be

15   prepared to proceed with our opening statement.

16           THE COURT:  How long is your opening statement?

17           MS. RODRIGUEZ:  That's what I wanted to explain to the

18   Court.  It's going to be an hour, hour and a half depending how

19   long it takes me to set it forth.  And the request that I have is

20   that if I start I would like to finish.

21           THE COURT:  You'll finish.  The problem is --

22           MS. RODRIGUEZ:  I might go beyond five.

23           THE COURT:  The problem is what is going to happen with

24   the defendants' request.

25           MS. RAMOS-GRATEROLES:  Can we continue tomorrow.

1    THE COURT:  I can continue tomorrow, but if you insist

2 that we do it altogether today we will do it together but I must

3 tell you that you're not going to find the jury very happy.

4    MS. APONTE CABRERA:  I have a request that if the

5 government takes less time -- my opening statement is about

6 fifteen minutes.  I would ask that we not be allowed to leave the

7 jury with the opening statement of the government, that at least

8 one defense counsel be allowed to present its opening statement.

9    THE COURT:  At the end, I will ask at the end, I will

10 ask if one of you wants to get up but if you all decide then

11 you're going to have to do yours.

12    MS. APONTE CABRERA:  I could do mine.

13    MR. ANGLADA:  Unless the Court considers whether to

14 start tomorrow, because --

15    MS. RODRIGUEZ:  What I don't want is to stop and then

16 be asked to continue tomorrow.

17    THE COURT:  No, I will not do that.

18    MS. RAMOS-GRATEROLES:  I have enough experience that I

19 don't want to interrupt, but I request that emotions are not for

20 opening statements, emotions are for closing arguments.  So I

21 would request that Ms  Rodriguez stay as calm as possible and

22 preclude any emotion.

23    THE COURT:  Okay.  Let's go.

24        (COUNSEL WITHDREW FROM THE BENCH)

25    THE COURT:  One final preliminary instruction and that

1    is that, notwithstanding that in a conspiracy you must find

2    individual responsibility.  And that is, that you must judge each

3    case individually and determine the responsibility of each

4    defendant individually.  And that the evidence -- that if you

5    find strong evidence as to one or weak evidence as to the other

6    should not at all influence the person that there is no evidence

7    whatsoever.

8              In other words you have to determine

9    responsibility individually based on the evidence against that

10   person in particular.  All right.  Anything further?

11             MS. APONTE CABRERA:  No, Your Honor.

12             THE COURT:  Very well.  At this time we many take a ten

13   minutes break.  We will be working about until 5:30.  We will

14   hear the opening statements of the United States and one or two

15   of the defendants or we may postpone defendants until tomorrow.

16   So, since we're going to be here around an hour and a half, an

17   hour 15 to 20 minutes, I think it's appropriate that I give you a

18   ten minute break at this time.

19             (JURY WITHDREW FROM THE COURTROOM)

20             MS. APONTE CABRERA:  Your Honor, the defendants, they

21   are being passed through the front where the cooperating

22   witnesses are held.  And we have the identification of somebody

23   that has identified a defendant.  And it exposes a potential

24   problem of security to have them crossing or being in the same

25   area together.

1              I respectfully request to the Court particularly

2      because of the first problem, if there is a case that cooperating

3      witness does not know any of the defendants and one of them goes

4      to one of the cooperating witnesses there could be tainting of

5      the identification.  And in order to preserve the proper

6      procedure we request to the Court that they be kept separate and

7      not be passing where they're kept.

8              MR. ROLDAN BURGOS:  We join, Your Honor.

9              MS. RAMOS-GRATEROLES:  This has happened in previous

10     cases.  There have been problems if they're kept in the same cell

11     block.  It happened in the case of "la mosca".  The Court at that

12     time ordered that they be placed in the U.S. Marshals cell block

13     so that our client can be there and they were ordered, especially

14     the Marshals, not to make -- to try to make them any type of

15     contact even to see them and transport them separately at all

16     times.

17             MS. RODRIGUEZ:  Your Honor, I understand the U.S.

18     Marshal kept the defendants and the first witness for the

19     government in a cell block here by the court simply to save the

20     Court time, since the witness was going to take the stand this

21     afternoon.  In addition, we have requested from the U.S. Marshal

22     to maintain them there following the conclusion of the

23     proceedings today.

24             THE COURT:  So after today they will be in separate

25     cell blocks.

1          May I have the U.S. Marshal representative come

2    forward.   Sir, may I have your name for the record.

3          THE MARSHAL:   My name is Arnaldo Rodriguez.

4          THE COURT:   Thank you, sir.   Mr. Rodriguez there is a

5    request that the cooperating witnesses of the United States be

6    kept aside and independently from the defendants.   Can we do that

7    without compromising security?

8          THE MARSHAL:   I'll do the coordination with our

9    supervisor in the operations section to handle that matter.

10         THE COURT:   It can be done.

11         THE MARSHAL:   I'll deal with my supervisor to have it

12   handled.

13         THE COURT:   Okay.   The request of the Court is that,

14   the request of the Court to the United States Marshal is that you

15   make an effort to keep them independent and separated from each

16   other, unless you advise me that there is a security matter that

17   impedes that we do it.   Okay.   Please.

