1
        IN THE UNITED STATES DISTRICT COURT FOR THE
                DISTRICT OF PUERTO RICO

2

3

UNITED STATES OF AMERICA,   )

4                       )
          Plaintiff,   )

5                       )
vs.                 )   CR. NO:  97-076(DRD)

6                       )
WILLIAM SOTO BENIQUEZ,ET AL.,)

7                       )

8          Defendants.   )
      _____)

9

10                      TRIAL

11      BE IT REMEMBERED that the above entitled action came on

12 for hearing before the HONORABLE DANIEL R. DOMINGUEZ, sitting at

13 Hato Rey, Puerto Rico, on the 13th day of January, 1999.

14      All parties and their counsel present as before.

15

16

17

18

19

20

21

22            ARTHUR G. PINEDA, OCR
          Federal Building, Rm. G-40
23            150 Chardon Avenue
        Hato Rey, Puerto Rico 00918
24            (787)766-4319

25

945

1        THE CLERK:  Criminal 97-079, United States of America

2   versus William Soto Beniquez, et al, for further jury trial.

3        On behalf of the government Assistant U.S.

4   Attorney Jacobed Rodriguez Coss.  On behalf of defendants

5   Attorneys Marlene Aponte Cabrera, Miriam Ramos Grateroles,

6   Raymond Rivera Esteves, Luz M. Rios Rosario, Javier Morales

7   Ramos, Jose Romo Matienzo, Victor Miranda Corrada, Rosa Bonini

8   Laracuente, Gustavo del Toro and Rafael Anglada Lopez.

9        All defendants are present.

10        THE COURT:  Bring in the jury.

11        (JURY CAME INTO THE COURTROOM)

12        THE COURT:  Ladies and gentlemen of the jury, the Court

13   reiterates that opening statements made by the United States and

14   by ten of the eleven defense counsel are not evidence.  The

15   government and counsel for the defense in its opening statement

16   have told you about the evidence that they intend to put before

17   you, so that you will have an idea of what the government's case

18   and the potential defense of this case is going to be.

19        Just as the indictment is not evidence, neither

20   are opening statements made by either the United States or the

21   defense is evidence.  It's purpose, the opening statement, is

22   only to help you understand what the evidence will be and what

23   the government and the defense, if they deem it appropriate, will

24   try to prove.  All right.

25        The United States may produce its first witness.

3

1          MS. RODRIGUEZ:   Your Honor, the United States calls

2    Victor Negron Maldonado.

3          THE COURT:   Victor Negron Maldonado.

4          Okay.   The oath of this witness will be taken at

5    this time.

6          THE CLERK:   The witness is being assisted by the

7    Official Court Interpreter.

8          Kindly raise your right-hand.

9          VICTOR NEGRON MALDONADO,

10   after having been first duly sworn to state the truth,

11   the whole truth and nothing but the truth testified

12   through the Interpreter as follows:

13                    DIRECT EXAMINATION

14   By MS. RODRIGUEZ:

15   Q    Good morning.

16        Will you state your name, please.

17   A    Yes.   Victor Negron Maldonado.

18   Q    Have you been known by any other name.

19   A    By the nickname.

20   Q    Including a nickname, yes.

21   A    "Pitocito".

22   Q    And Mr.Maldonado, I'm going to ask you if you have known an

23   individual by the name of William Soto Beniquez, also known as

24   "William Descamisao"?

25   A    Yes.

4

1    Q    Is that individual present in court today?

2    A    Yes.

3    Q    Will you please identify him.

4    A    He's the fourth one.

5    Q    Fourth from where, sir?

6    A    From left to right.

7         THE COURT:  In what row?

8         THE WITNESS:  The first row.

9         MS. RODRIGUEZ:  Let the record reflect that the witness

10   has identified defendant number one William Soto Beniquez?

11        THE COURT:  Any objection thereto, to the

12   identification?

13        MS. APONTE CABRERA:  No, Your Honor.

14        THE COURT:  None.  Very well.  The record so reflects

15   that he has been identified.

16   By MS. RODRIGUEZ:

17   Q    Mr. Negron Maldonado, have you ever known a individual known

18   as Juan Soto Ramirez also known as "Pipo"?

19   A    Yes.

20   Q    Is that individual present in court today?

21   A    Yes.

22   Q    Can you tell us where he is.

23   A    He's close to the wall, the last one.

24        MS. RODRIGUEZ:  I believe he said the one, I don't

25   know, "pegado".

5

1          THE INTERPRETER:  Against the wall.

2          MS. RODRIGUEZ:  Yes, that would be perfect.

3          THE COURT:  Well, before you do anything, what color

4    shirt is he wearing?

5          THE WITNESS:  White.

6          MS. RODRIGUEZ:  Let the record reflect that the witness

7    has identified Juan Soto Ramirez, defendant number two.

8          THE COURT:  Any objection thereto from counsel

9    representing --

10         MS. RAMOS-GRATEROLES:  None, Your Honor.

11         THE COURT:  Very well.  The record will so reflect that

12   Juan Soto Ramirez has been identified.

13   By MS. RODRIGUEZ:

14   Q    Have you ever known an individual by the name of Eduardo

15   Alicea Torres, also known as "Eggy".

16   A    Yes.

17   Q    And is that individual present in court today?

18   A    That's right.

19   Q    Where is this individual sitting?

20   A    He's the seventh, from left to right.

21         THE COURT:  What color shirt is he wearing?

22         THE WITNESS:  It's like greenish, between the one in

23   the blue shirt and the other one in the stripe shirt.

24         MS. RODRIGUEZ:  We would like the record to reflect

25   that the witness has identified Eddie Alicea Torres also known as

6

1    "Eggy", number three, Your Honor.

2            THE COURT:  All right.  Any objection thereto?

3            MR. RIVERA:  None whatsoever.

4            THE COURT:  The record will so reflect that he has

5    identified Eddie Alicea Torres.

6    By MS. RODRIGUEZ:

7    Q    Mr. Negron Maldonado, have you ever known an individual by

8    the name of Ramon Fernandez Malave, also known as "Porcel"?

9    A    Yes.

10   Q    Is that individual present in court today?

11   A    That's right.

12   Q    Can you please tell the Court where he's sitting.

13   A    The third from right to left.

14   Q    And what color shirt is he wearing?

15   A    White.

16           MS. RODRIGUEZ:  Your Honor, we would like the record to

17   reflect that he has identified Ramon Fernandez Malave, also known

18   as "Porcel".

19           THE COURT:  Any objection thereto?

20           MS. RIOS ROSARIO:  No objection.

21           THE COURT:  The record will so reflect that he has

22   identified Ramon Fernandez Malave.

23   By MS. RODRIGUEZ:

24   Q    Mr. Negron Maldonado, do you know an individual by the name

25   of Carmelo Vega Pacheco?

7

1    A    Yes.

2    Q    Is that individual present in court today?

3    A    Yes.

4    Q    And can you tell the Court where is he sitting?

5    A    Yes, the one in the light blue shirt.

6             MS. RODRIGUEZ:  Your Honor, we would like the record to

7    reflect that the witness has identified defendant number five,

8    Carmelo Vega Pacheco.

9             THE COURT:  Any objection thereto from counsel?

10            MR. MORALES:  No objection, Your Honor.

11            THE COURT:  Very well.

12   By MS. RODRIGUEZ:

13   Q    Mr. Negron Maldonado, do you know an individual by the name

14   of Armando Garcia Garcia?

15   A    That's right.

16   Q    And is that individual present in court today?

17   A    Yes.

18   Q    Can you tell us where is he sitting?

19   A    The second one, from right to left.

20            MS. RODRIGUEZ:  We would like the record to reflect

21   that the witness has identified defendant number eight Armando

22   Garcia Garcia.

23            THE COURT:  Any objection thereto from counsel?

24            MR. ROMO-MATIENZO:  No objection.

25            THE COURT:  The record will so reflect.

By MS. RODRIGUEZ:

Q    Mr. Negron Maldonado, have you ever met an individual by the name of Rene Gonzalez Ayala?

A    Yes.

Q    Is that individual present in court today?

A    That's right.

Q    Can you tell the Court, please, where is he sitting?

A    The first one, from left to right.

        MS. RODRIGUEZ:  Your Honor, we would like the record to reflect that the witness has identified defendant number 10 Rene Gonzalez Ayala.

        THE COURT:  Mr. Miranda?

        MR. MIRANDA CORRADA:  No objection.

        THE COURT:  Very well.  The record will so reflects.

By MS. RODRIGUEZ:

Q    Mr. Negron Maldonado, do you know an individual by the name of Jose Luis de Leon Maysonet?

A    Yes.

Q    Is that individual present in court today.

A    Yes.

Q    Can you tell the Court, please, where is he sitting?

A    The fourth, from right to left.

        MS. RODRIGUEZ:  We like the record to reflect, Your Honor, that he has identified defendant number 12, Jose Luis de Leon Maysonet?

9

1          MR. ROLDAN BURGOS:  That is correct.

2          THE COURT:  Okay.  No objection being made the record

3    will so reflect.

4    By MS. RODRIGUEZ:

5    Q    Mr. Negron Maldonado, in addition do you know an individual

6    by the name of Miguel Vega Cosme, also known as "Miguel Bobolon"?

7    A    Yes.

8    Q    Is that individual present in court today.

9    A    Yes.

10   Q    Can you tell the Court, please, where is he sitting?

11   A    Yes, the one in glasses and a beard.

12          MS. RODRIGUEZ:  Your Honor, we would like the record to

13   reflect that the witness has identified defendant number 18,

14   Miguel Vega Cosme.

15          THE COURT:  Any objection thereto?

16          MS. BONINI:  No, Your Honor.

17          THE COURT:  The record will so reflect.

18   By MS. RODRIGUEZ:

19   Q    Mr. Negron Maldonado, do you know an individual by the name

20   of Miguel also known as "Mikey"?

21   A    Yes.

22   Q    Is he present in court today?

23   A    Yes.

24   Q    Can you tell the Court where is he sitting.

25   A    The fifth from left to right.

10

1          MS. RODRIGUEZ:  We would like the record to reflect,

2   Your Honor, that he's identified defendant number 19 Miguel Vega?

3          THE COURT:  Mr. del Toro?

4          MR. DEL TORO:  No objection.

5          THE COURT:  Okay.

6   By MS. RODRIGUEZ:

7   Q    Mr. Negron Maldonado, do you know an individual by the name

8   of Juan Cintron Caraballo?

9   A    Yes.

10  Q    And is that individual present in court today?

11  A    Yes.

12  Q    Can you tell the Court where he is sitting.

13  A    Second from left to right.

14         MS. RODRIGUEZ:  We would like to record to reflect,

15  Your Honor, that the witness has identified defendant number 20

16  Juan Cintron Caraballo.

17         THE COURT:  Any objection thereto.

18         MR. ANGLADA:  No objection as to this procedure.

19         THE COURT:  Very good.  Thank you.  The record will so

20  reflect.

21         MR. ANGLADA:  Your Honor, we would have an objection.

22         THE COURT:  Okay.  Why don't we recess.  It is 12:30

23  and we said we would recess at 12:30, so why don't we recess the

24  jury at this time and I will entertain the objection after the

25  jury has left.  Thank you.

1          The jury is reminded that until this case is

2    submitted to you for deliberation you must not discuss this case

3    with anyone including among yourselves or remain within hearing

4    of anyone discussing it.  You are to keep an open mind and must

5    not decide any issue in this case until the case is submitted to

6    for deliberation under the instructions of the Court.  Thank you.

7              (JURY WITHDREW FROM THE COURTROOM)

8              MR. ANGLADA:  May I address the Court?

9              THE COURT:  Why don't we do that at 1:30.

10                   (NOON RECESS)

11             THE COURT:  Yes.  Please bring in the jury.

12             THE MARSHAL:  Yes, Your Honor.

13                 (JURY CAME INTO THE COURTROOM)

14             THE COURT:  Proceed.

15   By MS. RODRIGUEZ:

16   Q    Mr. Negron Maldonado, when did you first meet William Soto

17   Beniquez also known as "William Descamisao"?

18   A    It was around '88, '89.

19   Q    And where did you meet him?

20   A    At Callejon Dos.

21   Q    How was it that you came --

22   A    Alley two.

23   Q    Sorry.  How was it that you came to be present at El

24   Callejon Dos?

25             MS. APONTE CABRERA:  Objection.  Relevance.

12

1      THE COURT:  Isn't this preliminary as to knowledge as

2   to when he met him?

3      MS. APONTE CABRERA:  No, Your Honor.  He stated the

4   date.  He met him in '88, '89.  That is beyond the scope that the

5   Court has already directed.

6      THE COURT:  But, surely, if we're speaking about how

7   they met a person it may be relevant to show that they have met

8   him for a long period of time and what were the circumstances

9   that they met each other.

10      MS. APONTE CABRERA:  If we could have a proffer of this

11   at side bar maybe we will remove our objection.