18         Since I am of the opinion that we are not

19   discovering powder in this case.   I'm not being Marco Polo

20   discovering powder, and finding out I have powder this must have

21   happened before.   So what I suggest is that you investigate how

22   that matter was solved in other multi defendant cases that have

23   been tried in this district and that we follow that procedure.

24         THE MARSHAL:   Yes, Your Honor.

25         THE COURT:   Okay.   Thank you.   Please be seated.

1    MR. ANGLADA:  May we have permission to move once

2  Sister Counsel uses that blackboard.  At least for counsel to

3  move into the public side if the Court may allow us, or any

4  other.

5    THE COURT:  Well, may I see the black board.

6    MR. ANGLADA:  As well as the defendants.

7    MS. RODRIGUEZ:  There is nothing on the blackboard yet.

8    MR. ANGLADA:  But something will be written.

9    MS. RODRIGUEZ:  Right.

10    THE COURT:  What is the request?

11    MR. ANGLADA:  That both defense counsel and

12  defendants --

13    THE COURT:  That presents a problem.  That presents a

14  problem.  I can't have all the defendants moving back and forth.

15    MR. ANGLADA:  What if the blackboard be placed here.

16    THE COURT:  That's too far away.

17    MS. RODRIGUEZ:  That's exactly what the government

18  said.

19    MR. ANGLADA:  Or facing the deputy clerk, so

20  everyone --

21    MS. RODRIGUEZ:  It's the members of the jury that need

22  to see what I write in the board.

23    MS. APONTE CABRERA:  I have an objection that the jury

24  is being presented with matters that are not in evidence.

25    MS. RODRIGUEZ:  I'm not going to introduce an exhibit

1    or anything like that.  I will be writing as I speak to the jury.

2    I'm entitled to do that in order to emphasize a point in my

3    opening statement.

4         MR. ANGLADA:  If I understand correctly the law the

5    demonstrative evidence is allowed once evidence has been

6    admitted.

7         THE COURT:  But this is not demonstrative, she's going

8    to be writing.  It is not demonstrative evidence.  First, it's

9    not going to go into the jury room as evidence.  That's the first

10   matter.  Second, she is only emphasizing a point.  Third, you

11   want to use the blackboard you can use the blackboard and do the

12   same.  But I don't see that this is a chart or evidence that is

13   going to be used.  She says she's going to write on the board.

14   That's all.

15        MS. RAMOS-GRATEROLES:  There is lack of notice as to

16   whatever she's going to write in the blackboard.

17        THE COURT:  Overruled.  The United States may use the

18   blackboard, the defendants may use the blackboard also.  That's

19   the ruling of the Court.  Let's move on.

20             The defendants counsel will be able to move but I

21   cannot have all the defendants move also.  I cannot have that.  I

22   cannot.  I really cannot.  I would authorize if counsel wants to

23   move they can move, but the defendants will have to stay where

24   they are.  Right.  That's the ruling of the Court.  Please bring

25   in the jury.

98

1          MR. DEL TORO:  What about placing in that area where

2    the deputy clerk is.

3          MR. ANGLADA:  At an angle so they can see and we can

4    see.

5          THE COURT:  The problem is that if they see, the jury

6    is not going to be able to see.

7          MR. DEL TORO:  They see from there, Your Honor.

8          THE COURT:  I don't understand how can the jury can see

9    it and the defendants can see it at the same time.

10         MR. ANGLADA:  At an angle, so that we can see.  At

11   least the attorneys over there they can see.

12              May we proffer our suggestion?

13         THE COURT:  Yes.

14         MR. ANGLADA:  Then what if the blackboard, the Court

15   allows us to place let's say here.  It will be much better.

16         THE COURT:  The problem is that if -- that's pretty far

17   away.  But I tell you what, move it here.  Let's see what happens

18   if you move it there.  Right there.  Right there.  I don't have

19   to see it.  I don't mind.  I don't have to see it.  That's close.

20         MS. RODRIGUEZ:  It's close, but --

21         THE COURT:  But there is still going to be some

22   defendants that will not be able to see it.

23         MR. MORALES:  They can move their chairs up front.

24         THE COURT:  Oh, yes, they can move the chairs up front.

25   No problem.  All right.  This is not evidence.

1        MR. ROLDAN BURGOS:  I have no problem moving over

2   there.  I would do that, Your Honor.  Thank you.

3        MR. ANGLADA:  The defendants are capable, they are

4   nodding at me that they are sort of capable of looking at this

5   angle so why not right here.

6        THE COURT:  Do you need a bigger board?  Do you need a

7   bigger board?

8        MS. RODRIGUEZ:  I can handle it with that board.  My

9   concern is really for the jury to appreciate what I'm putting on

10  the board.

11       THE COURT:  Counsel, the request of counsel is granted

12  as long as the effectiveness of both of you is not curtailed by

13  use of the blackboard, because I can put that blackboard in my

14  office and then nobody sees it.  So, the idea should be that the

15  Court is willing to accommodate you as long as the effectiveness

16  of the tool is not lost.  All right.  All right.  Let's see what

17  happens there.  All right.  Let's leave it right there.  Bring in

18  the jury.

19                          *********

20

21

22

23

24

25

REPORTER'S CERTIFICATE

    I, ARTHUR G. PINEDA, Official Court Reporter for the United States District Court for the District of Puerto Rico, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct computer aided transcript of proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

_____
ARTHUR G. PINEDA
Official Court Reporter