12      THE COURT:  Does this present a potential 404(b)?

13      MS. APONTE CABRERA:  404 or 403, or matter of relevance

14   or outside the scope.  So we really don't know what this person

15   is going to say.

16      THE COURT:  Does this present a potential 404?

17      MS. RODRIGUEZ:  No, I don't believe so.

18      THE COURT:  Proceed.

19   By MS. RODRIGUEZ:

20   Q    Mr. Negron Maldonado, how is it that you come to meet

21   William Soto Beniquez?  And I am asking you how is it that you

22   come to meet him personally.

23   A    Through Canito, now deceased and through "Pipo".

24   Q    When you say "Pipo" are you -- who are you referring to?

25   A    To the first one, from right to left.

13

1        MS. RODRIGUEZ:  I would like the record to reflect that

2   the witness pointed to defendant number two Juan Soto Ramirez.

3        THE COURT:  That is correct.  That's where he pointed.

4   By MS. RODRIGUEZ:

5   Q    And who is Canito?

6   A    Canito was like a brother to him.

7   Q    And how long -- when did you meet Canito and "Pipo"?

8   A    I met Canito first at Ramos Antonini.

9   Q    How did you come to meet Canito?

10  A    Because he had a girlfriend who lived there in front of a

11  point that Ray and I had.

12  Q    Okay.  Who is Ray and what point are you referring to?

13  A    Ray was like a brother to me.  And it was at the Ramos

14  Antonini public housing project.

15  Q    What was the relationship, what was the extent of the

16  relationship between you and Ray?

17       MR. ANGLADA:  Your, Honor may I object pursuant to -- I

18  consider that Sister Counsel is going into -- well, here is the

19  problem.

20       The problem is that we started with William Soto

21  Beniquez and we are now with somebody, with somebody who is like

22  a brother to him.  And we're far away from William Soto Beniquez.

23  Let's try to get back to William Soto Beniquez.

24       MS. RODRIGUEZ:  We're not far away from him, but in

25  order for us to place the relationship in context we have to

14

1   provide a foundation as to how he comes to meet William Soto

2   Beniquez and his relationship with Ray was how.

3            MR. ANGLADA:  Just for the Court to take judicial

4   notice.

5            MS. RODRIGUEZ:  That's my question.  If I can go a

6   little further in order to present our relevance.

7            THE COURT:  I'm going to allow it, but please, please

8   get quickly to William Soto Beniquez.  Please.  Because that's

9   how we started.

10                  Go ahead.

11  By MS. RODRIGUEZ:

12  Q    Mr. Maldonado can you tell --

13           MR. DEL TORO:  We have a problem with --

14           THE COURT:  Okay.  We'll wait.

15                  (SHORT PAUSE IN PROCEEDINGS)

16           THE INTERPRETER:  Ready, Your Honor.

17           MS. RODRIGUEZ:  May we proceed, Your Honor?

18  By MS. RODRIGUEZ:

19  Q    Now, Mr. Negron Maldonando, can you please explain the

20  extent of your relationship with Ray?

21  A    Yes.  We had a point at Ramos Antonini.  We sold heroin,

22  crack, and cocaine.

23  Q    Now, when you say -- when you use the term "punto de droga",

24  drug point, to what do you refer specifically?  What is a drug

25  point?

15

1   A    A drug point is the place where there are other of our

2   people selling the drugs to other persons.

3              MR. ANGLADA:  If I may, I would object to the word

4   "nosotros".  There was no designation as "we".  And I think that

5   it's very important.

6   By MS. RODRIGUEZ:

7   Q    When you use the word "we", to describe the drug point to

8   whom were you referring?

9   A    To Ray, now deceased, Cesario, Willito, "Gringo", Cano

10  Quintana, Tito El Negro.  There were several persons.  We were

11  quite a number of us.  There was quite a number of us.

12  Q    And exactly in what form were you distributing or selling

13  these drugs at the point?

14  A    Well, we would buy cocaine and cook it to turn it into

15  crack.

16  Q    And how would you then sell that crack at the point?

17             MR. MIRANDA CORRADA:  Objection to this.  This is

18  irrelevant to what is in this case.

19             MS. RAMOS-GRATEROLES:  Outside the scope of the time

20  frame.

21             MR. ANGLADA:  Still the same problem.  Objection.

22             THE COURT:  Please move forward.

23             MS. RODRIGUEZ:  Yes sir.

24             THE COURT:  Sustain the objection.

25  By MS. RODRIGUEZ:

1    Q    Mr. Negron Maldonado, who supplied you and Ray with the

2    cocaine that you sold at the drug points?

3         MS. APONTE CABRERA:  Objection.  Relevance 404, 403,

4    outside the scope.

5         THE COURT:  It depends.  It depends if the answer goes

6    to -- it depends what the answer is going to be.

7         MS. APONTE CABRERA:  There is no time frame.  There is

8    no way that we can place it.

9         THE COURT:  Is this bringing up a 404?

10        MS. RODRIGUEZ:  I don't believe so, Your Honor.

11        THE COURT:  Very well.  The objection is overruled at

12   this time.

13        MS. APONTE CABRERA:  Can we still have a time frame.

14        THE COURT:  Yes, you certainly may.

15        MS. RODRIGUEZ:  Can we have the last question.

16        THE COURT:  You may.

17   By MS. RODRIGUEZ:

18   Q    Who supplied --

19        THE COURT:  Not yet.  Go ahead.  Now go.

20   By MS. RODRIGUEZ:

21   Q    Who supplied you and Ray with the cocaine you distributed in

22   your point.

23   A    "Pipo".

24        MS. RAMOS-GRATEROLES:  Objection, Your Honor.  Beyond

25   the scope.  I request a side bar.

1      MS. RODRIGUEZ:  One more question, Your Honor.  We'll

2  place this directly in the context of this case.

3      THE COURT:  All right.  No.  But we're going to have to

4  wait.

5                    (COUNSEL APPROACHED THE BENCH)

6      MS. RAMOS-GRATEROLES:  Your Honor, we object to the

7  grounds that this is beyond, outside the scope, outside of the

8  information provided to us in the bill of particulars, and

9  secondly the government has misled the Court because she

10  informed -- when you asked her if it led to a 404 and she

11  answered no.

12          We believe what the government states here some

13  evidence outside the scope, so I will object to this and I would

14  request a cautionary instruction immediately to the jury that

15  they shouldn't consider this.

16      MS. RODRIGUEZ:  Your Honor --

17      THE COURT:  Okay.

18      MS. RODRIGUEZ:  It is not 404(b) evidence.  Ray and

19  Victor Negron Maldonado would go to Bitumul to Callejon Dos and

20  they would buy from "Pipo" in Bitumul.  That is not outside the

21  scope of the conspiracy.

22      THE COURT:  But isn't this in 1988 and 1989?  This is

23  why she's alleging that it's outside of the scope.

24      MS. RODRIGUEZ:  I'll ask him now to provide a time

25  frame.

1          THE COURT:  Well, ask him.

2          MS. RODRIGUEZ:  As to when he and Ray began to operate

3    the drug points.  And the date is not -- we may bring evidence

4    that falls outside before the date.

5          THE COURT:  You certainly may.  But in 1988 and 1989,

6    the Court would have to hear a lot before it would allow you a

7    variance that long.

8          MS. RODRIGUEZ:  I think that what happened, I asked him

9    when did you meet William Soto Beniquez and he said '88 and '89

10   and then we moved to something else and the time frame was

11   probably different.

12         THE COURT:  Well, let me hear -- let's go to -- let's

13   wait until then, until we get a time frame.

14         MR. ROMO-MATIENZO:  We join the objection.  If she

15   wants to know about the drugs and the drug point she has to go

16   into Bitumul, not to Ramos Antonini.  That is something else

17   she's trying to bring and this is prejudice against our clients,

18   Your Honor.

19         MS. RAMOS-GRATEROLES:  That point was in Ramos

20   Antonini.  Furthermore, I would ask from the Court to have her

21   make a proffer.

22         MS. RODRIGUEZ:  Yes, Your Honor.

23              Pipo is packaging quantities of cocaine turning

24   into crack in Bitumul in Callejon Dos.  And they go to purchase

25   these narcotics in Bitumul, the distribution is taking place

19

1    within the Barriada Bitumul.

2         THE COURT:  That hasn't been established yet.

3         MS. RODRIGUEZ:  Well, I said to the Court one more

4    question and I would place it in context of the conspiracy.  My

5    last question would be where did you purchase narcotics.

6         THE COURT:  And what date.

7         MS. RODRIGUEZ:  And what date.

8         THE COURT:  Give me an approximate date.

9         MS. RAMOS-GRATEROLES:  If it's from before January 1st,

10   1990, it's 404(b) because it has not been announced by the

11   government.

12        MS. RODRIGUEZ:  Your Honor, it's not 404(b).  It is

13   evidence of the conspiracy.  Even though it may be prior to

14   January 1st, 1990.

15        MS. RAMOS-GRATEROLES:  At that time my client was a

16   minor.

17        MR. ANGLADA:  The Court can take judicial notice that

18   the government asked the Grand Jury to return six indictments,

19   telling the Grand Jury that each of those indictments pertained

20   to one single conspiracy.  What I think the government is

21   intending to do is trying to enhance or bolster, you know, one

22   testimony in case one with case two and case three and case four.

23        THE COURT:  Okay.

24        MR. ANGLADA:  The Court -- Judge Casellas already

25   presided over these other cases.  There were ten indictments,

1   they were convicted, one was acquitted and that's that.  But now

2   by the formality of where I bought such and such drug here or

3   there.  There is the danger of melting together all the evidence

4   that pertains to the six different indictments.

5          MS. RODRIGUEZ:  No, sir.  First of all, to clarify.

6   He was not charged in that indictment.  He's part of the

7   conspiracy in 97-75 United States V. Negron Maldonado.  He's

8   charged in the conspiracy where he has the drug point in Ramos

9   Antonini, simply because the evidence that he is proffering here

10  might have also been admissible to prove the existence of a

11  conspiracy in Ramos Antonini does not prove that it does

12  corroborate -- we're not trying to enhance anything.  We're

13  trying to corroborate the fact that a conspiracy in Barriada

14  Bitumul also existed.

15         THE COURT:  All right.

16         MS. RODRIGUEZ:  And we're corroborating that he goes to

17  purchase drugs that are being distributed there.

18         THE COURT:  Let's go on.  Let's move on.

19                (COUNSEL WITHDREW FROM THE BENCH)

20  By MS. RODRIGUEZ:

21  Q     Mr. Negron Maldonado, you stated that you and Ray ran a drug

22  point within Ramos Antonini.

23  A     That's right.

24  Q     When did you and Ray begin to run that drug point in Ramos

25  Antonini?

1   A    We started around '89, when he came out, because he was in

2   prison as a juvenile and when he came out we were able to

3   establish this drug point.

4   Q    And how were you able to establish the drug point?

5   A    When we were able to take out the one from --

6   Q    I'm saying with what material were you able to start that

7   drug point.

8   A    We started with the capsules that "Pipo" gave us, the

9   packages.

10  Q    Where did you purchase those capsules?

11  A    We would pick them up at Callejon Dos in Bitumul.

12  Q    Now, when you're talking about a capsule, can you please

13  describe to the Court what a capsule is?

14         MS. RAMOS-GRATEROLES:  No time frame.  Objection.  We

15  stated our objection at side bar.

16         THE COURT:  Please provide us a time frame with this

17  operation.

18  By MS. RODRIGUEZ:

19  Q    To the best of your memory, Mr. Negron Maldonado, when was

20  Ray released from prison?

21         THE COURT:  When was Ray released from prison?

22         MS. RODRIGUEZ:  That's what I asked.

23         MR. ANGLADA:  Objection.  He didn't say prison, he said

24  juvenile.

25         THE COURT:  Fine.  Thank you.  Juvenile institution.

1    By MS. RODRIGUEZ:

2    Q    When was Ray released from the juvenile detention hall?

3    A    Around '88.

4    Q    When were you able to establish your point in Ramos Antonini

5    then?

6              MR. ANGLADA:  We would like to renew our objection.

7              THE COURT:  It's renewed.  And I haven't heard anything

8    that as of yet I should deal with.  Not yet.  Go ahead.

9    By MS. RODRIGUEZ:

10   Q    If you could be as precise as possible in telling the Court

11   when you were able to start the drug point in Ramos Antonini?

12   A    Around '89.

13   Q    Would it have then been towards the beginning of 1989 or

14   towards the end of 1989?

15             MS. RAMOS-GRATEROLES:  Leading.

16             THE COURT:  Well --

17             MR. ANGLADA:  Asked and answered.  Asked, answered and

18   speculative and leading.

19             THE COURT:  Overruled as to all three.  Go ahead.

20             THE WITNESS:  To be specific I don't recall the month,

21   but I know it was during '89.

22             THE COURT:  All right.  The Court request the United

23   States Attorney to direct its questions from January 1990 on.

24   You may proceed.

25   By MS. RODRIGUEZ:

23

1   Q   Calling your attention to January 1st, 1990, Mr. Negron

2   Maldonado, what was the status of the drug point that you and Ray

3   had established in Ramos Antonini?

4   A   It was located in the middle.

5   Q   Can you describe this operation to the Court?

6   A   Yes, as I told you before we had cocaine.  We sold crack,

7   heroin and cocaine.

8   Q   So, you were still operating the point in January of 1990?

9   A   That is right.

10  Q   Who was supplying you with the narcotics that you were

11  distributing in the drug point at that time?

12  A   At that time "Pipo".

13  Q   And where would you receive from "Pipo" or where would you

14  purchase from "Pipo" those narcotics?

15  A   At Callejon Dos.  Bitumul.

16  Q   Where is Callejon Dos in Bitumul?

17  A   It is close to Macibo Pub.

18  Q   And when you refer to Bitumul, sir, what geographical area

19  are you referring to?

20  A   There is Callejon Dos is near where Mita Sector is, there it

21  is located Callejon One, Two, Three, Four, Five.

22  Q   You were about to say near --

23  A   Close to where the point that belongs to "Pipo" and William

24  was.

25  Q   And where was that point located, sir.

24

1    A    Next to Macibo Pub.

2    Q    Sir, and when you say William -- when you refer to the

3    person of William, to whom are you referring.

4    A    To William Beniquez, the one who is here in court.

5         MS. RODRIGUEZ:  Your Honor, let the record reflect that

6    the witness has made reference to William Soto Beniquez,

7    defendant number one.

8         THE COURT:  Any objection thereto?

9         MS. APONTE CABRERA:  No objection, Your Honor.

10        THE COURT:  Okay.  Very well.

11   By MS. RODRIGUEZ:

12   Q    Now, sir, how many times would you visit El Callejon Dos to

13   purchase drugs from "Pipo".

14   A    Weekly.  We would go two times, three times a week.  We were

15   always there at the Callejon.

16        THE INTERPRETER:  Almost always at Callejon.

17   By MS. RODRIGUEZ:

18   Q    Now, I started to ask you before if you could describe to

19   the Court what capsules were.  And the packages of capsules that

20   you would purchase from "Pipo".  Can you describe what a capsule

21   is.

22   A    It's a small vial with a cap.  And inside it has the cooked

23   cocaine.

24   Q    And how many of those vials would be contained in the

25   packages that you would purchase?

1   A    Well, he would give them to us by the hundreds.

2   Q    When you use the word "he" who is he?

3   A    To "Pipo".

4   Q    And how much would you pay him for a package of one hundred

5   capsules containing crack?

6   A    He would give them to us at that time for three twenty-five.

7          THE COURT:  Three hundred and twenty-five cents.  He

8   said three two five.

9          MS. RODRIGUEZ:  You're right, Your Honor.  You're

10   absolutely right.

11   By MS. RODRIGUEZ:

12   Q    When you say three twenty-five, in monetary amounts how much

13   are you talking about?  How much money?

14   A    Three hundred and twenty-five dollars.

15   Q    And how much -- for how much would one little capsule sell

16   at your drug point?

17   A    Five dollars.

18   Q    All right.  Now, you stated before that you would go to

19   Bitumul on a weekly basis?

20   A    Yes.

21   Q    On how many of those occasions that you would visit Bitumul

22   would you purchase packages of crack from "Pipo"?

23   A    Two to three times.

24   Q    And each time you purchased packages of crack how many

25   packages would you purchase at a time?

1   A    He would give us over five packages.

2   Q    Who else was present, if anyone, when you purchased these

3   packages of crack from "Pipo"?

4   A    Manoline, Cano, both deceased and there were occasions when

5   "Eggy" was also present.

6   Q    When you refer to person by the name of "Eggy", to whom are

7   you referring?

8   A    The one who is in court.

9   Q    Are you referring to -- how is the person -- is that the

10  person you referred to as "Eggy" this morning?

11  A    He was "Pipo's" --

12          MR. RIVERA:  Objection.

13          THE COURT:  Sustained.

14              That was not the question.  At least that was not

15  the question that was asked.  So sustained as to the objection.

16              You may reask the question.

17          MR. RIVERA:  May the answer be stricken.

18          THE COURT:  The answer is stricken and every time I

19  sustain an objection the answer is stricken for definition of the

20  preliminary instructions that I gave to the jury.  Thank you.

21          MS. RODRIGUEZ:  I may proceed?

22  By MS. RODRIGUEZ:

23  Q    This person that you referred as "Eggy" was he the same

24  person you identified as "Eggy" this morning?

25  A    That is correct.

1    MS. RODRIGUEZ:  I would like the record to reflect that

2    the person is referring to Eddie Alicea, defendant number three.

3    THE COURT:  I have heard no objection, so...

4    MR. MIRANDA CORRADA:  No objection.

5    By MS. RODRIGUEZ:

6    Q    Mr. Negron Maldonado, you mentioned before that William and

7    "Pipo" had a point?

8    A    That is correct.

9    Q    Across from Macibo Pub.

10   A    On Cuba Street.

11   Q    How do you know that was in fact a drug point?

12   A    Well, because I was raised from a very young age at the

13   barriadas and housing projects, so I know what a drug point is.

14   Q    And how many occasions did you have an opportunity to

15   observe the drug point that belonged to "Pipo" and William?  That

16   belonged to "Pipo" and William.

17   THE COURT:  "Pipo" and who?

18   MS. RODRIGUEZ:  "Pipo" and William.

19   THE INTERPRETER:  How many times?

20   By MS. RODRIGUEZ:

21   Q    When.

22   A    Many times.

23   Q    When you say many times can you be more specific?

24   A    Well, every time I would go to Bitumul I would see the

25   movement, how the sellers would -- how the people would come to

28

1   buy from sellers.

2   Q    And how many times would you be in Bitumul?

3            MR. ANGLADA:  Asked and answered many times.

4            MS. RODRIGUEZ:  He said whenever I go to Bitumul.

5   By MS. RODRIGUEZ:

6   Q    On a week how many times did you visit Bitumul.

7            MS. RAMOS-GRATEROLES:  That has been asked and answered

8   twice.

9            THE COURT:  Okay.  The objection is sustained.

10           MS. RODRIGUEZ:  May we address the Court?

11           THE COURT:  Yes.

12           MS. RODRIGUEZ:  We believe what we asked him on how

13  many occasions he would visit Bitumul to purchase drugs.  The

14  question we're asking now is on how many occasions in general

15  would he visit Bitumul.

16           THE COURT:  Okay.  As clarified authorized.

17           MS. RAMOS-GRATEROLES:  We object.  That is beyond the

18  answer.  He's going beyond the question.

19           THE COURT:  Okay.  Sustain the objection.  That was not

20  the question asked.

21  By MS. RODRIGUEZ:

22  Q    Mr. Negron Maldonado, in addition to the two or three times

23  that you would visit Bitumul to purchase narcotics, would you

24  visit Bitumul on other occasions when you did not purchase

25  narcotics?

29

1          THE COURT:  Please answer yes or no.

2          THE WITNESS:  Yes.

3    By MS. RODRIGUEZ:

4    Q    Approximately how many times a week in total would you visit

5    the Barriada Bitumul?

6    A    Before?

7    Q    In general.

8          THE COURT:  The question now is not how many times you

9    went to the Barriada Bitumul to purchase drugs, but how many

10   times did you go to the Barriada other than to purchase drugs.

11         THE WITNESS:  I had to go through there at the times I

12   would play at the basketball court.

13   By MS. RODRIGUEZ:

14   Q    You go there every day?

15         MR. ANGLADA:  Objection.

16         THE COURT:  Sustained.

17   By MS. RODRIGUEZ:

18   Q    How many times a week did you play basketball at the

19   basketball court?

20         MR. ANGLADA:  404(b).

21         THE COURT:  Basketball?

22         MR. ANGLADA:  Other --

23         THE COURT:  No.  She's referring to basketball.

24         MS. RODRIGUEZ:  404 is other bad acts.

25         MR. ANGLADA:  Other acts.  Prior and anterior; then and

30

1    before.

2              MS. APONTE CABRERA:   Can we have a time frame, Your

3    Honor.

4              THE COURT:   Please place a time frame.   I think the

5    clarification is well taken.   Tell him from when to when.

6    By MS. RODRIGUEZ:

7    Q    Calling your attention to on or about January of 1990, on

8    how many occasions on a weekly basis would you play basketball at

9    the Barriada Bitumul?

10   A    Well --

11             MR. MIRANDA CORRADA:   Objection.

12             THE COURT:   Sustained.

13   By MS. RODRIGUEZ:

14   Q    On how occasions would you do that?

15             THE COURT:   Sir, look at me.   Okay.   Please listen to

16   the question.   The question was how many times did you play

17   basketball.   Now, don't answer anything else.   Don't provide us

18   any more answers other than what is asked.   Concentrate on the

19   question.   If not they're going to object and I'm going to have

20   to sustain the objection and it makes the testimony longer.   So,

21   just listen to the question and answer the question.   Right.

22   Thank you.   You may proceed.

23   By MS. RODRIGUEZ:

24   Q    How many times would you play basketball on a weekly basis,

25   from Monday to Sunday?   Sunday to Sunday.

31

1          THE COURT:  That is answered by a number.

2          MS. RODRIGUEZ:  I don't believe the question has been

3     translated.

4          THE COURT:  Okay.  Go ahead.

5          THE INTERPRETER:  Can I have the question again.

6          MS. RODRIGUEZ:  You certainly may.

7     By MS. RODRIGUEZ:

8     Q     On how many times would you play basketball in the Barriada

9     Bitumul on a weekly basis?

10    A     About four times a week, something like that.  When they

11    invited me to play.

12    Q     Okay.

13    A     When the guys invited me to play.

14    Q     And who did you play basketball with?

15    A     At that time I would play with "Eggy", "Popeye", Canito was

16    there.  "Pipo" would play basketball.

17    Q     Who is "Popeye".

18    A     He's present in court.

19    Q     Can you identify him?

20    A     The one with the sky blue shirt.

21         MS. RODRIGUEZ:  Let the record reflect that he has

22    identified Carmelo Vega Pacheco Your Honor.

23         THE COURT:  I heard no objection.

24         MR. MORALES:  No objection, Your Honor.

25         MS. RODRIGUEZ:  Now -- well, Your Honor, may we

32

1    approach the witness?

2           THE COURT:  Yes, you may.  That photograph has been

3    identified?

4           MS. APONTE CABRERA:  Precisely.  And we have an

5    objection as to those we don't have -- are those the first ones

6    that were marked?  We have objection to those pictures.

7           THE COURT:  Okay.

8           MS. APONTE CABRERA:  Those pictures were taken in 1997.

9    And it depicts an area of 1997, how the area was in 1997.  And I

10   believe the witness' testimony has not a foundation as to that

11   date and what is represented in that picture, has not properly

12   laid the foundation.

13          THE COURT:  We'll see what happens.

14          MS. RODRIGUEZ:  May we show the witness?

15          THE COURT:  Go ahead, show them to him.

16   By MS. RODRIGUEZ:

17   Q    Mr. Negron Maldonado, the photographs that are presented

18   before you are identified on the back with a number.  Bring your

19   attention to what has been marked as Government's Identification

20   Number seven -- first number eight.  Eight and nine.

21          Bring your attention to what has been marked

22   Government's identification Number Eight.  Please examine that

23   photograph and tell me if you recognize what is depicted there.

24   A    Yes.  You could see here the place where "Pipo" and

25   William --

33

1          MR. ROMO-MATIENZO:  Objection, Your Honor.  Contents

2   have not been admitted into evidence.

3          THE COURT:  No.  Overruled.

4          THE WITNESS:  -- drug point was.

5   By MS. RODRIGUEZ:

6   Q    How is the location depicted on the photograph?  How does it

7   compare to the location of the drugs point controlled by William

8   and "Pipo" as you observed it?

9   A    Could you ask the question again.

10  Q    Referring to the location of the drug point of William and

11  "Pipo", how does the location of that drug point compare with the

12  place that is depicted on that photograph?

13  A    Well, it depicts here the drug point and I see it the same

14  as it was in 1990.

15         MS. RODRIGUEZ:  I'd like to move Government's Number

16  Eight into evidence, Your Honor.

17         THE COURT:  Now I will hear the objection.

18         MR. DEL TORO:  We would like to voir dire before

19  admitting into evidence the photograph.

20         THE COURT:  Short.

21         MR. DEL TORO:  Yes, Your Honor.

22         THE COURT:  Okay.  You may proceed Mr. Del Toro.

23                    EXAMINATION ON VOIR DIRE

24  By MR. DEL TORO:

25  Q    Yes.  Mr. Witness, were you present when that photograph was

34

1    taken out?

2    A    No.

3    Q    Do you know when that photograph was taken?

4    A    No, sir.

5    Q    Were you told when that photo was taken?

6    A    No, sir.

7    Q    When was the first time that you saw that photo?

8    A    It was given to me, shown to me in '98.

9    Q    Who showed it to you?

10   A    Well, the agents and prosecutor Ms. Rodriguez.

11   Q    That was in 1998?

12   A    Yes, that's right, sir.

13   Q    Did they tell you when that photo was taken?

14   A    No, sir.

15   Q    Do you know that photo was taken in the 1990's?

16             MS. RODRIGUEZ:  Objection, Your Honor.  He said he

17   didn't know when the photograph was taken.

18             THE COURT:  That's sustained.

19   By MR. DEL TORO:

20   Q    Do you see any difference in that photo from the 1990, when

21   you are recalling that you say the drug point was located.

22   A    The only thing that I can see now is that there were more

23   debris than the one before.

24   Q    And what you're showing, do you see a drug point there in

25   that photograph?  Identification eight.  Do you see a drug point?

1   A    Well, William and "Pipo's" drug point was right there.

2            MS. RODRIGUEZ:  May counsel please permit the

3  translator to complete her response.  If not the record will

4  become confused.

5            THE COURT:  I think she's correct on that.

6  By MR. DEL TORO:

7   Q    Do you see or you don't see a drug point in that photograph?

8            MS. RODRIGUEZ:  Asked and answered.  Counsel is arguing

9  with the witness.

10           THE COURT:  Sustain the objection.

11  By MR. DEL TORO:

12   Q    In that photograph what is depicted?  Can you refer to what

13  is depicted, debris and what else?

14           MS. RODRIGUEZ:  The photograph speaks for itself.  If

15  he's asking what the photograph depicts the photograph speaks for

16  itself.  The Court can examine it.

17           MR. DEL TORO:  This is a witness that has not been

18  present and I'm trying to prove how he can compare his memory.

19  We're talking about eight years ago.

20           THE COURT:  Fine.  You may proceed.

21  By MR. DEL TORO:

22   Q    What else do you see depicted in that identification eight

23  besides debris?

24   A    Well, here where the truck is located a little further ahead

25  was the location of the Macibo Pub that belonged to William.

36

1    Q    And that truck was there in 1990?

2          MS. RODRIGUEZ:  Your Honor, we take notice that truck

3    is a movable object.

4          MR. DEL TORO:  No, I don't know if he's referring that

5    behind that truck was the Macibo Pub.  I'm asking if that was

6    there in 1990.  That's what I'm asking.

7          THE COURT:  Please answer.

8          THE WITNESS:  No.

9          MR. DEL TORO:  No further questions.

10         MS. APONTE CABRERA:  May we voir dire a couple of

11   questions?

12         THE COURT:  As long as it's not repetitive.

13         MS. APONTE CABRERA:  No, Your Honor.

14                    EXAMINATION ON VOIR DIRE

15   By MS. APONTE CABRERA:

16   Q    Good afternoon, sir.

17         Now sir, when you were shown that picture how were --

18   was that the only picture that you were shown of Bitumul?

19   A    No, ma'am.

20   Q    When you were shown that picture was an explanation given to

21   you for the picture of why they were showing you that picture?

22         THE COURT:  That doesn't go to the admissibility, that

23   goes to cross examination.

24         MS. APONTE CABRERA:  No, Your Honor.  It goes with

25   identification.

37

1       THE COURT:  Go ahead.

2   By MS. APONTE CABRERA:

3   Q    I'm sorry.  I will repeat the question.

4        When that picture was given to you, at the time it was

5   given to you, was it given to you with a reason why it was being

6   shown?

7   A    Well, it was shown to me because I am a witness, counsel,

8   and they were corroborating what I had told them.

9   Q    So at the moment that they give you the picture you have

10  shown, talked to them about the drug point that you say that is

11  "Pipo's" and William's right, and then they showed you the

12  picture?

13  A    After.

14  Q    Okay.  So, after you say you talked about "Pipo's" and

15  William's point, the agents showed you the picture and I'm asking

16  you if they told you is this the point that you're talking about?

17  A    That's right, counsel.

18       MS. APONTE CABRERA:  Your Honor, we object to the

19  picture because of the purpose of the identification of the

20  place.

21       MR. DEL TORO:  We renew our objection.

22       MS. RAMOS-GRATEROLES:  We join the objection.

23       THE COURT:  The Court admits the photograph because the

24  Court understands that in the jurisprudence all that requires is

25  that the person identify the photograph as it was at the time

38

1   that the photograph reflects the place as it was in the 1990's.

2   And he has stated that the photograph reflects the place except

3   that the place has -- that the photograph does no longer have the

4   spot, has more debris and that there is a truck going by there

5   that would not have been there in 1990.  So the photograph is

6   admitted into evidence.

7                    The defendants may, upon cross examination, ask

8   more questions as to the weight that the jury will provide to the

9   photograph and the weight that the photograph is going to receive

10  as per this witness' testimony.

11  By MS. RODRIGUEZ:

12  Q    Mr. Negron Maldonado, you stated that when you were shown

13  the photograph that you were shown other photographs; is that

14  correct?

15  A    That's right.

16  Q    Approximately how many other photographs did you see in that

17  occasion?

18                    Approximately how many other photographs did you see on

19  that occasion?

20  A    Quite a number of them.

21  Q    And how was it that you looked through those photographs?

22                    Can you describe to me physically how was it that you

23  looked through those photographs?

24  A    During the debriefings they would show me the pictures and I

25  would identify where the points were located at Bitumul.

39

1   Q    And when you were doing that did you -- were you holding the

2   photographs?

3   A    Well, the photographs as I told you, were shown to me in the

4   latter part of '98.

5   Q    What I want to know is, were you told what was depicted in

6   the photograph or were you asked whether you recognized what was

7   depicted in the photograph?

8                MS. APONTE CABRERA:  Objection.  Suggestive.

9                MS. RODRIGUEZ:  Your Honor, I think -- if we may

10  address the Court?

11               THE COURT:  Overruled.

12  By MS. RODRIGUEZ:

13  Q    Were you told what was depicted in the photograph or were

14  you asked if you recognized what was depicted in the photograph?

15  A    No.  I was asked what did I see.  What was I able to observe

16  in the photograph.

17  Q    Now, bringing your attention to what has been marked as

18  Government's Identification Number Nine.

19               Will you please examine that photograph and tell me

20  whether you recognize what is depicted there?

21  A    As I told you before, counsel, the point that belonged to

22  William and "Pipo".

23               MS. RODRIGUEZ:  Your Honor, we would like to move

24  Government's Exhibit Number Nine into evidence as well and ask

25  permission to publish them to the jury.

40

1          THE COURT:  No, nine has not been properly identified.

2                We have to ask the question for that photograph

3    because there is evidence that this photograph was taken in 1998.

4    You just said it right, so we have to ask him if that photograph

5    corresponds to how it looked in 1990.  If not it's not

6    admissible.

7    By MS. RODRIGUEZ:

8    Q    How does Government's Identification Number Nine compare to

9    Government's Exhibit Number Eight?

10          MR. MIRANDA CORRADA:  Objection.  That is not the

11   proper way to identify that.

12          THE COURT:  Sustained.

13          MS. RODRIGUEZ:  The Court many examine Government's

14   Number Nine.

15          THE COURT:  I know, but --

16          MS. RODRIGUEZ:  All right.  I'll ask the question.

17          THE COURT:  Thank you.

18   By MS. RODRIGUEZ:

19   Q    Mr. Negron Maldonado, how does the point that was controlled

20   by William and "Pipo" compare to what is depicted in Government's

21   Identification Number Nine --

22          THE COURT:  Let's put a date on it.  You have to put a

23   date on it.

24          MS. RODRIGUEZ:  Okay.

25          THE COURT:  1990.

41

1   By MS. RODRIGUEZ:

2   Q    How does the point of "Pipo" and William, as you observed it

3   back in January of 1990, compare to what is depicted in that

4   Exhibit Number Nine, Government's Exhibit Number Nine?

5   A    As I told you, Ms. Rodriguez, there is more debris here but

6   it was -- it looked like that before.

7            THE COURT:  Any objection thereto?

8            MS. RAMOS-GRATEROLES:  Yes, Your Honor, on the same

9   grounds as I.D. Number Eight.

10           THE COURT:  Very well.  So noted.  You all join.

11           MS. APONTE CABRERA:  I have an additional objection,

12  that it will be similar, that it depicts the same as the other

13  picture.

14           THE COURT:  The Court admits I.D. Number Nine and it

15  becomes Exhibit Number Nine.

16           MS. RODRIGUEZ:  Can we publish Exhibits Eight and Nine.

17           THE COURT:  I think we can just publish one.

18               Pick one of those two and we'll publish one of the

19  two.

20           MR. ANGLADA:  Then it becomes cumulative.

21           MS. RODRIGUEZ:  The government has decided to publish

22  Government's Exhibit Number Eight, Your Honor.

23           THE COURT:  Fine.  Is that correctly placed.  It seems

24  that it's very dark.  At least in my -- there it is.  Thank you.

25  Thank you.

42

By MS. RODRIGUEZ:

Q    Mr. Negron Maldonado, can you see Exhibit Number Eight reflected in the monitor in front of you?

A    Yes, I can.

        MS. RODRIGUEZ:  What we like to do is have the witness point to the location.

        THE COURT:  No problem.  He can step down.  Your request is that he step down?

        MS. RODRIGUEZ:  Yes, sir.

        THE COURT:  Yes, he can step down.

        MR. ANGLADA:  Your Honor, if I may.  I do have an objection.  There is no --

        THE COURT:  Are you objecting to him stepping down.

        MR. ANGLADA:  No.  I'm objecting to the admissibility of the photo, if I may.

        THE COURT:  They're already in.  They're already in. You want the Court to reconsider?

        MR. ANGLADA:  Yes, Your Honor.

        THE COURT:  Okay.  Then go ahead with the reconsideration.

        MR. ANGLADA:  Your Honor, there is no way no one can assure that photo belongs to Bitumul or to Ponce or to Mayaguez, or to San Francisco.  There is no way.

            There is no name of a street, of a store.  There is no recognizable building on the back of the photograph.  There

43

1   is no way.

2            THE COURT:  Very well.

3            MR. ANGLADA:  It could be Patillas, Arroyo, Utuado.

4            THE COURT:  Having heard the objection, denied.

5            Proceed.  You may proceed.

6   By MS. RODRIGUEZ:

7   Q   Mr. Negron Maldonado, using the pointer please show the jury

8   the location of the drug point of William and "Pipo".

9            MS. RAMOS-GRATEROLES:  I would ask that he point in the

10  monitor so that everyone can see.

11           THE COURT:  Yes.  Fine.  What do you suggest we do?

12           MS. RAMOS-GRATEROLES:  He can point on the projector.

13           THE COURT:  In other words, you're suggesting that he

14  go to the projector?  Fine.  Very well.  The Court accepts the

15  suggestion.  Go ahead.

16           Before you do that.  Mr. Anglada, the Court

17  understands that your objection goes to the weight of the

18  document and not to the admissibility of the document.  You may

19  proceed.

20           MR. ANGLADA:  Yes, Your Honor.

21           THE COURT:  You may proceed.

22  By MS. RODRIGUEZ:

23  Q   Mr. Negron Maldonado, using a pen can you point please in

24  the photograph to the location of the drug point of William and

25  "Pipo".

44

1   A    Yes.

2   Q    Go ahead.

3   A    (Pointing).

4        MS. RODRIGUEZ:  May we mark --

5        THE COURT:  Yes, you may mark it.  Ask him to put an X

6   or 0 or whatever you request to be placed there.

7   By MS. RODRIGUEZ:

8   Q    Now, Mr. Negron Maldonado, who did you observe selling drugs

9   at that drug point that you just marked?

10       MR. ANGLADA:  If I may, asked and answered already.  He

11  was asked --

12       THE COURT:  Yes.  Sustained.

13       MS. RODRIGUEZ:  Your Honor, if we may.  I believe that

14  what the witness has previously stated was in response to a

15  different question and was stricken by the Court from the record.

16       THE COURT:  No.  I don't think that it was stricken.  I

17  don't think that I struck it from the record.

18       MS. RODRIGUEZ:  Your Honor, I haven't asked that

19  question.

20       THE COURT:  All right.  Okay.

21            (COUNSEL APPROACHED THE BENCH)

22       THE COURT:  I thought that he said that it was "Pipo's"

23  and William's drug point.

24       MS. RODRIGUEZ:  And the government stated that who

25  controls it, not who sells drugs there.

1          THE COURT:  All right.

2          MS. APONTE CABRERA:  Macibo Pub and that he purchased a

3     hundred capsules for three twenty-five, that when he went there

4     to that drug point he went with Manoline the deceased and "Eggy"

5     was present because he was the person that sold drugs at that

6     point.

7          MR. ANGLADA:  And no one else.

8          MS. RODRIGUEZ:  No, sir.  What, when, who was there,

9     the question referred to who was at Callejon Dos when he

10    purchased packages from "Pipo".  And he was specifically

11    referring to the location of Callejon Dos.  Not content.  That he

12    mentioned "Eggy".  I said who is "Eggy".  And he said one of the

13    people that sold drugs at "Pipo's" point.  Objection.  Sustained.

14    Stricken from the record.

15         MS. APONTE CABRERA:  It was after that.  Your Honor,

16    respectfully, that was before that he discussed the point of

17    "Pipo" and William.

18         THE COURT:  When there was a reference also to Macibo

19    Pub, that's when he mentioned the Callejon Dos.  On

20    reconsideration the question is allowed.

21              (COUNSEL WITHDREW FROM THE BENCH)

22    By MS. RODRIGUEZ:

23    Q    Mr. Negron Maldonado, bringing your attention to the point

24    that was controlled by William and "Pipo", who did you observe

25    selling drugs at that point?

46

1        MR. RIVERA:  No time frame.

2        MS. RODRIGUEZ:  In 1990.

3        MS. APONTE CABRERA:  We would like to pose an

4   objection.  She is misquoting the witness.  She used -- the

5   witness did not use the term controlled.

6        THE COURT:  Yes.  Take the word control out.

7   By MS. RODRIGUEZ:

8   Q    Bringing your attention to the point which you stated

9   belonged to William and "Pipo", who did you observe selling drugs

10  there in 1990?

11       Who, if anyone, if you did observe selling drugs there

12  in 1990?

13  A    Well, I was able to observe Ferna.

14  Q    "El defunto Ferna."

15       THE COURT:  He said "defunto".

16       MS. RODRIGUEZ:  Now deceased Ferna.

17       THE INTERPRETER:  Now deceased.

18       THE WITNESS:  "Eggy", Manoline, Canito now deceased,

19  Mandy,there were several persons.  One day "Eggy", the other day

20  Mandy, the other day Manoline.

21  By MS. RODRIGUEZ:

22  Q    Now when you use the term "tirador", what does that mean to

23  you.

24  A    When I use that word in reference to controlled substances I

25  mean giving it to the clients that purchase, that come to buy it.

47

1          MS. RODRIGUEZ:  We would like to have the translation

2    reflect that it can be translated as selling.

3          MR. DEL TORO:  No, given.  That's it.  He didn't say

4    selling.

5          MS. RODRIGUEZ:  He said giving it to the people that

6    come to purchase it.  That was translated.

7          THE INTERPRETER:  I didn't say purchase, but I don't

8    remember.

9          THE COURT:  Well, inquire.

10   By MS. RODRIGUEZ:

11   Q    When the people that you observed giving drugs to the

12   clients at the point gave these clients drugs did they receive or

13   what, if anything, did they receive in return?

14   A    Money in return.

15         THE COURT:  And that is the last question at this time.

16   The jury will have a fifteen minute break at this time.

17              (JURY WITHDREW FROM THE COURTROOM)

18                    (SHORT RECESS)

19              (JURY CAME INTO THE COURTROOM)

20         MS. RODRIGUEZ:  May we proceed?

21         THE COURT:  Yes.

22   By MS. RODRIGUEZ:

23   Q    Mr. Negron Maldonado, before we took a break you stated that

24   an individual by the name of Mandy sold at the drug point owned

25   by William and "Pipo".

1              Is that person present in court?

2              MR. ROMO-MATIENZO:  Your Honor, objection.  We need a

3    time frame and we filed an alibi motion and we need a time frame.

4              THE COURT:  Fine.

5                   Provide a time frame.

6              MS. RODRIGUEZ:  I believe that the previous question

7    was my reference to on or about January of 1990.

8              MR. ROMO-MATIENZO:  We object, Your Honor, to the

9    argument of counsel in front of the witness.

10             THE COURT:  She's not arguing in front of the witness.

11             MR. ROMO-MATIENZO:  She's mentioning time frame.  I

12   want the witness to tell the time frame.

13             THE COURT:  No.  The question may be made so that the

14   witness provides the time frame.

15             MR. ROMO-MATIENZO:  Thank you.

16             THE COURT:  Go ahead.  You may proceed.

17   By MS. RODRIGUEZ:

18   Q    No.  Prior to the break the government asked in reference to

19   on or about January of 1990, who did you observe selling at the

20   point owned by William and "Pipo".  And you responded -- one of

21   the responses that you provided was Mandy.

22   A    Yes, counsel.

23   Q    And the question that I have now; is that individual Mandy

24   present in court.

25             MR. ROMO-MATIENZO:  The same objection.

1      THE COURT:  Yes, but we can get the clarification

2  later.  We're going to get it in the next question.  Go ahead.

3      THE WITNESS:  Yes, Counsel Rodriguez.

4  By MS. RODRIGUEZ:

5  Q    Can you tell us where Mandy is sitting?

6  A    Well, he's moved now.

7      He's now on second, from right to left.

8  Q    What is he wearing?

9  A    Well, he moved.

10     Well, he's next to "Pipo".  He's wearing a white shirt,

11  from here it looks like gray shirt with dots.

12     MS. RODRIGUEZ:  Let the record reflect that the witness

13  has identified --

14     MR. ROMO-MATIENZO:  We don't have an objection.

15     THE COURT:  Very well.  Now he said no objection.

16     MS. RODRIGUEZ:  No objection.

17     THE COURT:  That's what he said.

18     Now we go to the next question.  Now we go to the

19  next question.  Tell him to provide a time frame.

20  By MS. RODRIGUEZ:

21  Q    When did you observe Mandy selling drugs at the point owned

22  by William and "Pipo"?

23  A    In 1990.

24     THE INTERPRETER:  Since 1990.

25     MR. ROMO-MATIENZO:  Your Honor, still we need a time

50

1    frame '90 -- from '90 until when?

2              From '90, what month in '90.  What month did he

3    see him selling drugs in '90.  This is important for time, Your

4    Honor.

5              MS. RODRIGUEZ:  I can't put my case in one question,

6    Your Honor.  I have to go one by one.  We're certainly going to

7    follow the years that come after 1990.

8              THE COURT:  Proceed.

9              MS. RODRIGUEZ:  Thank you.

10   By MS. RODRIGUEZ:

11   Q    You also mentioned an individual by the name of "Eggy".

12   A    Yes.

13   Q    Is that the same "Eggy" that you previously identified in

14   court?

15   A    Yes, counsel.

16   Q    And Mr. Negron Maldonado, what type of narcotics were sold

17   at that point?

18   A    They were selling crack which comes in vials, cocaine in

19   plastic baggies, heroin in aluminum.

20   Q    And you stated before that the crack vials were sold for

21   five dollars; is that correct?

22             MR. MIRANDA CORRADA:  Objection, misconstrues the

23   testimony.

24             MS. RAMOS-GRATEROLES:  That's correct.

25             MS. RODRIGUEZ:  Can we rephrase, Your Honor --

1    THE COURT:  Please rephrase because what I thought he

2  said was something else.

3    MR. ROMO-MATIENZO:  Objection to the whole testimony

4  because you don't have a time frame and we filed a motion of

5  alibi.  If he knows that my client was doing something he has to

6  state the time frame.

7    THE COURT:  Up to now he has said 1990.

8    MR. ROMO-MATIENZO:  Since 1990.

9    THE COURT:  Since 1990.

10    MR. ROMO-MATIENZO:  That's not a time frame.

11    MR. RIVERA:  If I may he's in court today.  So I

12  imagine he's still not there.

13    THE COURT:  I know, but up to now the record reflects

14  from 1990.  I imagine that this witness will be cross-examined.

15    MR. ROMO-MATIENZO:  Yes.

16  By MS. RODRIGUEZ:

17  Q    For what price was the vial of crack sold at the point owned

18  by William and "Pipo"?

19  A    Could you repeat the question?

20  Q    For what price.

21    How much was a vial of crack at the point owned by

22  William and "Pipo" at Calle Cuba?

23  A    Five dollars.

24  Q    How about a bag of cocaine?

25  A    There were five dollar baggies and ten dollar baggies.

1    Q      What about a deck of heroin?

2    A      Ten dollars.

3            MS. RODRIGUEZ:  Now, can we approach the witness, Your

4    Honor?

5            THE COURT:  Yes.  Has the defense seen --

6            MS. RODRIGUEZ:  Yes, sir.

7            THE COURT:  -- these photographs.

8            MS. RODRIGUEZ:  Yes, sir.

9            MR. DEL TORO:  Yes, Your Honor.

10           MS. APONTE CABRERA:  We have objection, Your Honor.

11           THE COURT:  Fine.  No problem.  Wait until he gets

12   them.

13           MS. APONTE CABRERA:  Can we have the number of the

14   identification so that we know.

15           THE COURT:  Yes, you certainly may.  What are the

16   photographs that are going to be shown?

17           MS. RODRIGUEZ:  Government's I.D. 10, 11, 12 and 13.

18           THE COURT:  You have an objection?

19           MS. APONTE CABRERA:  Yes, Your Honor.

20           THE COURT:  Before it is presented into evidence.

21           MS. APONTE CABRERA:  Yes, Your Honor.

22           THE COURT:  Let me hear it.

23           MS. APONTE CABRERA:  We have to have a side bar.

24           THE COURT:  Very well.

25                    (COUNSEL APPROACHED THE BENCH)

1          MS. APONTE CABRERA:   These pictures are part of the

2     last batch of pictures that I believe we got yesterday, the

3     photocopies.   If it was not yesterday, the day before.

4               As soon as I received it I made part of the record

5     that I objected to those pictures because the government knew

6     that they were going to present evidence about this murder.

7               And even though they had not had the possession of

8     these pictures, the lack of diligence of the government to

9     procure in a timely fashion evidence so we can have an

10    opportunity to prepare and to adequately address what is

11    contained in the representation in these photographs, that lack

12    of diligence cannot be placed as a burden on the defense.

13              The government knew they were going to present

14    this evidence because from day one that they have specifically

15    designated evidence in this case they said that they were going

16    to present evidence about the murder of "La Gallega".   And now we

17    have pictures that are reconstructions of crime scenes dealing

18    with the investigation of this murder.

19              And it is not the point as to where the government

20    got this picture it's when they knew they were going to present

21    evidence about this case in this trial and they did not move in a

22    timely and diligent manner to obtain these pictures, so the

23    defense could have the opportunity not only to visit these places

24    but to discuss these pictures with our clients.

25              And aside from that, these pictures are

54

1      reconstruction of a scene and are part of another batch that will

2      come after these, that are part of the same set of pictures that

3      have parts of the vehicle already dismantled and taken to other

4      places.

5                    So, our objection will go as to that picture that

6      is intended to be presented by the government, but these pictures

7      as such were delivered in this week to the defense.

8                    MS. RODRIGUEZ:  Your Honor?

9                    THE COURT:  May I hear the position of the United

10     States now.

11                   MS. RODRIGUEZ:  Yes.  As counsel have already stated

12     the government has provided notice in this case for a long time

13     that it intends to present evidence as to -- evidence as to the

14     murder of Efrain de Leon Hernandez and Ana Dones Arroyo also

15     known as "La Gallega" murder, which occurred on the 20th of

16     February of 1991.

17                   The police report gives the names of the victims

18     and the location where the murder took place, was provided to the

19     defense long before the beginning of this trial.  The photographs

20     of this location taken by FBI agents in 1997 have been provided

21     to the defense with substantial amount of time prior to trial.

22                   Now, these photographs --

23                   THE COURT:  So why don't you use those.

24                   MS. RODRIGUEZ:  Well, because these photographs, Your

25     Honor, are more timely.  Those photographs we received from the

1   forensic investigator that took them.  I think it was a day after

2   the murder took place.  So, they more accurately depict the

3   location than the photographs taken by an FBI agents, taken in

4   1997.

5            But, Your Honor, there is no prejudice because the

6   defense was well aware that we were going to present evidence of

7   the murders and we were going to present evidence as to the

8   location of El Callejon Dos.  That's what this is, this is El

9   Callejon Dos.

10           So we fail to see how not having seen these

11  photographs before, it will now prejudice the defense in

12  preparing to face this evidence at trial.

13           MR. RIVERA:  I, for one, was not well aware that the

14  murder was going to come in.  There is no where found in an overt

15  act in the conspiracy.  I had no knowledge that the offenses of

16  "La Gallega" was going to be presented into evidence by the

17  government at no time.

18           THE COURT:  Well, did you receive the photograph of

19  Callejon Number Two?

20           MR. RIVERA:  No, sir.  Pictures, no.

21           THE COURT:  Did you -- is the representation which she

22  is making that she was going to produce pictures of Callejon

23  Numero Dos, did you get those pictures?

24           MS. APONTE CABRERA:  We got some pictures that involved

25  Callejon Two, that's only the face picture, and they were in the

56

1    photocopy and they're in the same situation of other pictures

2    which we have received by the government.

3         THE COURT:  Now, I will go to the other matter.  You're

4    therefore informing the Court that to you it is a surprise that

5    the murder that occurred of Mr. Dones and "La Gallega" or

6    whatever de Leon or whatever their name is, that is a surprise to

7    you?  It's not.

8              One at a time.

9         MS. APONTE CABRERA:  Elements of the surprise of the

10   pictures to be produced to us at the last minute, aside from the

11   fact in violation of the Court order.

12             We are trying this case and receiving today, we

13   received another set of discovery, so we are receiving evidence

14   as the government has not been diligent in procuring, that they

15   should have given us before and the Court issued orders.  And

16   this is placing undue burden on the defense getting at every

17   moment little pieces of evidence that are being used at trial

18   that we didn't get a chance to investigate before.

19             And we were, very respectfully, Your Honor, I do

20   not want to incur in the anger of the Court, but the Court issued

21   an order and I would ask the Court to please abide by the Court

22   order that it established, because if they did not give it and

23   they knew they were going to use it, and they did notice it in a

24   diligent manner the defense is paying for it.

25             The defense is getting evidence piecemeal during

57

1    trial.  This is an overloaded situation since the beginning of

2    this case and it is tarnishing the ability to effectively

3    represent our clients and I think the whole situation is being

4    raised at an effectiveness of counsel and will --

5              MS. RODRIGUEZ:  May we address?

6              THE COURT:  No.

7              MS. RODRIGUEZ:  I want to clarify.

8              THE COURT:  If you present the photographs of 1997 what

9    is the objection going to be.  That photograph -- it doesn't

10   clear the defense because it's a 1997 photo, then you show them

11   the 1997 photo and now you show them the year the murder took

12   place.  Surprise?  Well, denied.  The photographs will be

13   allowed.  Let's go.

14             MS. RODRIGUEZ:  I want to clarify.

15             THE COURT:  The issue is over.

16                  (COUNSEL WITHDREW FROM THE BENCH)

17   By MS. RODRIGUEZ:

18   Q    Mr. Negron Maldonado, you're being shown four photographs

19   which have been identified as Government's Identifications 10,

20   11, 12 and 13.

21             Beginning with Identification Number 10.  Will you

22   please examine that photograph and tell us if you recognize what

23   is depicted there?

24   A    Yes, that's the -- at the alley in Bitumul, alley number two

25   in Bitumul.

1  Q    And how -- the place that you described previously during

2  your testimony as Callejon Dos in Bitumul, how does that place

3  compare to what is depicted on the photograph identified as

4  number 10.

5  A    The same.

6         MS. RODRIGUEZ:  We move Government's Exhibit Number 10,

7  into evidence.

8         MS. APONTE CABRERA:  We have an objection.  And we

9  request that the back portion that is written in the back portion

10 of that identification be removed.

11              (COUNSEL APPROACHED THE BENCH)

12        THE COURT:  May I have the photograph.  What is the

13 objection.

14        MS. APONTE CABRERA:  Your Honor, our objection -- we

15 renew the one we previously made when we came to the bench.

16             These pictures were available to the prosecution

17 and they were under Court order to produce, and to disseminate

18 these specific pictures, were not subject to the third amended

19 designatin.

20        MS. RODRIGUEZ:  Not correct.

21        MS. APONTE CABRERA:  Specifically the specific

22 pictures, and if they were then the government had knowledge or

23 had it available to them to obtain them, because they knew of

24 their existence and therefore they violated the Court order not

25 providing them in a timely fashion.  And we seek remedy from the

59

1    Court for the violation of the Court order to prevent the

2    government from introducing this as evidence.

3              Further, these pictures, on the backside, have

4    writings that are similar to the police of Puerto Rico

5    identification of pictures that they take of crime scenes.  And

6    we believe that this witness cannot testify as to the contents of

7    those writings and we request, even if they were admitted over

8    our objection, that these writings be totally eliminated.

9         THE COURT:  Yes.  Okay.  Let's take it one by one.

10   When did you have possession of these pictures, and I refer to

11   the United States.

12        MS. RODRIGUEZ:  I have to inquire of the agent.

13        THE COURT:  Ask him.

14        MS. RODRIGUEZ:  Your Honor, we don't have the exact

15   date because Special Agent Angel Nieves, who picked up the

16   photographs from forensic, is not here, but I know it was

17   sometime after Agent Nieves went on vacation.  He went on

18   vacation on December 17.

19             I have written on my calendar when I went to

20   forensic to interview the forensic investigator that investigated

21   this case.  At the time I learned that these reconstruction

22   photographs had been created and I requested a copy, subsequent

23   to that a subpoena was served on the Forensic Science Institute.

24             I can bring more exact dates to the Court.

25        THE COURT:  Don't.

60

1          MS. RODRIGUEZ:  That's as precise as I can get.

2          THE COURT:  Here is the point.  Here is the point.

3    Number one, I don't think he can testify at all as to the

4    backside.

5          MS. RODRIGUEZ:  No.  We have no argument with that.

6    Obviously, Mr. Maldonado cannot testify as to the back of it.

7          THE COURT:  And the backside, obviously, would

8    constitute in the opinion of the Court a bootstrapping of the

9    photographs.

10         MS. RODRIGUEZ:  But if we may address the Court.  We do

11   intend to bring a forensic investigator that worked this scene

12   when we come to the point in the trial when we prove these

13   murders.

14         At this point in time what we are seeking to

15   introduce into evidence are the -- what is depicted in the

16   photographs.  Now, he certainly can identify what is depicted in

17   the photograph because it's El Callejon Dos.

18         He went there on a weekly basis at least for years

19   and years and years, and he readily recognizes this as El

20   Callejon Dos.  So, at this point we would only seek to publish

21   the image.

22         THE COURT:  Hold it.  Then what is wrong with somebody

23   using the photographs that were published to the defense, and

24   then when you get the forensic expert by then by then this

25   photograph will not constitute a surprise to the defense and they

1   will not be able to allege that this is a surprise because they

2   know of their existence since today at least.

3          MS. RODRIGUEZ:  May we address the Court on that issue?

4          THE COURT:  Yes.

5          MS. RODRIGUEZ:  This is a trial.

6          THE COURT:  I know but I have to balance the interest

7   for everybody.

8          MS. RODRIGUEZ:  That's where we're going.

9          THE COURT:  Okay.

10         MS. RODRIGUEZ:  But the utmost interest in this trial

11  is to carry out justice.

12         THE COURT:  Yes, but within certain rules.

13         MS. RODRIGUEZ:  Within certain rules.  For months and

14  months and months the defense has known that we would bring

15  evidence as to this location.

16         THE COURT:  Good.

17         MS. RODRIGUEZ:  For months and months and months they

18  have known that we will bring evidence as to the murders of these

19  individuals for months and months.

20         THE COURT:  Do we agree as to that?

21         MR. DEL TORO:  Yes, Your Honor.

22         THE COURT:  Because I heard somebody say the contrary.

23         MR. DEL TORO:  No.

24         MR. ROMO-MATIENZO:  The thing is for months and months,

25  she filed an indictment in April she has knowledge before us more

1    than a year ago and now she brings those photos.

2           THE COURT:  That's another matter.

3           MR. ROMO-MATIENZO:  It's the same thing.

4           MS. RODRIGUEZ:  No, it's not the same thing.  It's not

5    the same thing because the defendants must show that they would

6    somehow be prejudiced by the surprise at trial.  And the fact is

7    that there is no surprise because they have known from the

8    beginning of this case that this murder was going to be part of

9    the case, that El Callejon Dos was a focal point of the

10   conspiracy.

11          We provided them other pictures during the course,

12   taken during the course of the investigation of this very same

13   place, Your Honor.  If we may bring the other pictures --

14          THE COURT:  Bring the other ones.  Why don't we use the

15   others?

16          MS. RODRIGUEZ:  The house was not there.  This house

17   was not there and it was not -- it will be different.  It's taken

18   from a car.  That's as close as we could get to the point in

19   1997.

20          What is the better evidence?  That's the question.

21   If I may address, what is the better evidence.  The better

22   evidence is, obviously, a contemporaneous picture with the time

23   frame that we are alleging.

24          THE COURT:  But it's going to get in anyway.  It's

25   going to get in with your forensic expert because by then, by

1    then --

2           MS. RODRIGUEZ:  Well, Your Honor --

3           THE COURT:  -- this photograph will not constitute a

4    surprise.

5           MS. RODRIGUEZ:  It doesn't -- the government -- it

6    doesn't constitute a surprise today.  These photographs don't

7    constitute a surprise.  I haven't finished.

8           MR. DEL TORO:  You're always talking, you never finish.

9              I want to address the Court.

10          THE COURT:  Fine.  Finish.

11          MS. RODRIGUEZ:  If it's going to get into evidence

12   anyway, Your Honor, what the government would like is to have

13   this defendant, who used to package narcotics, buy narcotics here

14   identify the place to make it clear for the jury.  After all the

15   jury is entitled to have the best evidence before it.

16          THE COURT:  Go ahead.

17          MR. DEL TORO:  The best evidence, talking about best

18   evidence, are the people that are in control of that evidence.

19   That forensic expert are the ones that can testify as to that

20   because they were the ones who took those photographs.

21             Those documents are under the control of the

22   government since day one in this case, because when they indicted

23   in this case they referred to that.  This is a joint task force

24   between the police of Puerto Rico and the FBI.  They should have

25   had that.  If they elected to have other pictures, if they wanted

64

1    to present those identification 10, 11, 12 and 13, the best

2    individuals to testify to that is the forensic expert.

3           MS. APONTE CABRERA:  I would like to show something to

4    the Court, a December 30, 1998, discovery letter by the

5    prosecution.  And to stress my point, I also have the third

6    amended designation of evidence in this case filed in December

7    1998.

8           Addressing the second document, the designation,

9    46 photos without -- just basically general topics of what the

10   photographs will deal with, are saying that they're going to be

11   used in evidence.  Twenty photos depicting gang members are to be

12   used as evidence.

13          And when they talk about evidence related to

14   murder they make reference to photographs of each murder, but not

15   a specific designation as ordered by the Court as to which

16   evidence to be used when, and we bring to the attention of the

17   Court, Your Honor, that on December 30, 1998, we were given five

18   hundred and twenty-seven photographs which are hundred and

19   seventy-eight pages of copies of photographs by the government.

20          THE COURT:  And they weren't here?

21          MS. APONTE CABRERA:  Honestly, we've gotten all these

22   photographs without an explanation.  They are not designated and

23   they are photocopies.  And we're in the situation that at the

24   last moment not that one or two pictures can better serve, and

25   there can be an exception it's whether there is going to be a

1   ruling of the Court that the government is going to be allowed to

2   do this.

3          We were bombarded with five hundred twenty-seven

4   photographs.  Period.  Without the description of what they were

5   going to be about, how they were going to be used, what did they

6   refer to.  And this is of December 30th, 1998, Your Honor.  So

7   the we started picking the juror already and we get five hundred

8   twenty-seven pictures, not counting the ones that we got before.

9          There was a ruling by the Court.  I ask for a

10  remedy and I think that the remedy that can permit us to safely

11  discern what is going to be evidence in this case according to

12  the designations, so we can defend our clients regardless of

13  whether they depict the same area or not.  Five hundred

14  twenty-seven.

15        MR. ANGLADA:  Your Honor, if I may, a letter dated

16  December 30, 1998.  I got a phone call from the deputy clerk of

17  the U.S. Attorneys office on the 31st, close to noon and I was

18  only able to obtain the letter and the contents on January 4th,

19  1998, as my letter depicts, Your Honor.  The letter is dated

20  December the 30th.

21        MS. RODRIGUEZ:  Your Honor, we are producing copies of

22  photographs, and the photographs that we received as soon as we

23  have them, as soon as we have them.

24        Like I said to the Court before these photographs

25  are from the Forensic Science Institute.  They don't give me

1    anything unless I give them a subpoena.  I can't give them a

2    subpoena until I have a trial date.  As soon as I had the date

3    for this case, Your Honor, I filed -- I served subpoena upon them

4    and they still owe me things, things which I requested with a

5    subpoena over two weeks ago.

6              THE COURT:  Fine.

7              MS. RODRIGUEZ:  So, they are coming.  Your Honor, look

8    at the date.  1991.  They have to go in some kind of basement to

9    look for Negron Maldonado to reproduce these photographs for us

10   and they have been doing it on a continual basis for the past

11   three weeks, and we have been giving them to the defense as soon

12   as possible.  But the fact is that the defense had plenty of

13   knowledge that the photographs of Callejon Dos was going to be

14   introduced into the trial.

15             They can't possibly say that is a -- that I'm

16   introducing a photograph of condos.  The place is the same.  The

17   place is the same, therefore, how can a defendant assert that

18   there is any prejudice or surprise that a photograph of El

19   Callejon Dos is brought into evidence.

20             Moreover, Your Honor, photocopies were provided

21   but Counsel Aponte has not since then called me and said,

22   Jacobed, can I look at the originals of these photographs.

23             We provided on two different occasions --

24   Ms. Ramos said she would not able to come to the first.  She sent

25   a letter and asked me for a second, because she was in this very

67

1     same court.   Nobody else called me after that first inspection of

2     evidence and said I want to look at the originals of the last

3     photographs that you gave me or anyone of these past two weeks

4     and asked, can I come to your office so I can look at the

5     originals of such and such photograph.

6                    Counsel Anglada came to the first inspection of

7     evidence and told my Agent Negron, and he's in court, he only

8     wanted to see the photographs of the murder.   And now he comes in

9     and says that he had not seen the photos that were handed over

10    during the investigation.   Your Honor, he can't have his cake and

11    eat it too.   If he wants to see the murder he saw the murder, and

12    were there for him to see if he wanted to spend the time to see

13    them.

14                 THE COURT:   What is the prejudice to the defendant to

15    show a photograph of El Callejon with the new construction in it

16    versus the substantially the same photograph of El Callejon,

17    substantially the same photograph of El Callejon without the new

18    construction?   What is the prejudice aside from the fact that the

19    Court will not permit the photograph to be bootstrapped, what is

20    the prejudice?

21                 MS. APONTE CABRERA:   When we had addressed the Court on

22    every opportunity that we have to object to evidence that should

23    have been provided before, it's because of the overall objections

24    that counsel has had since the inception of this case that the

25    government has not been diligent in providing evidence and it's

1    amounted to a problem that now we're talking about five hundred

2    twenty-seven.

3            THE COURT:  I don't have five hundred twenty-seven

4    photographs.  I now have four photographs.  And that is the issue

5    that I have before me.

6            MR. RIVERA:  I think I pinpointed a prejudice.  A

7    prejudice is that Counsel Jacobed Rodriguez has stated that there

8    is some variance between the two photos.

9            THE COURT:  Yes, there is.

10           MR. RIVERA:  If there is some variance there is a

11   witness, you know, up there.  There is a witness up there that

12   apparently has been briefed on some photos and others no.

13           THE COURT:  I don't know.

14           MR. RIVERA:  That I believe --

15           THE COURT:  You're speculating.

16           MS. RODRIGUEZ:  What matter is if he recognizes this

17   place and whether or not the depiction of the place that he

18   recognizes is accurate.  That's all that matters.

19           MR. ANGLADA:  The Court has intimated an alternative

20   that is why not allow in the forensic experts at the time of

21   direct examination in reference to the killing of "La Gallega"

22   and the POPR, to either identify or enter into evidence the

23   photos that pertain to the murder scene of "La Gallega" and

24   Hernandez de Leon.

25           MS. RODRIGUEZ:  If I may.  What Mr. Anglada has just

1    stated is not an objection to these photographs.

2         THE COURT:  What he's saying is how it can be

3    postponed.

4         MS. RODRIGUEZ:  What he is suggesting is how the

5    government should present this case to the jury and we disagree

6    with defense counsel trying to frame how the government should

7    present its case to the jury.

8         THE COURT:  Yes.

9         MS. RODRIGUEZ:  Unless it's a legal basis for the

10   objection.

11        THE COURT:  But the legal objection is -- what I infer

12   from the legal basis is that those photographs were not notified

13   what these photographs were.  And these photographs would

14   constitute a surprise and these wouldn't.

15        MS. RODRIGUEZ:  But it's the same place in real life,

16   Your Honor.  All other argument aside, how can one photograph of

17   the same place constitute a surprise?

18        THE COURT:  All right.  The ruling of the Court is that

19   I will authorize these photographs, not bootstrap by the

20   backside.  That's the ruling of the Court.

21        MS. APONTE CABRERA:  May we have a standing objection

22   so that we don't have to be standing.

23        THE COURT:  The objection is noted.

24        MR. MIRANDA CORRADA:  For all defendants.

25             (COUNSEL WITHDREW FROM THE BENCH)

70

1        MS. RODRIGUEZ:  Your Honor, the government moves

2   Government's Identification 10 into evidence.

3        MS. APONTE CABRERA:  Your Honor, it has a lack of

4   foundation.  We were talking about the presentation of the

5   picture.

6        THE COURT:  I don't think they have been already --

7        MS. RODRIGUEZ:  If I may refer to the document, he has

8   already identified number 10, and stated that it's the same place

9   that he previously referred as Callejon Dos.

10       THE COURT:  Okay.  Is that the same place?

11            Does that photograph look substantially the same

12   as Callejon Dos looked in 1990.

13       THE WITNESS:  It's exactly the same.

14       THE COURT:  Exhibit 10 is admitted with the Court

15   taking notice of the objection of counsel.

16   By MS. RODRIGUEZ:

17   Q    Now Mr. Negron, bringing your attention to what has been

18   identified as Government's Identification Number 11, will you

19   please examine that photograph and tell me if you recognize what

20   is depicted therein?

21   A    Yes, that's "Pipo's" house there.

22   Q    And where was "Pipo's" house located.

23   A    On alley or in alley two.

24   Q    And how does the "Pipo" house, as you remember it from 1990,

25   compare to what is depicted on Government's Identification Number

1    11?   "Pipo's" house.

2    A     It's the same.

3          MS. RODRIGUEZ:   Your Honor, government moves

4    Government's Exhibit Number 11 into evidence.

5          THE COURT:   Same objection?

6          MS. RAMOS-GRATEROLES:   Yes, Your Honor.

7          THE COURT:   The Court admits I.D. 11.

8    By MS. RODRIGUEZ:

9    Q     Bringing your attention to what has been marked Government's

10   I.D. Number 12.   Can you tell me if you recognize what is

11   depicted in that photograph?

12   A     "Pipo's" house.

13   Q     How -- how is Government's Identification Number 12, and

14   Government's Exhibit Number 11 different, if in any way?

15   A     The only thing is that here you can see the alleyway and the

16   house and here you can only see the house.

17         MR. ANGLADA:   Your Honor, I do object on two grounds.

18         MS. RODRIGUEZ:   Can we have the answer for the record,

19   please.

20         THE COURT:   May I have the translation.   Was the

21   translation --

22         MS. RODRIGUEZ:   The translation --

23         MR. ANGLADA:   No.   If I may?

24              First, the objection is that the question is

25   leading and my second objection is that the translation failed to

1  include the word "quizas".  Maybe.  And if it's maybe it becomes

2  a speculation.  If it becomes speculative it has to be stricken

3  from the record.

4          MS. RODRIGUEZ:  Well, Your Honor, first we ask how does

5  Government's Identification Number 12, differ if in any way from

6  Government's Exhibit Number 11.

7          We do not believe that to be a leading question.

8  A leading question is a question which requires a yes or no

9  response.  We are asking how this one photograph differs from the

10  others.

11          THE COURT:  If at all.

12          MS. RODRIGUEZ:  Second --

13          MR. ANGLADA:  How is, becomes a suggestive question.

14  Then leading -- suggestive.

15          MS. RODRIGUEZ:  Your Honor --

16          MR. ANGLADA:  The question -- the way the question is

17  drafted suggests an answer.

18          MS. RODRIGUEZ:  A question which can't possibly be

19  suggestive.

20          A question which suggest an alternative.

21          THE COURT:  The question is, it may be suggestive

22  because the sites are different.

23          MR. ANGLADA:  Exactly.

24          THE COURT:  I haven't seen them now to remember 11 from

25  12 to see if they are different or they're not different.

73

1          MR. ANGLADA:  May the Court recall what was said at

2    side bar.

3          MS. RODRIGUEZ:  We object to the last request, the

4    witness at no time used the word "quizas".

5          THE COURT:  I don't recall him using the word "quizas".

6    If he used the word.

7          THE INTERPRETER:  "Quizas" meaning perhaps.

8          THE COURT:  But why don't we ask him again.  Let's ask

9    him again.  As to the objection that how do they differ, if they

10   defer.  I think that to the Court it's quite obvious that they

11   are different in some sense, so I don't think that it is leading

12   in that sense.  But as to the word "quizas", I frankly did not

13   hear the word and I may have missed it.  So let's hear it again.

14   By MS. RODRIGUEZ:

15   Q    How does Government's Exhibit Number 11, differ if in any

16   way, from Government's Identification Number 12?

17   A    They're the same.  The only thing is that in Exhibit 11, you

18   can see the house and the whole alleyway and in number 12, you

19   can only see the house.

20         MS. RODRIGUEZ:  Government moves Government's

21   Identification Number 12, into evidence, Your Honor?

22         THE COURT:  Is Exhibit Number 12 the same as it was

23   back in 1990?

24         THE WITNESS:  Yes, sir.

25         THE COURT:  Same objections?

74

1          MR. ANGLADA:  Same objection.

2          MR. ROMO-MATIENZO:  Same objection.

3          THE COURT:  Very well.  The Court admits the

4   photograph.

5   By MS. RODRIGUEZ:

6   Q   Now, Mr. Negron, bringing your attention to Government's

7   Identification Number 13.  Can you tell me if you recognize what

8   is depicted in that photograph?

9   A   Alleyway two.

10  Q   How does the depiction of Callejon Dos in Government's

11  Identification 13 compare with your memory of El Callejon Dos

12  from back in 1990?

13  A   Same.

14          MS. RODRIGUEZ:  Does he have Government's Exhibit 10,

15  in front of him?

16          THE MARSHAL:  Right here, counsel.

17  By MS. RODRIGUEZ:

18  Q   Mr. Negron, drawing your attention to what has been marked

19  as Government's Exhibit Number 10, how does Government's Exhibit

20  Number 10 compare to Government's Identification Number 13?

21  A   Well, there you can see alleyway number two as you would

22  enter it from alleyway number one.

23  Q   Okay.  To which photograph were you referring to at this

24  time?

25  A   To number 10.

1   Q     And bringing your attention now to Government's

2   Identification Number 13.

3   A     Alleyway two.

4   Q     And how does it compare to Exhibit Number 10?

5   A     That 13, is a view looking down from the second story of

6   "Pipo's" house into the alleyway.

7   Q     And in what direction does that photograph look?

8   A     That goes out, that alleyway leads out to Bitumul park.

9         MS. RODRIGUEZ:  Your Honor, we would like to move

10  Government's Identification Number 13, into evidence.

11        THE COURT:  Same objection?

12        MS. APONTE CABRERA:  Yes.

13        THE COURT:  All right.  The Court admits 13.

14        MS. RODRIGUEZ:  We would like to publish one of the

15  exhibits to the jury, Your Honor.

16        THE COURT:  Through the --

17        MS. RODRIGUEZ:  Through the monitor, correct.

18        THE COURT:  Which one is it.  Number 12?  Twelve.

19             Exhibit 11, is authorized to be published.

20        MS. RODRIGUEZ:  We would like to have the witness come

21  down and point to the place that he identified as "Pipo's" house.

22        THE WITNESS:  (Pointing)

23        MS. RODRIGUEZ:  Can we have him mark it with an X?

24        THE COURT:  Yes, Exhibit 11 is marked with an X, an X

25  as to "Pipo's" house.

1        MS. RODRIGUEZ:  Thank you.

2   By MS. RODRIGUEZ:

3   Q    Now Mr. Negron, previously in your testimony you stated that

4   you and Ray would go to Bitumul to purchase narcotics from

5   "Pipo"; is that correct?

6   A    That's right.

7   Q    And we had previous asked you or we had previously referred

8   you to the time period of on or about January of 1990?

9   A    Yes.

10  Q    Now, where was it that you would receive these drugs from

11  "Pipo"?

12  A    In his house.

13       MR. ANGLADA:  Your Honor, if I may.  I have the

14  impression that the answer by the witness before was receiving of

15  the drug was prior to 1990.  Not in early 1990.  He stated under

16  oath that it was in 1988.

17       THE COURT:  No.

18       MR. ANGLADA:  And maybe in the alternative in '89.  But

19  the receiving of the drugs was never testified for early 1990,

20  unless I am incorrect.

21       THE COURT:  I thought that at the insistence of one of

22  the defendants that there should be a time frame, I specifically

23  requested the United States to provide a time frame for that, for

24  those purchases.

25       MS. RODRIGUEZ:  That's correct, Your Honor.  That's

1    what we did.

2          THE COURT:  Well, do it again.

3    By MS. RODRIGUEZ:

4    Q    Now, Mr. Negron, bringing your attention to January of 1990,

5    where did you receive narcotics from "Pipo"?

6    A    In alleyway number two in "Pipo's" house.

7    Q    Is that the same house that was reflected -- how does that

8    house that you refer to in your response compare to the house

9    that is depicted in Government's Exhibit Number 11, which is

10   displayed in the monitor before you?

11   A    The same.

12   Q    Where exactly inside that house did you receive the

13   narcotics?

14   A    Sometimes in the downstairs house, sometimes in the upstairs

15   house.

16   Q    Approximately how many times, Mr. Negron, have you visited

17   this location depicted in Government's Exhibit Number 11?

18   A    I couldn't specify a number.  A great many times.  Since I

19   lived with the late Cano in the house on Callejon Two, on

20   alleyway two, after "Pipo" was jailed.

21         MS. RODRIGUEZ:  May we approach before we -- so we can

22   finish.

23              (COUNSEL APPROACHED THE BENCH)

24         MS. RODRIGUEZ:  Your Honor, we asked to approach the

25   bench because it was not the intention of government attorney to

78

1   solicit a response from the witness that Juan Soto Ramirez number

2   two, also known as "Pipo", at some point, no time after 1990, was

3   in prison.  Now, we had been notified by defendant number two

4   that he intends to present a partial alibi defense based on the

5   defense that he was in prison sometime after 1990.

6           We want to inquire of the defense whether they

7   object to the reference at this time or whether, since it was

8   announced as part of their defense, they will not object.  If

9   they do object then we suggest that the Court instruct the

10  witness in the absence of the jury not to refer to the fact that

11  "Pipo" was in prison.

12          MS. RAMOS GRATEROLES:  I will object because first he's

13  not responsive to the question and he's adding frosting to the

14  cake.  He should be instructed by the government to answer what

15  he's been asked and the inference is not tolerable at this time,

16  so I would request a cautionary instruction to the jury at this

17  time.

18          MS. RODRIGUEZ:  I didn't hear the last part and the

19  answer is what?

20          THE COURT:  She wants a cautionary instruction.

21          MS. RAMOS-GRATEROLES:  Cautionary instruction to the

22  jury there shouldn't be a reference and I would move the Court to

23  make the witness answer what he was asked.

24          THE COURT:  I've done that and I'll do it again.

25          MS. RODRIGUEZ:  On the grounds that it is not

1    responsive.  We think it is quite responsive.  In trying to

2    portray to the Court just how familiar he is with the house he

3    said so many times, I lived there.  I think his intent was to

4    show I can present many, many times because I lived there.  I

5    think that is responsive.

6             THE COURT:  But what the frosting in the cake is that I

7    live there because he went to prison.

8             MS. RODRIGUEZ:  I agree, Your Honor.

9             THE COURT:  That's the frosting.

10            MS. RODRIGUEZ:  I agree, but something that the Court

11   will know, will perceive throughout the trial is that often these

12   individuals do not maintain a calendar and they know when events

13   happen so he knows for example when "Pipo" went to prison and

14   that he started living there after "Pipo" went to prison.  So

15   that is simply his way of placing his self in time.  I don't

16   think his intent was to get across to the jury that "Pipo" went

17   to the prison.

18            There has been an alibi formed by this defendant

19   that he will present evidence that he was in prison during the

20   time of the conspiracy.  Now if that is the case no prejudiced is

21   caused to the defense.

22            MS. RAMOS-GRATEROLES:  The fact that I gave notice

23   doesn't mean I can't take a different stand.  As a matter of fact

24   I didn't mention that in my opening statement and the government

25   shouldn't take advantage of that.

1        THE COURT:  Fine.  Because you may very well not even

2    use the alibi defense.  And you may rest simply rest at the end

3    of the case and ask for a Rule 29.

4        MS. RAMOS-GRATEROLES:  Yes.

5        THE COURT:  You could very well do that.

6        MS. RAMOS-GRATEROLES:  Yes.

7        MS. APONTE CABRERA:  May we address the Court on

8    another motion to reconsider the exclusion of the exhibits

9    admitted because I was under the impression that the government

10   was moving to admit these exhibits because they -- somehow they

11   were tied to the murder of "La Gallega".

12       However these exhibits have been used and the

13   contents, these have been used, have been undesignated and it's

14   to show through Exhibit 11, that it depicts the place where

15   "Pipo" made the transaction of delivering drugs and it's a

16   different purpose for which they were designated in the amended

17   designation of evidence and what the government asked the Court

18   to admit them for.

19       MS. RODRIGUEZ:  No.

20       MS. RAMOS-GRATEROLES:  The proffer was erroneous,

21   Judge.

22       MS. RODRIGUEZ:  The proffer was not erroneous.  We were

23   discussing admissibility of the evidence and where the

24   photographs came from and I will explain to the Court where the

25   photographs came.

81

1          The government is not required to designate

2     photographs.  And in addition to that, tell the defense how it

3     intends to use the photographs at trial.  The purpose of

4     designation of trial, after all is so that defendant may move

5     prior to trial to suppress any evidence which may be subject to

6     suppression not to learn the government's case or its strategy at

7     trial or how it intends to prove the charges in the indictment.

8          THE COURT:  Well, anyway let me say this.  First, I

9     will provide the cautionary instruction.  Second, and I provide

10    it irrespective of your alibi defense because I understand that

11    you may very well throw the alibi defense out the window.

12          MS. RAMOS-GRATEROLES:  That's right.

13          THE COURT:  Second, I want to make it very clear,

14    perhaps I haven't, that the only reason why I have allowed the

15    photographs is because other contemporaneous photographs showing

16    essentially the same thing in 1997, have been noticed to counsel

17    and that these photographs after all do not really constitute any

18    surprise, do not prejudice because all that they are is

19    photographs at the time of the events.

20          And I have advised counsel that I will not permit

21    the backside of that photograph to come in at this time, because

22    this witness cannot even talk about that.  Because he's obviously

23    not a part of the investigation.  I don't have the other hundred

24    and seventy-five photographs before me.  I have this set of four

25    photographs.  That's all I have and that's as far as the ruling

1    goes.

2            MS. APONTE CABRERA:  Can we request a remedy that since

3    the government is still receiving evidence that they procure

4    during that situation, and that's why they have justified not

5    giving it to us before, that then if they have issued those

6    subpoenas and not granted the information that the defense be

7    granted copies of the subpoenas of the pictures they have

8    requested so that we at least have notice of what they requested.

9            THE COURT:  She's accepting it.

10           MS. RODRIGUEZ:  Sure, Your Honor.

11           THE COURT:  At this time I will proceed to give the

12   cautionary instruction.  And to instruct the witness to answer

13   the questions as posed.

14           MS. RODRIGUEZ:  I think the Court should inform the

15   witness in the absence of the jury or bring him over here that

16   he's not make reference to the fact that the defendant was in

17   prison.  So that he understands prior to his testimony.  I

18   advised him that with regard to Miguel Cosme.  I advised him with

19   regards to -- I think it was somebody else.  Juan Cintron

20   Caraballo.  But I omitted that instruction in the case of --

21           THE COURT:  Okay.

22           MS. RODRIGUEZ:  I think that the Court specifically

23   inform the witness why the Court --

24           MS. RAMOS-GRATEROLES:  But not when the jury is here,

25   not taking him to the corner.  I would ask the Court to instruct

1   him to answer.   And then take him separately after the jury

2   leaves.

3            THE COURT:   Okay.

4            MS. RODRIGUEZ:   But we --

5            THE COURT:   Okay.

6            MS. RODRIGUEZ:   We would seek that the only words in

7   prison be stricken.

8            THE COURT:   I will do it now.

9                 (COUNSEL WITHDREW FROM THE BENCH)

10           THE COURT:   Mr. Victor Negron Maldonado.   Sir, the

11  Court once again requests from you to answer strictly the

12  question that is asked.

13                Let me perhaps illustrate a point to you.

14  Assuming that we were in a baseball park and I asked you for the

15  number of Roberto Clemente.   You would tell me his number is 21.

16  But you would not tell me that he was wearing black socks.

17  Because the question was strictly the number and I did not ask if

18  he was wearing a gray uniform or white uniform.   Okay.

19                Please attempt to listen to the question and then

20  answer the question.   The jury is advised that they are not to

21  take into consideration the fact that this witness testified that

22  at one point or another "Pipo" was under custody.   That is not to

23  be taken into consideration by the jury.   That is stricken from

24  the record and as I advised the jury when the Court strikes from

25  the record, the jury should not use that as part of their

84

1    deliberations.

2                    You may proceed.

3    By MS. RODRIGUEZ:

4    Q    Now, Mr. Negron Maldonado, prior to the time that you came

5    to live at the house in Callejon Dos, when did you visit -- when

6    you visited that house, and I want to bring your attention again

7    to on or about January of 1990, when you visited that house for

8    purposes of receiving packages of narcotics from "Pipo", did

9    you -- what other type of narcotics, if any, did you purchase

10   from "Pipo"?

11   A    Well, at the time we were only receiving capsules.

12   Q    What other narcotics, if any, were available for sale at

13   that same house at that time?

14              MS. RAMOS-GRATEROLES:   That's leading.

15              THE COURT:   Sustained.

16              MS. RODRIGUEZ:   May we address the Court Your Honor.

17              THE COURT:   No, I think I made a ruling on that.   The

18   question is leading.

19              MS. RODRIGUEZ:   The question is leading?

20              THE COURT:   The question is leading.

21              MS. RODRIGUEZ:   What other narcotics, if any?

22              THE COURT:   It's leading, because that implies that

23   others were necessarily sold.

24              MS. RODRIGUEZ:   He stated that at the point he

25   distributed --

1    THE COURT:  At the point.  But that doesn't mean that

2  they came from the house.  You're leading him as to the house.

3    MS. RODRIGUEZ:  Very well.

4    THE COURT:  The point is not the house.  As a matter of

5  fact, the point was Exhibits Eight and Nine, and the house was

6  Exhibit 12.

7    MS. RODRIGUEZ:  That is correct, Your Honor.

8    THE COURT:  Okay.

9    MS. RAMOS-GRATEROLES:  I will object that the

10  government argue in front of the jury with the Court and the

11  witness is present.

12    THE COURT:  Yes.  Fine.  But the point is well taken.

13  Thank you.  We will proceed.

14    MS. RODRIGUEZ:  Thank you.

15  By MS. RODRIGUEZ:

16  Q    Mr. Negron Maldonado, the narcotics that was sold by William

17  and "Pipo" where were those narcotics packaged?

18  A    In the upstairs house.

19  Q    When you say the upstairs house, the upstairs house located

20  where?

21  A    On alleyway two.

22  Q    Is that the same house depicted in Government's Exhibit

23  Number 11, reflected on the monitor?

24  A    That's right.

25  Q    Now, Mr. Negron, what narcotic was packaged at the upstairs

1    house, the upstairs house reflected on Government's Exhibit

2    Number 11?

3              MR. ANGLADA:  Lack of foundation.

4              MR. ROMO-MATIENZO:  Lack of foundation.

5              MR. ANGLADA:  There has been no foundation whatsoever

6    as to his personal knowledge of the alleged packaging of drugs

7    upstairs.  There has been no testimony whatsoever.

8              THE COURT:  Sustained.

9    By MS. RODRIGUEZ:

10   Q    Mr. Negron Maldonado, how do you know that the narcotics

11   sold at the point owned by William and "Pipo" were packaged at

12   "Pipo's" house in Callejon Dos?

13             MR. ANGLADA:  Objection, leading, Your Honor.

14             THE COURT:  Sustained.

15             MS. RODRIGUEZ:  Your Honor, may we approach?

16             THE COURT:  No.  Why don't we give the jury a break at

17   this time and we can think about it until tomorrow.

18                  Ladies and gentlemen of the jury, we are going to

19   recess at this time.  Until this case is submitted to you for

20   your deliberation you must not discuss this case with anyone

21   including among yourselves or remain within hearing of anyone

22   discussing it.  Neither should you read any newspaper article,

23   listen to any radio broadcast nor view any television program

24   which discusses the case.

25                  During the trial you must not discuss this case in

1  any manner among yourselves or with anyone else, and you must not

2  permit anyone to attempt to discuss it with you or in your

3  presence.   And insofar as the lawyers are concerned, as well as

4  others whom you may come to recognize as having some connection

5  with the case, you are instructed that in order to avoid even the

6  appearance of impropriety you should have no conversation

7  whatsoever with those persons while you're serving on a jury.

8              You are to keep an open mind and you must not

9  decide any issue in this case until the case is submitted to you

10  for your deliberation under the instruction of the Court.   We

11  will start tomorrow at?

12              THE CLERK:   9:30.

13              (JURY WITHDREW FROM THE COURTROOM)

14                  ************

15

16

17

18

19

20

21

22

23

24

25

88

REPORTER'S CERTIFICATE

1

2       I, ARTHUR G. PINEDA, Official Court Reporter for the

3   United States District Court for the District of Puerto Rico,

4   appointed pursuant to the provisions of Title 28, United States

5   Code, Section 753, do hereby certify that the foregoing is a true

6   and correct computer aided transcript of proceedings had in the

7   within-entitled and numbered cause on the date hereinbefore set

8   forth; and I do further certify that the foregoing transcript has

9   been prepared by me or under my direction.

10

11

12

13

14

15   _____
                    ARTHUR G. PINEDA
16                Official Court Reporter

17

18

19

20

21

22

23

24

25